# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br><br>Relating to All Derivative Actions |

## MOTION OF DEFENDANT SANDRIDGE ENERGY, INC. AND THE INDEPENDENT DIRECTOR DEFENDANTS TO DISMISS PLAINTIFFS' CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

COVINGTON & BURLING LLP
Mark P. Gimbel (admitted *pro hac vice*)
C. William Phillips (admitted *pro hac vice*)
Brian B. Alexander (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

CROWE & DUNLEVY
Thomas B. Snyder, Esq., #211230CA
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
(405) 234-3254
thomas.snyder@crowedunlevy.com

*Attorneys for the Independent Director Defendants and Nominal Defendant SandRidge Energy, Inc.*

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND AND ALLEGATIONS ........................................................ 3

ARGUMENT ................................................................................................................. 8

I.      THE COMPLAINT FAILS TO PLEAD DEMAND FUTILITY ............................. 8

      A.     A Majority of the Board is Independent and Disinterested......................... 10

            1.     A Majority of the Board is Independent .......................................... 10

                 a)     The Board Is Not Dominated and Controlled By Ward ....... 10

                 b)     Payment of Director Fees Does Not Establish Lack of Independence.......................................................................... 12

                 c)     Plaintiffs' Allegations of Financial Ties Are Insufficient .......................................................................... 12

            2.     A Majority of the Board Is Disinterested ........................................ 14

                 a)     A Majority of Directors Are Disinterested with Respect to the Corporate Opportunity and Related-Party Transaction Claims ...................................................... 15

                 b)     A Majority of Directors Are Disinterested With Respect to the Proxy Fraud Claims ...................................... 18

                 c)     A Majority of Directors Are Disinterested With Respect to the Executive Compensation Claims................... 18

                 d)     A Majority of Directors Are Disinterested With Respect to the Self-Dealing Claims ..................................... 20

                 e)     A Majority of Directors Are Disinterested With Respect to the Entrenchment Claims ................................... 20

      B.     Plaintiffs Fail to Create a Reasonable Doubt That Any of the Board's Actions Were Not a Valid Exercise of Business Judgment ....................... 22

II.     THE SECTION 14(A) CLAIM FAILS ON THE MERITS................................... 24

III.   THE FIDUCIARY DUTY AND WASTE CLAIMS FAIL ON THE
       MERITS ......................................................................................................... 25

CONCLUSION ................................................................................................................. 25

TABLE OF AUTHORITIES

## Cases

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner,*
  746 A.2d 244 (Del. 2000) .................................................................................... passim

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................ 21

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*
  845 A.2d 1040 (Del. 2004) ................................................................................ 10, 11

*Braddock v. Zimmerman,*
  906 A.2d 776 (Del. 2006) ......................................................................................... 9

*Brehm v. Eisner,*
  746 A.2d 244 (Del. 2000) .................................................................................... 8, 18

*Crescent/Mach I Partners, L.P. v. Turner,*
  846 A.2d 963 (Del. Ch. 2000) ................................................................................ 11

*Desimone v. Barrows,*
  924 A.2d 908 (Del. Ch. 2007) ................................................................................ 15

*Epic Enters. v. Brothers,*
  395 F. Supp. 773 (N.D. Okla. 1975) ...................................................................... 25

*Feldman v. Cutaia,*
  951 A.2d 727 (Del. 2008) ......................................................................................... 9

*Forsbre v. Matthews,*
  No. 09-cv-0467, 2010 WL 2696615 (D. Nev. July 2, 2010), *aff'd sub nom.*
  *Israni v. Bittman*, 473 F. App'x 548 (9th Cir 2012) .............................................. 12

*Gen. Elec. Co. v. Cathcart,*
  980 F.2d 927 (3d Cir. 1992) .................................................................................... 25

*Guttman v. Huang,*
  823 A.2d 492 (Del. Ch. 2003) ................................................................................ 18

*In re Caremark Int'l Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996)................................................................... 17

*In re Coca-Cola Enters. Inc. S'holder Litig.*,
   No. 1927-CC, 2007 WL 3122370 (Del. Ch. Oct. 17, 2007), *aff'd sub nom.*
   *Int'l Bhd. Teamsters v. Coca-Cola Co.*, 954 A.2d 910 (Del. 2008) ........................... 20

*In re Countrywide Fin. Corp. Deriv. Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ...................................................... 12

*In re Gen. Motors Class H Shareholders Litig.*,
   734 A.2d 611 (Del. Ch. 1999)................................................................. 13

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
   No. 5215, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011)*, aff'd sub nom.*
   *SEPTA v. Blankfein*, 44 A.3d 922 (Del. 2012).............................................. 13, 15, 23

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 808 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006).......................... 22, 23

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993)..................................................................... 24

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
   919 A.2d 563 (Del. Ch. 2007)................................................................. 23

*Jacobs v. Yang*,
   No. 206, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004),
   *aff'd*, 867 A.2d 902 (Del. 2005).............................................................. 12

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991)............................................................................. 8

*Kansas Heath Care Ass'n., Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*,
   958 F.2d 1018 (10th Cir. 1992) .............................................................. 15

*Kansas Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) .............................................................. 21

*Khanna v. McMinn*,
   CIV.A. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) ........................... 11, 13

*Lewis v. Vogelstein*,
   699 A.2d 327 (Del. Ch. 1997)................................................................. 19

*MCG Cap. Corp. v. Maginn*,
    No. 4521, 2010 WL 1782271 (Del. Ch. May 5, 2010) .................................................. 9

*Moran v. Household Int'l*,
    500 A.2d 1346 (Del. 1985) ........................................................................................ 7

*Official Comm. Of Unsecured Creditors of Int. Health Servs., Inc. v. Elkins*,
    No. 20228, 2004 WL 1949290, at \*17 (Del. Ch. Aug. 24, 2004) .............................. 25

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) ...................................................................................... 10

*Rales v. Blasband*,
    634 A.2d 927 ............................................................................................................ 10

*Rattner v. Bidzos*,
    No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ............................................ 9

*Robotti & Co., LLC v. Liddell*,
    No. 3128, 2010 WL 157474 (Del. Ch. Jan. 14, 2010) ............................................... 25

*Salgado v. Sun Loan, Inc.*,
    No. CIV-12-187-D, 2012 WL 1941579 (W.D. Okla. May 29, 2012) ......................... 21

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) .................................................................................. 16, 18

*Thomas v. Metro. Life Ins. Co.*,
    No. CIV-07-0121-F, 2008 WL 4619822 (W.D. Okla. Oct. 16, 2008) ......................... 4

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*,
    No. CIV-09-1114-D, 2013 WL 1336123 (W.D. Okla. Mar. 29, 2013) ...................... 24

*United States v. Matthews*,
    787 F.2d 38 (2d Cir. 1986) ....................................................................................... 25

*Unitrin, Inc. v. Am. Gen. Corp.*,
    651 A.2d 1361 (Del. 1995) ....................................................................................... 22

*Va. Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ............................................................................................... 24

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ......................................................................................... 19

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) .............................................................................. 16, 17, 20

*Zucker v. Andreessen*,
   No. 6014-VCP, 2012 WL 2366448 (Del. Ch. June 21, 2012)..................................... 19

## Statutes

DEL. CODE. ANN. tit. 8, §102(b)(7) .................................................................... 15

DEL. CODE. ANN. tit. 8, §141(d) ......................................................................... 22

DEL. CODE. ANN. tit. 8, § 211(d) ........................................................................ 22

## Other Authorities

17 C.F.R. § 229.404(a) (2012) ............................................................................ 24

Fed. R. Civ. P. 23.1(b)(3) ................................................................................ 1, 8

Defendants SandRidge Energy, Inc. ("SandRidge" or "the Company"), and Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota (the "Independent Directors"), respectfully move this Court to dismiss Plaintiffs' Verified Consolidated Shareholder Derivative Complaint.

## INTRODUCTION

It is a fundamental rule of corporate law that a board of directors has authority over the business and affairs of a corporation, including the decision whether or not to litigate. To overcome this rule, and establish the right to assert claims derivatively on behalf of a company, a shareholder plaintiff must either make a demand upon the board or "state *with particularity*" why making a demand would be futile. Fed. R. Civ. P. 23.1(b)(3) (emphasis added). Here, Plaintiffs attempt to plead demand futility, but their allegations are utterly insufficient to establish that a majority of SandRidge's Board is not sufficiently independent and disinterested to evaluate their claims.

Plaintiffs' claims focus on alleged misconduct by Tom Ward, SandRidge's CEO, and entities allegedly affiliated with Ward. There is no reason why the Independent Directors who comprise a majority of SandRidge's Board — and the four new Board members seated in April pursuant to the settlement of a corporate control contest with SandRidge investor TPG-Axon Capital Management ("TPG") — cannot evaluate whether to assert such claims. Plaintiffs do not plead any facts establishing that any of these directors participated in or personally benefited from any of the allegedly wrongful transactions, and their conclusory claims that the Independent Directors "acquiesced" in the purported misconduct are insufficient under settled law.

The Complaint asserts that the Independent Directors are beholden to Ward and management because they receive fees for serving as directors and have engaged in transactions with the Company in the past, but such allegations are not enough to overcome the strong presumption that directors are disinterested and independent. The receipt of director fees alone will not disqualify a director. And even very substantial financial transactions are not disqualifying absent factual allegations showing that the benefits to a director are so material, in light of his personal economic circumstances, as to make it improbable that the director could fulfill his fiduciary obligations without being influenced by overriding personal interests. No such facts are pleaded here.

Plaintiffs' claims that the Independent Directors are "dominated" by Ward are, moreover, belied by the directors' conduct. The Independent Directors seated four nominees of TPG on the Board, even though the hedge fund had called for Ward's termination; agreed to conduct an independent investigation of allegations that entities allegedly affiliated with Ward engaged improper related-party transactions with SandRidge; and agreed to deliver control of the Board to TPG nominees if Ward is not terminated by June 30. These actions speak louder than Plaintiffs' words and demonstrate the Board's independence beyond a shadow of a doubt.

The Complaint also attempts to disqualify the Independent Directors by pleading that they face a risk of liability and therefore are not disinterested, but the allegation is no more persuasive. Because SandRidge's certificate of incorporation exculpates its directors from liability to the maximum extent permitted by law, a threat of

2

liability only disqualifies the Board if there are specific, factual allegations that a majority of directors engaged in intentional wrongdoing — allegations that are absent here.

Plaintiffs' Complaint not only fails to adequately plead demand futility, but otherwise fails to state a claim. As explained in detail below, Plaintiffs' claims against the Independent Directors fail on the merits and would be subject to dismissal even if Plaintiffs had standing to assert the claims derivatively.

## FACTUAL BACKGROUND AND ALLEGATIONS

SandRidge is a Delaware corporation, headquartered in Oklahoma City. Compl. ¶ 15. In 2012, hedge fund TPG announced a consent solicitation to replace SandRidge's Board, which consisted at the time of Ward and the Independent Directors. In the ensuing contest, TPG issued "fight letters" that criticized the way in which SandRidge was managed and raised questions about the compensation paid to Ward and whether companies allegedly affiliated with him had engaged in improper transactions with the Company or usurped corporate opportunities.

Beginning in December 2012, a series of shareholder derivative actions were filed against SandRidge, Ward, and the Independent Directors, asserting a variety of claims mimicking TPG's allegations. On April 10, 2013, the Court consolidated the derivative cases before it and directed the filing of a Consolidated Derivative Complaint.

On March 13, 2013, while motions to consolidate the derivative litigation were pending, SandRidge and TPG entered into a settlement, under which the size of the Board was increased and four TPG nominees were seated. Ex. 1 (Form 8-K dated March

3

13, 2013).[1]  The parties also agreed that the Board would consider whether to remove Ward as CEO; that, if Ward was not terminated by June 30, incumbent directors would resign and an additional TPG nominee would be seated, resulting in a Board controlled by TPG nominees; that SandRidge would conduct an investigation into allegations of improper related-party transactions with entities allegedly affiliated with Ward; and that SandRidge would reduce outside director fees to $250,000 and otherwise cut costs.  *Id.*

Although the settlement resolved the corporate control contest and addressed the issues raised by TPG, the individual plaintiffs in the shareholder derivative action continued to litigate.  On May 1, 2013, Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint (the "Complaint").  The Complaint's claims, which include three counts against the Independent Directors for breach of fiduciary duty, waste, and violations of Section 14(a), fall into five broad categories described below.

## Plaintiff's Claims

*Usurpation of Corporate Opportunities.*  The Complaint alleges that Ward and three entities allegedly affiliated with Ward — WCT Resources, L.L.C. ("WCT"), 192 Investments, L.L.C. ("192"), and TLW Land & Cattle, L.P. ("TLW") (collectively, the "Entity Defendants") — usurped corporate opportunities by competing with

---

[1]  All exhibits are attached to the Declaration of Mark P. Gimbel.  "Courts routinely consider public filings at the motion to dismiss stage." *Thomas v. Metro. Life Ins. Co.,* No. CIV-07-0121-F, 2008 WL 4619822, at *5 (W.D. Okla. Oct. 16, 2008).

SandRidge to acquire land and mineral rights in the "Mississippian Oil Play." Compl. ¶¶ 42-43, 17-18. The Complaint concedes, however, that at least one of these entities (TLW) was actively acquiring land in the area in 2005, *before SandRidge even came into existence*. *Id.* ¶¶ 16, 54. The Complaint also concedes that the Mississippian Oil Play is no secret; it is a vast area of over 17 million acres that has been discovered by many different companies, including not only SandRidge and the Entity Defendants but also Shell — one of the largest oil companies in the world. *Id.* ¶¶ 18, 56-59.

The Complaint details several acquisitions of mineral leaseholds by the Entity Defendants in areas allegedly adjacent to acreage owned or subsequently acquired by SandRidge. *See id.* While the Complaint criticizes the Independent Directors for permitting these "adjacent acquisitions," it fails to plead any facts demonstrating that any Independent Directors were even aware of the transactions, let alone in a position to prevent them. The Complaint also details three instances in which SandRidge purchased land or mineral rights from the Entity Defendants. *Id.* ¶¶ 53-55. In two of these cases, TLW acquired the land four or more years before it was sold to SandRidge. *Id.* ¶¶ 54-55. In none are the terms of the deal alleged to have been unfair or unreasonable. *Id.*

*Proxy Statements.* Plaintiffs challenge the disclosures in three proxy statements, filed in 2011, 2012, and 2013. The proxy statements disclose that SandRidge purchased interests from WCT, a company "owned by trusts established in 1989 for the benefit of Mr. Ward's children;" describe the terms of the transactions; and disclose that the Board approved the transactions pursuant to SandRidge's Related-party Transactions

5

Policy.  *Id.* ¶¶ 83-85.  Despite these disclosures, Plaintiffs allege that the proxy statements were misleading because they failed to disclose "adjacent acquisitions" that the Entity Defendants made from third parties.  *Id.* ¶ 86.  Plaintiffs fail, however, to allege facts showing that the Independent Directors were aware of the "adjacent acquisitions."

        *Excessive Compensation and Waste.*  Plaintiffs accuse the Independent Directors of breaching their fiduciary obligations and committing waste by approving allegedly excessive compensation and perquisites for Ward and other SandRidge officers and by approving an amended employment contract with Ward that gave him the right "to engage in outside oil and gas businesses . . . 'in areas not being pursued by the Company.'"  *Id.* ¶¶ 89-97, 104-06.  As explained below, however, a board of directors has broad discretion and authority in setting the terms of compensation and employment, and the Complaint fails to plead the kind of extreme and egregious facts that would permit a Court to second-guess the Board's compensation and employment decisions.

        *Self-Dealing.*  The Complaint alleges that Ward engaged in "self-dealing" when, on October 9, 2008, in connection with the termination of SandRidge's Executive Well Participation Program ("EWPP"), he sold the Company certain natural gas interests he had acquired as part of the program.  *Id.* ¶¶ 107-09.  The Complaint also asserts self-dealing claims based on Ward's leasing of ranchland to SandRidge, the Company's sponsorship of the Oklahoma Thunder (in which Ward has an indirect ownership interest), and its licensing of a luxury suite for Thunder games.  *Id.* ¶¶ 110-14.  While

Plaintiffs fault the Independent Directors for permitting these transactions, the Complaint nowhere asserts that any of the Independent Directors personally benefitted or that the price paid by SandRidge was in any way unfair or unreasonable.

       *Entrenchment.*  Plaintiffs allege that the Independent Directors have taken various steps to "entrench themselves" on the Board of SandRidge, but the examples cited are garden-variety defensive measures adopted by many companies.  For example, the Complaint alleges that the Board sought to entrench itself by adopting a shareholder rights plan or "poison pill" (*id.* ¶ 123), but the Delaware Supreme Court upheld such measures almost three decades ago.  *See Moran v. Household Int'l*, 500 A.2d 1346, 1351-57 (Del. 1985).  Moreover, the Board terminated SandRidge's "poison pill" before the Complaint was filed.  *See* Ex. 2 (Form 8-K dated April 30, 2013).

       Plaintiffs' claims of "entrenchment" are also contradicted by the Board's actions, including its settlement with TPG.  As Plaintiffs concede, the Board agreed to seat four TPG nominees as part of the settlement.  (Compl. ¶ 124.)  It also agreed that control of a majority of the Board would be delivered to TPG nominees if Ward is not removed as CEO and Chairman by June 30, 2013.  *See* Ex. 1.  In addition, Independent Director Jordan resigned effective April 2013.  Ex. 3 (Form 8-K dated April 26, 2013).

### Demand Futility Allegations

       After setting forth the five broad categories of claims described above, Plaintiffs allege that it would have been futile for Plaintiffs to make a demand on the Board to assert the claims.  *Id.* ¶ 140.  Plaintiffs' claims of demand futility rest on

conclusory allegations that the Board is "dominated and controlled" by Ward because it was "handpicked" by him; claims that the directors are beholden to management because of the director fees they receive or past business relationships; and allegations that the directors face liability for approving transactions at issue in the case.  As explained in detail below, these allegations are insufficient to excuse demand under settled law.

**ARGUMENT**

I.  THE COMPLAINT FAILS TO PLEAD DEMAND FUTILITY.

In order to bring a claim derivatively on behalf of a company, a shareholder plaintiff must "state *with particularity*" any effort to obtain action from the Board or "the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3) (emphasis added).  Here, Plaintiffs allege that making a demand on the Board would have been futile.  Under governing Delaware law, [2] however, demand will not be excused based on "conclusory statements" that demand was futile.  *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).  Rather, Plaintiffs must plead specific facts showing that either (1) a majority of directors are not disinterested and independent, or (2) the challenged transaction was not a valid exercise of business judgment.  *See Aronson v. Lewis*, 473 A.2d 805, 814-15 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244.  For a claim based on board inaction, only the first prong of *Aronson* is applicable because

---

[2] The law of a company's state of incorporation — here, Delaware — governs demand futility.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).

"[t]he business judgment rule has no role in the case of inaction . . . ." *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at *7 (Del. Ch. Oct. 7, 2003).

"Demand futility must be determined on a claim-by-claim basis." *MCG Cap. Corp. v. Maginn*, No. 4521, 2010 WL 1782271, at *18 (Del. Ch. May 5, 2010). For most claims, demand futility is measured by reference to the Board in place when this litigation was commenced — i.e., Ward and the Independent Directors. However, for claims asserted for the first time in Plaintiffs' most recent Complaint, including the new allegations about the Board's approval of Ward's amended employment contract and its adoption of a "poison pill" and other "entrenchment" devices, demand futility is measured by reference to the reconstituted Board in place at the time the Complaint was filed — i.e., Ward, the five Independent Directors who continue to serve and the four new Board members nominated by TPG. *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) (when composition of board changes, demand futility is evaluated based on the new board for all claims not "validly in litigation" prior to the change).

As explained below, the allegations of the Complaint are not sufficient to establish that demand is futile with respect to the old Board, let alone the newly-reconstituted Board, whose new members Plaintiffs do not even attempt to challenge.[3]

_____

[3] As explained in Point A of the brief filed by Defendants Ward and TLW, Plaintiffs also lack derivative standing because they have not alleged that they owned stock at the time of all of the transactions of which they complain. *See Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008) (plaintiff must "be a stockholder at the time of the alleged wrongdoing").

## A.   A Majority of the Board is Independent and Disinterested.

To plead demand futility under the first prong of *Aronson*, Plaintiffs must allege that a <u>majority</u> of the Board is not independent and disinterested.  *Aronson*, 473 A.2d at 815.  Because "directors are entitled to a *presumption* that they were faithful to their fiduciary duties," the burden is on the plaintiffs to plead specific facts showing that a majority of the directors lack independence or disinterestedness.  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1048-49 (Del. 2004) (emphasis original).  Plaintiffs fail to plead such facts with respect to any of their claims.

### 1.   *A Majority of the Board is Independent.*

#### a)   <u>The Board Is Not Dominated and Controlled By Ward.</u>

Reciting the "shorthand shibboleth of 'dominated and controlled directors' is insufficient" to call into question a board's independence.  *Orman v. Cullman*, 794 A.2d 5, 24 (Del. Ch. 2002) (citation omitted).  Instead, a plaintiff must plead particularized facts demonstrating that "the directors are beholden to" the allegedly dominant person or so under his influence that "their discretion would be sterilized." *Rales v. Blasband*, 634 A.2d 927, 936 (citation omitted).   Here, such facts are lacking from the Complaint.

Plaintiffs' allegations that various directors were "handpicked" by Ward are not sufficient to show a lack of independence because being nominated by a major shareholder is the "usual way" a person becomes a director.  *Aronson*, 473 A.2d at 816. Nor does Ward's ownership of between 5% and 25% of SandRidge stock show that he

dominates the Board (Compl. ¶ 161); even if Ward owned a majority, it would not "strip the directors of the presumption[] of independence . . . ." *Aronson*, 473 A.2d at 815.

Plaintiffs' claims that Dobson and Ward have a business relationship as investors in the Thunder — and that other Independent Directors have unspecified personal or business relationships with Ward — are no more viable.  Compl. ¶¶ 147, 168. "Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam,* 845 A.2d at 1050; *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 980-81 (Del. Ch. 2000) ("15-year professional and personal relationship" insufficient).

Plaintiffs' allegations that the directors approved Ward's employment contract and acquiesced in related-party transactions involving Ward are no more persuasive.  Absent particularized facts showing how the directors' "alleged acquiescence benefited them," such allegations are insufficient to undermine the presumption of independence. *Khanna v. McMinn*, CIV.A. 20545-NC, 2006 WL 1388744, at *15,*19 (Del. Ch. May 9, 2006) (alleging director put "interests of cronies ahead of" company insufficient); *Aronson*, 473 A.2d at 815-17 (approval of contract insufficient).

Similarly, Plaintiffs' allegation that the Board issued press releases defending Ward does not establish a lack of independence.  One of the very press releases quoted in the Complaint notes that the Independent Directors are considering retaining independent counsel to investigate related-party transactions involving entities allegedly affiliated with Ward, and the Board ultimately did just that, launching an investigation

11

that is expected to conclude by June 15.  *See* Ex. 4 (Press release dated Jan. 25, 2013);

Ex. 1 (March 13, 2013 press release attached to 8-k).  The press release thus underscores

the independence of the Independent Directors, rather than calling it into question.

> b)  Payment of Director Fees Does Not Establish Lack of Independence.

Plaintiffs' allegation that the Independent Directors receive compensation

for serving on SandRidge's Board likewise fails to call their independence into question.

Compl. ¶ 162.  Even the receipt of "substantial remuneration" is not enough to undermine

the presumption that a director is independent.  *See Jacobs v. Yang*, No. 206, 2004 WL

1728521, at *4 (Del. Ch. Aug. 2, 2004), *aff'd*, 867 A.2d 902 (Del. 2005).  Indeed, no case

has held demand to be futile based solely on the payment of director fees.  *See Forsbre v.

Matthews*, No. 09-cv-0467, 2010 WL 2696615, at *5 (D. Nev. July 2, 2010), *aff'd sub

nom. Israni v. Bittman*, 473 F. App'x 548 (9th Cir 2012).  Moreover, the amounts

allegedly paid to the Independent Directors fall well within or below ranges that other

courts have found insufficient to undermine a director's independence or to establish

demand futility.  *See id.* at *4 (fees from $384,498 to $419,498 insufficient);  *In re

Countrywide Fin. Corp. Deriv. Litig.*, 554 F.Supp.2d 1044, 1078 (C.D.Cal.2008)

(applying Delaware law) (fees from $358,966 to $538,824 insufficient).

> c)  Plaintiffs' Allegations of Financial Ties Are Insufficient.

Plaintiffs' allegations that companies affiliated with the Independent

Directors engaged in past transactions with SandRidge are likewise insufficient.  Even a

significant financial relationship between a corporation and a company affiliated with a

director will not excuse demand when the plaintiff does not allege how the director's

"independent discretion would be compromised" as a result.  *Khanna*, 2006 WL

1388744, at \*17, \*21-22; *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215, 2011

WL 4826104, at \*11-12 (Del. Ch. Oct. 12, 2011)*, aff'd sub nom. SEPTA v. Blankefein,* 44

A.3d 922 (Del. 2012) ($670 million investment in director's fund and billions in

financing for director's company insufficient absent allegations explaining how

independence was compromised).  To establish a lack of independence, a plaintiff must

plead facts showing that the benefits from a transaction are "of a sufficiently *material*

importance, in the context of the director's economic circumstances, as to have made it

improbable" that the director could perform his fiduciary obligations without being

influenced by "overriding personal interest."  *In re Gen. Motors Class H Shareholders*

*Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999) (emphasis added).  The Complaint fails to

plead such facts with respect to any of the directors.

   For example, all of the alleged transactions between SandRidge and

companies affiliated with Defendants Jordan and Gilliland occurred six or more years

ago.  Compl. ¶¶ 173-74; 180-82.  The Complaint fails to explain how any of these long-

completed transactions would affect the judgment of either director *today* and thus fails

to establish demand futility.  *See, e.g., Goldman Sachs,* 2011 WL 4826104, at \*11

(investment of $670 million in fund established by director insufficient absent allegations

demonstrating that director was dependent on management fees from the investment).

   The only allegations regarding Oliver are that he entered into a lease with

SandRidge from 2006 through 2009, and that SandRidge entered into another lease, for less money, with an entity partially owned by him in 2011. Compl. ¶¶ 188-89. The Complaint does not allege that the net personal benefit to Oliver from any of these transactions was *material* in light of his economic circumstances at the time, nor does it explain why leases entered into years ago would compromise Oliver's discretion *today*.

The only financial tie that Plaintiffs allege between Dobson and SandRidge is that SandRidge has sponsorship and licensing agreements with the Oklahoma Thunder, of which Dobson owns a mere 3.85%. *Id.* ¶ 168-69. The Complaint does not allege that Dobson personally receives any financial benefit from SandRidge's sponsorship of the Thunder, much less a benefit sufficiently material to compromise his independence.

Plaintiffs do not allege <u>any</u> transactions between Serota and SandRidge. They claim only that a company at which Serota is a senior partner sold 2.5 million shares of SandRidge stock on the open market in 2008. *Id.* ¶ 194. There is no reason why a 5-year old open-market stock transaction would compromise Serota's independence.

Plaintiffs' allegations are thus insufficient to challenge the independence of *any* of the Independent Directors, let alone the majority necessary to excuse demand.

## 2. A Majority of the Board Is Disinterested.

Plaintiffs assert that the Independent Directors are not disinterested because they face a threat of liability on Plaintiffs' claims. Compl. ¶¶ 205-15. However, the "mere threat of personal liability" is insufficient to challenge the disinterestedness of directors. *Aronson*, 473 A.2d at 815. Rather, a plaintiff must plead specific facts

14

demonstrating director behavior that is "so egregious on its face that . . . a <u>substantial</u> <u>likelihood</u> of director liability therefore exists." *Id.* (emphasis added)

Here, Plaintiffs' pleading burden is particularly stringent, because SandRidge's Certificate of Incorporation exempts its directors from liability to the fullest extent permissible under law. Ex. 5, art. 9.[4]  The exculpatory clause protects directors from liability for all duty of care claims, including allegations of gross negligence. *See Desimone v. Barrows*, 924 A.2d 908, 932-33 (Del. Ch. 2007) (citing DEL. CODE. ANN. tit. 8, §102(b)(7)).  As a result, the Independent Directors may only be held personally liable if they act with "scienter" — that is, if they act in bad faith or engage in intentional misconduct. *See Goldman Sachs,* 2011 WL 4826104, at *12.  Plaintiffs' conclusory allegations are patently insufficient to show scienter.

   a) <u>A Majority of Directors Are Disinterested with Respect to the Corporate Opportunity and Related-Party Transaction Claims.</u>

Plaintiffs allege that the Independent Directors face a substantial threat of liability because they failed to prevent Ward from usurping SandRidge's corporate opportunities.  Compl. ¶ 211-12.  But far from pleading "egregious" behavior establishing that any of the Independent Directors acted with scienter, the Complaint relies on mere supposition and conclusory allegations of knowledge.  *Id.*

---

[4] Courts take judicial notice of articles of incorporation.  *See Kansas Heath Care Ass'n., Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018, 1021 (10th Cir. 1992).

For example, while the Complaint asserts that it is "inconceivable" that the Independent Directors did not know that the "Entity Defendants were improperly taking SandRidge corporate opportunities by acquiring hundreds of thousands of acres of mineral rights in the Mississippian" (Compl. ¶ 211), it pleads no facts establishing that any Independent Director was aware of any acquisition by any Entity Defendant at the time it occurred.  To the contrary, the Complaint concedes that oil and gas exploration companies typically "acquire land or mineral rights through land acquisition service companies in order to obscure the true purchaser" (*id.* ¶ 56), suggesting that any such acquisitions would have been unknown to the Independent Directors.

Plaintiffs' assertion that certain directors served on the Nominating and Corporate Governance Committee — and thus must have been "aware of the breaches of duties and the Code of Business Conduct and Ethics alleged" (Compl. ¶¶ 179, 192) — does not establish a substantial likelihood of liability.  It is "well-settled" under Delaware law that membership on a committee is insufficient to infer scienter.  *See Wood v. Baum*, 953 A.2d 136, 142-43 (Del. 2008) (membership on Audit Committee insufficient); *South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012) (similar).

The Independent Directors' approval of certain related-party transactions under which SandRidge acquired land or mineral rights from the Entity Defendants also does not establish scienter.  The Delaware Supreme Court has held that the mere approval of  related-party transactions "is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors."  *Wood*, 953 A.2d at 142.  Instead, to plead

16

scienter, a plaintiff must allege facts showing that the director approved a transaction with knowledge that it was fraudulent, illegal, or otherwise "legally improper." *Id.* at 141.

Here, the Complaint does the opposite, conceding facts that would suggest to any reasonable director that there was nothing improper about the Entity Defendants' acquisition of interests in the Mississippian Oil Play. For example, the Complaint concedes TLW began acquiring land there <u>before SandRidge existed</u>. Compl. ¶¶ 16, 54. Plainly, TLW cannot have been "front-running" SandRidge or misusing its confidential information when it began purchasing in the area before SandRidge was formed. Plaintiffs also admit that the Mississippian is a vast area in which many companies including Shell are actively acquiring rights — which suggests that SandRidge had no reasonable expectation that other buyers would not acquire interests there. *Id.* ¶¶ 18, 59

Finally, Plaintiffs' allegation that the Independent Directors face personal liability for "failure to put in place or enforce appropriate controls" (*id.* ¶ 210) is also insufficient. A claim that a director failed to exercise adequate oversight is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment." *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To state a viable claim, the Complaint must allege facts showing "a sustained or systematic failure of the board to exercise oversight — such as an utter failure to attempt to assure a reasonable information and reporting system exists." *Id.* at 971. Here, Plaintiffs make virtually no allegations about SandRidge's oversight systems. If anything, the Complaint concedes that there was no systemic failure, by admitting that the Company had a

17

Nominating and Corporate Governance Committee, Corporate Governance Guidelines, and a Code of Ethics. *See Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) ("contentions that the company lacked an audit committee" or "had an audit committee that met only sporadically and devoted patently inadequate time to its work" are critical to an oversight claim); *South*, 62 A.3d at 18-19 (Board's establishment of a Safety Committee refuted assertion that directors breached oversight obligations).

> b)  <u>A Majority of Directors Are Disinterested With Respect to the Proxy Fraud Claims.</u>

The Independent Directors also do not face a substantial threat of liability from the proxy statement disclosures.   Plaintiffs do not make a single factual allegation substantiating the assertion that a majority of the directors intentionally issued false proxy statements, and Plaintiffs' proxy fraud claim otherwise fails to state a claim upon which relief may be granted, as explained in detail in Point II below.

> c)  <u>A Majority of Directors Are Disinterested With Respect to the Executive Compensation Claims.</u>

Plaintiffs' allegation that certain Independent Directors served on the Compensation Committee and approved "excessive compensation" does not establish a substantial threat of liability.   Boards have broad discretion to set compensation because "it is the essence of business judgment for a board to determine if a particular individual warrant[s] large amounts of money." *Brehm*, 746 A.2d at 263 (internal quotation marks omitted).  In order for directors to be held liable for waste in connection with a compensation decision, the compensation must have been "so egregious or irrational that

18

it could not have been based on a valid assessment of the corporation's best interests."
*Zucker v. Andreessen*, No. 6014-VCP, 2012 WL 2366448, at *8 (Del. Ch. June 21, 2012)
(quoting *White v. Panic*, 783 A.2d 543, 554 n. 36 (Del. 2001)).  And the consideration
received in exchange for the compensation must have been "'so disproportionately small'
that it effectively could be characterized as a mere gift serving no corporate purpose." *Id.*
(quoting *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997)).

      Plaintiffs' claims about officer compensation fail to satisfy this "extreme
test," which is "very rarely satisfied by a shareholder plaintiff." *Id.* (internal quotation
marks omitted).  Indeed, Plaintiffs' allegations of outsized compensation are belied by the
very SEC filings cited in the Complaint, which show that the cash compensation paid to
Ward, Grubb, and Bennett was below the 75th percentile for large peer companies; that
Johnson's compensation was below the 90th percentile; and that Tipton's compensation
was below the 50th percentile.  *See* Ex. 6 (Form 10-K/A for year ending Dec. 31, 2012, at
12).  Moreover, since all of these officers provided substantial consideration to
SandRidge by serving full time as executives, Plaintiffs do not and cannot allege that the
compensation they received should be regarded as a "mere gift." [5]

---

[5] For similar reasons, Plaintiffs do not establish that any director faces a threat of liability
for approving Ward's amended employment contract in 2011, which permitted him to
engage in the oil and gas business in "areas not being pursued by the Company."  Compl.
¶¶ 104-05.  Allowing such activities is not "so egregious or irrational that it could not
have been based on a valid assessment of the corporation's best interests," and there is no
question that SandRidge received consideration for the employment contract.

19

       d)      <u>A Majority of Directors Are Disinterested With Respect to the Self-Dealing Claims.</u>

None of the Independent Directors can be held liable for approving the EWPP transaction with Ward, or the sponsorship agreement and luxury suite leases with the Thunder, because these transactions fall outside of Delaware's three-year statute of limitations for breach of fiduciary duty. *See In re Coca-Cola Enters. Inc. S'holder Litig.*, No. 1927-CC, 2007 WL 3122370, at *4 (Del. Ch. Oct. 17, 2007), *aff'd sub nom. Int'l Bhd. Teamsters v. Coca-Cola Co.*, 954 A.2d 910 (Del. 2008). Furthermore, as discussed above, mere approval of a transaction is not enough to "infer culpable knowledge or bad faith on the part of individual directors." *Wood*, 953 A.2d at 142.

In addition, despite his small share in the Thunder, there is no basis for concluding that Dobson has any risk of liability for SandRidge's decision to sponsor the team. Dobson joined the Board in 2009, <u>after</u> its sponsorship agreement with the Thunder was signed (*see* Compl. ¶168), and thus would bear no liability in connection with the sponsorship even if the claim were not time-barred. The same is true of Defendant Brewer, who was not appointed to the Board until 2011 (*see id.* ¶ 33).

       e)      <u>A Majority of Directors Are Disinterested With Respect to the Entrenchment Claims.</u>

Plaintiffs allege that the directors face a risk of liability on Plaintiffs' "entrenchment claims" because they breached their duty of loyalty by taking steps to perpetuate themselves in office. (Compl. ¶¶ 144, 213) The allegations fail at the threshold, because the terms of the settlement with TPG render implausible — and

therefore insufficient to survive a motion to dismiss — any claim that the Board has acted

to entrench itself or management.  *See Kansas Penn Gaming, LLC v. Collins,* 656 F.3d

1210, 1214 (10th Cir. 2011) ("'only a complaint that states a plausible claim for relief

survives a motion to dismiss'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). [6]

The settlement placed four TPG nominees on the Board and would deliver

control of the Board to TPG nominees if Ward is not removed by June 30.  *See* Ex.1.  The

Independent Directors' willingness to deliver control to TPG nominees if Ward is not

terminated renders implausible any claim that they breached their duties of loyalty by

seeking to entrench either themselves or management.

In seeking to establish that the Board faces liability for attempting to

entrench itself, Plaintiffs rely on a preliminary injunction opinion issued by the Delaware

Court of Chancery <u>before</u> the settlement with TPG.  The Court's opinion addressed a

narrow issue irrelevant to Plaintiffs' claims — whether the Board should approve TPG's

nominees for purposes of disabling certain "change of control" provisions in debt

agreements.  Days after the ruling, the Board cured the conduct criticized by the Court by

---

[6] In determining whether a claim meets the "plausibility" standard required to survive a motion to dismiss, a court may consider not only the allegations of the complaint but "documents attached to it or incorporated by reference, as well as matters of which a court may take judicial notice." *Salgado v. Sun Loan, Inc.*, No. CIV-12-187-D, 2012 WL 1941579, at *1 (W.D. Okla. May 29, 2012) (quotation marks and citation omitted).  The terms of the TPG settlement are incorporated by reference in the Complaint, which refers to settlement terms including the appointment of four TPG directors to the Board (Compl. ¶ 124), and also subject to judicial notice, because they are set forth in public filings with the SEC.  *See supra* n. 1.

approving the TPG slate and thereby disabling the "change of control" provisions, rendering the preliminary injunction moot.  *See* Ex. 7 (Form 8-K dated March 12, 2013). The Board's decision to approve the TPG slate — and its subsequent settlement with TPG — refute any argument that the Board faces a substantial risk of liability for entrenching itself during the corporate control contest with TPG.

Plaintiffs' allegations about the Board's adoption of a "poison pill" and bylaw amendments are no more persuasive.  Delaware law permits "poison pills" and other defensive measures in appropriate circumstances.  *See, e.g.*, *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1388, n.38 (Del. 1995).  Here, moreover, the Board terminated the "poison pill," rendering all claims relating to it moot.  *See* Ex. 2.[7]

### B.   Plaintiffs Fail to Create a Reasonable Doubt That Any of the Board's Actions Were Not a Valid Exercise of Business Judgment.

For demand to be excused under the second prong of *Aronson*, a plaintiff must plead specific facts demonstrating that the challenged transaction was not a valid exercise of business judgment.  *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A. 2d 808, 824 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006).  Plaintiffs must raise a reasonable doubt that the "action was taken honestly and in good faith" or that the Board

---

[7] The Complaint also alleges that SandRidge's bylaws entrench directors by establishing a staggered board (Compl. ¶ 116),  but staggered boards are expressly permitted by the Delaware General Corporations Law ("DGCL").  *See*  DEL. CODE. ANN. tit. 8, §141(d). Likewise, while the Complaint criticizes the special meeting provisions of SandRidge's bylaws, the DGCL expressly authorizes special meeting rules.  *See*  DEL. CODE. ANN. tit. 8, § 211(d).

was "adequately informed in making the decision." *Id.* (quotation marks and citation omitted).  Where, as here, a corporation's charter exculpates directors for breaches of the duty of care, the standard is even higher; the complaint must plead particularized facts showing that the directors engaged in an "intentional dereliction of duty or a conscious disregard for their responsibilities, amounting to bad faith" in order to establish demand futility.  *Goldman Sachs*, 2011 WL 4826104, at *12-15 (quotation marks and citation omitted).

Approval of a related-party transaction, without more, is not sufficient to excuse demand under the second prong of *Aronson*; rather, a plaintiff must establish that the board acted without "adequate deliberation in a manner that suggests that they did not care that shareholders would suffer a loss" — a "scienter based test" which requires "not only that the directors were incorrect in their assessment at the time but that they either intended to harm shareholders, or at least were absolutely careless in the matter."  *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 595 (Del. Ch. 2007).

Here, there are no facts pleaded suggesting that the Independent Directors "intended to harm shareholders" or were "absolutely careless" in approving SandRidge's transactions with WCT, the repurchase of EWPP from Ward, the sponsorship of the Thunder, or the leasing of ranchland from Ward.  The Complaint does not even allege that the financial terms of these transactions were unfair or unreasonable.  As discussed above, Plaintiffs also do not allege facts showing that the Board committed waste by approving the compensation packages or Ward's amended employment contract.

23

## II.  THE SECTION 14(A) CLAIM FAILS ON THE MERITS.

Plaintiffs' Section 14(a) claim against the Independent Directors fails not only for lack of derivative standing, but on the merits.  The very premise of the claim — that SandRidge's proxies were false and misleading because they "failed to disclose the adjacent acquisitions engaged in by the Ward Entity Defendants" (Compl. ¶ 258) — is untenable for the simple reason that "an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993); *accord United Food & Commercial Workers Union v. Chesapeake Energy Corp.,* No. CIV-09-1114-D, 2013 WL 1336123, at *9 (W.D. Okla. Mar. 29, 2013).  Here, the Independent Directors had no duty to disclose the "adjacent acquisitions," because SEC rules only required SandRidge to disclose transactions in which *SandRidge* "was or is to be a participant."  17 C.F.R. § 229.404(a) (2012).  Moreover, the Complaint pleads no facts suggesting that any of the Independent Directors were even aware of the "adjacent acquisitions."

In addition, to state a claim under Section 14(a), a plaintiff must allege facts showing that the proxy statements were an "essential link in the accomplishment" of a transaction, such as a merger, that caused the plaintiff damages.  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1100 (1991).  Plaintiffs plead no such transaction, but instead proceed on the theory that the proxy statements "were an essential link" in reelecting the Board and thereby permitting wrongdoing to continue.  (Compl. ¶ 260.)  Courts repeatedly have rejected 14(a) claims asserting that proxy statements allowed directors to

24

"retain their positions on the board" and thereby perpetuated mismanagement. *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992); *United States v. Matthews*, 787 F.2d 38, 48 (2d Cir. 1986) (Section 14(a) not intended to redress mismanagement or breach of fiduciary duty); *Epic Enters. v. Brothers*, 395 F. Supp. 773, 776 (N.D. Okla. 1975) (dismissing Section 14(a) claim challenging actions taken by virtue of "Defendants' position" rather than "through an authorization obtained" pursuant to proxy statements).

III. THE FIDUCIARY DUTY AND WASTE CLAIMS FAIL ON THE MERITS.

To the extent premised on alleged breaches of the duty of care, Plaintiffs' breach of fiduciary duty claims are barred by the exculpatory provision of SandRidge's Certificate of Incorporation.  *See* Ex.5, art. 9; *Robotti & Co., LLC v. Liddell*, No. 3128, 2010 WL 157474, at *12 (Del. Ch. Jan 14, 2010).  To the extent premised on intentional misconduct, the claims fail to state a claim because, as discussed above, the Complaint is devoid of allegations showing that the Independent Directors acted with scienter.

Finally, the Complaint does not state a waste claim for the alleged excessive compensation or other transactions because it does not show "the corporation received no consideration, or that a transfer of corporate assets served no corporate purpose."  *Official Comm. Of Unsecured Creditors of Int. Health Servs., Inc. v. Elkins*, No. 20228, 2004 WL 1949290, at *17 (Del. Ch. Aug. 24, 2004); *see also* Points I.A.2.(c) & I.B.

## CONCLUSION

For the foregoing reasons, this Action should be dismissed.

25

Dated: June 3, 2013

Of Counsel:

COVINGTON & BURLING LLP
Mark P. Gimbel (admitted *pro hac vice*)
C. William Phillips (admitted *pro hac vice*)
Brian B. Alexander (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

Respectfully submitted,

CROWE & DUNLEVY

*/s/ Thomas B. Snyder*
Thomas B. Snyder, Esq., #211230CA
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
(405) 234-3254

*Attorneys for the Independent Director*
*Defendants and Nominal Defendant*
*SandRidge Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on 3rd day of June, 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Amanda F Lawrence alawrence@scott-scott.com,
Andrew D Graham agraham@jw.com
Brian B Alexander balexander@cov.com
C Williams Phillips cphillips@cov.com
Gregory T Metcalfe gmetcalfe@gablelaw.com,
Irina Kobylevsky ikobylevsky@kaplanfox.com
James E Dunn jim@usattorney.com,
Jeffrey P Campisi jcampisi@kaplanfox.com
Joseph P Guglielmo jguglielmo@scott-scott.com
Louis N Boyarsky lboyarsky@glancylaw.com
Mark P Gimbel mgimbel@cov.com
Mark T Josephs mjosephs@jw.com,
Michael Burrage mburrage@whittenburragelaw.com,
Randa Kay Reeves rreeves@whittenburragelaw.com,
mailto:docketing@whittenburragelaw.com
Reggie N Whitten rwhitten@whittenburragelaw.com,
Robert N Kaplan rkaplan@kaplanfox.com
Simone Gosnell Fulmer sfulmer@whittenburragelaw.com
Thomas B Snyder thomas.snyder@crowedunlevy.com,
Thomas William Gruber tgruber@gablelaw.com,
William A Edmondson dedmondson@gablelaw.com,

/s/ *Thomas B. Snyder*
Thomas B. Snyder