## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W Relating to All Derivative Actions |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is made and entered into by the following parties, each of which is individually referred to herein as a "Settling Party" and all of which are collectively referred to as the "Settling Parties": (1) lead plaintiff Paul Elliot, on behalf of the Paul Elliot IRA R/O, and plaintiffs Arthur I. Levine, Lisa Ezell, Jefferson L. Mangus, Tyler D. Mangus, Claudia D. Fanelli, Joan Brothers, and Deborah Depuy, (each, a "Plaintiff"; collectively, "Plaintiffs"); (2) the Special Litigation Committee (as further defined below, the "SLC") of the Board of Directors (the "Board") of nominal defendant SandRidge Energy, Inc. ("SandRidge" or the "Company"); (3) defendants Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota (the "Independent Directors"); and (4) defendant Tom L. Ward ("Ward"). Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever resolve, discharge, and settle any and all Released Claims against the Independent Directors and Ward (collectively, the "Settling Defendants") and other Released Persons.[1]

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Section 1 below.

EXHIBIT
1

## RECITALS

WHEREAS, on or about December 19, 2012, Plaintiff Arthur I. Levine filed a shareholder derivative action (the "*Levine*" action) entitled *Levine v. Ward*, No. CIV-12-1404-W;

WHEREAS, on or about January 22, 2013, Plaintiff Deborah Depuy filed a shareholder derivative action (the "*Depuy*" action) entitled *Depuy v. Ward*, No. CIV-13-69-W;

WHEREAS, on or about January 29, 2013, Plaintiff Paul Elliot filed a shareholder derivative action (the "*Elliot*" action) entitled *Elliot v. Ward*, No. CIV-13-102-W;

WHEREAS, on or about February 15, 2014, Plaintiff Joan Brothers filed a shareholder derivative action (the "*Brothers*" action) entitled *Brothers v. Ward*, No. CIV-13-167-W;

WHEREAS, on or about March 22, 2013, Plaintiff Lisa Ezell, Jefferson L. Mangus, and Tyler Mangus filed a shareholder derivative action (the "*Ezell*" action) entitled *Ezell v. Ward*, No. CIV-13-286-W, after which an amended complaint was filed in the *Ezell* action in which Plaintiff Claudia D. Fanelli was added as an additional Plaintiff;

WHEREAS, by order dated April 10, 2013, the Court (i) consolidated the *Levine, Depuy, Elliot, Brothers,* and *Ezell* actions into this consolidated shareholder derivative action (the "Consolidated Action"), (ii) directed that the consolidated case be titled *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W, (iii) appointed Paul Elliot as Lead Plaintiff, (iv) appointed Whitten Burrage and Kaplan Fox & Kilsheimer LLP as co-lead counsel ("Co-Lead Counsel"); and (v) appointed Federman & Sherwood as liaison counsel;

WHEREAS, on May 1, 2013, Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint (the "Complaint") in the Consolidated Action asserting claims on behalf of SandRidge against the Settling Defendants as well as three additional defendants that are not a party to this Stipulation or the Settlement: TLW Land & Cattle, LP ("TLW"), WCT Resources,

2

LLC ("WCT"), and 192 Investments, LLC ("192") (each, a "Non-Settling Defendant"; collectively, the "Non-Settling Defendants");

WHEREAS, on September 11, 2013, the Court granted, in part, and denied in part, the motions to dismiss filed by the defendants in the Consolidated Action, dismissing the Complaint with leave to replead;

WHEREAS, on October 9, 2013, Plaintiffs filed an Amended Verified Consolidated Shareholder Derivative Complaint (the "Amended Complaint") asserting claims derivatively on behalf of SandRidge against the Settling Defendants and the Non-Settling Defendants, including: (a) claims against defendant Ward for breach of fiduciary duty and misappropriation of trade secrets; (b) claims against the Independent Directors for waste of corporate assets and breach of fiduciary duty, including alleged breaches of the obligation to exercise oversight over SandRidge and its officers and directors; and (c) claims against the Non-Settling Defendants for misappropriation of trade secrets, unjust enrichment, and aiding and abetting breach of fiduciary duty;

WHEREAS, on September 22, 2014, the Court denied the Independent Directors' motion to dismiss the claims against them in the Amended Complaint, holding, inter alia, that Plaintiffs had adequately pleaded demand futility and stated claims against the Independent Directors for corporate waste and breach of fiduciary duty;

WHEREAS, on September 22, 2014, the Court granted, in part, and denied, in part, the motion of Ward and TLW to dismiss the claims against them in the Amended Complaint, dismissing Plaintiffs' claim against Ward for breach of fiduciary duty and Plaintiffs' claim against TLW for aiding and abetting breach of fiduciary duty and denying the motion insofar as

it sought to dismiss claims against Ward and TLW for misappropriation of trade secrets and claims against TLW for unjust enrichment;

WHEREAS, on September 26, 2014, the Board of Directors of SandRidge adopted a resolution forming a Special Litigation Committee (the "SLC") and delegating to the SLC the "full and exclusive power and authority of the Board of Directors to . . . . investigate, review, and evaluate the facts, circumstances and claims asserted in or relating to" the Consolidated Action and two pending shareholder derivative actions filed in state court in the District of Oklahoma County, which are respectively titled *Hefner v. Ward*, Case No. CJ-2013-63 (the "*Hefner*" action) and *Romano v. Ward*, Case No. CJ-2013-420 (the "*Romano*" action) (collectively, the "State Derivative Litigation");

WHEREAS, the petitions filed in the State Derivative Litigation assert claims that are substantially similar to claims in the Amended Complaint in the Consolidated Action, with the exception of one set of claims in the *Hefner* action that are not asserted in the Consolidated Action — specifically, claims that certain current and former officers and directors of SandRidge should be held liable for breach of fiduciary duty for either making certain alleged misrepresentations at issue in pending securities litigation and/or failing to institute adequate procedures and controls to ensure the accuracy of such alleged misrepresentations (as further defined in Section I below, the "Excluded Claims");

WHEREAS, the resolution forming the SLC delegates to the SLC full power and authority to determine whether the Consolidated Action and the State Derivative Litigation (collectively, the "Derivative Litigation") are in the best interests of the Company and, in connection therewith, to "determine whether to continue or to seek to dismiss all or part of the

4

[Derivative] Litigation or to settle some or all of the claims set forth in the [Derivative] Litigation";

WHEREAS, by order dated October 22, 2014, the Court denied the SLC's motion to stay the Consolidated Action pending the SLC's investigation of the claims in the Derivative Litigation, with the result that Plaintiffs thereafter proceeded to conduct discovery while the SLC's investigation of the claims asserted in the Derivative Litigation was ongoing;

WHEREAS, Plaintiffs have received extensive document discovery, including hundreds of thousands pages of documents produced by SandRidge, the Independent Directors, Ward, the Non-Settling Defendants and third parties;

WHEREAS, Plaintiffs served a letter from Randa Reeves to Joanne Sum-Ping dated May 3, 2015 supplementing their Rule 26 initial disclosures in the Consolidated Action (the "Supplemental Disclosures");

WHEREAS, the SLC has conducted an investigation into the claims in the Derivative Litigation, including a review of documents produced in the Consolidated Action as well as witness interviews;

WHEREAS, the SLC and the parties to the Consolidated Action participated in a mediation (the "Mediation") before the Hon. Layn Phillips, which commenced with in person meetings on January 30, 2015 and March 27, 2015 and continued thereafter through telephonic conferences between and among the parties, the Settling Defendants' insurers, and the mediator;

WHEREAS, during the course of the Mediation, counsel for the Settling Parties engaged in extensive settlement negotiations, including arm's length discussions concerning the merits of the Claims and defenses at issue in the Consolidated Action;

5

WHEREAS, as a result of the Mediation, Plaintiffs, the SLC on behalf of SandRidge, and the Settling Defendants have reached an agreement, consented to by those insurers for the Settling Defendants who will be called upon to fund the settlement, to settle all Claims that have been asserted in the Derivative Litigation, with the exception of the Excluded Claims and Claims against the Non-Settling Defendants, on the terms set forth herein (the "Settlement");

WHEREAS, the Settlement is intended to provide not only for a release of all Claims asserted against the Settling Defendants in the Derivative Litigation, with the exception of the Excluded Claims and Claims against the Non-Settling Defendants, but also for a release of all other Claims, including Unknown Claims, that SandRidge has, had, or may in the future have against the Settling Defendants and other Released Persons that arise out of or relate directly or indirectly to any facts or allegations asserted in the Amended Complaint, the Supplemental Disclosures, the Complaint, and the other complaints filed in the Derivative Litigation (the "Other Derivative Complaints");

WHEREAS, the Settlement is not intended to provide for a release of any Claims that SandRidge, or the Plaintiffs derivatively on behalf of SandRidge, may have against the Non-Settling Defendants;

WHEREAS, on the basis of the information available to them, including the extensive documents and information produced in discovery and other facts and materials adduced during the course of their investigation, Plaintiffs and the SLC each have independently evaluated the strengths and weaknesses of the Released Claims and determined that the terms of the Settlement set forth herein are fair, reasonable, and adequate, and in the best interests of the Company and its shareholders and believe that it is reasonable to seek approval of the Settlement by the Court

based upon the terms set forth herein and the substantial benefits to be provided to the Company by the Settlement;

WHEREAS, while the Plaintiffs believe that the Claims asserted in the Derivative Litigation have merit, they also recognize and acknowledge the following: (i) the expense and length of continued proceedings necessary to prosecute the Derivative Litigation; (ii) the risk that, if this Settlement is not consummated, the SLC may determine that the continued prosecution of all or part the Derivative Litigation is not in the best interests of SandRidge and its shareholders and may seek to terminate all or part of the litigation on that basis; (iii) the uncertainty and risk inherent in litigation, the problems of proof, and the potential existence of valid defenses to the claims asserted in the Derivative Litigation; and (iv) the substantial benefits provided to the Company by the proposed Settlement;

WHEREAS, the SLC (acting for and on behalf of the Company), in the exercise of its business judgment, has determined that it is in the best interests of the Company and its stockholders that the Derivative Litigation (with the exception of the Excluded Claims and Claims against the Non-Settling Defendants) be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation, and that the terms and conditions are fair, reasonable, and adequate;

WHEREAS, the SLC has reached this conclusion only after a comprehensive consideration of the pertinent factual and legal issues surrounding the allegations made in the Derivative Litigation during an extensive investigation that spanned more than six months and was informed by various prudential considerations, including the costs (financial and otherwise) of litigation, the uncertainty and risk inherent in any litigation, the potential disparity between the costs associated with continued litigation and a potential recovery sufficient to justify those

costs, and the possibility that continued litigation would harm SandRidge's competitive position, prospects, and reputation and distract SandRidge's Board and senior management from managing the affairs and operations of the Company;

WHEREAS, each of the Settling Defendants denies all allegations of wrongdoing or liability on his part, and specifically maintains that he has not committed any violation of law or breach of fiduciary duty or engaged in any wrongdoing whatsoever, but has concluded that it is desirable to enter into this Settlement solely to avoid the costs, disruption, uncertainty, and risk of further litigation, and without admitting the validity of any Claims or allegations made in the Derivative Litigation, or any liability with respect thereto;

NOW THEREFORE, it is hereby stipulated and agreed by and among the Settling Parties as follows:

1.    **DEFINITIONS**.  The following terms, used in this Stipulation, shall have the meanings specified below:

1.1    "Bar Order" means the provisions of the Judgment, described in Section 5 below, that, among other relief, bar certain claims for contribution and indemnification as specified therein.

1.2    "Chechele Litigation" means the action filed in the United States District Court for the Western District of Oklahoma titled *Chechele v. Ward et al.*, Case No. CIV-1286-M.

1.3    "Claims" means any and all suits, claims, causes of action, debts, demands, rights, liabilities, damages, obligations, judgments, duties, costs, expenses, matters and issues of every kind or nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued

8

or unaccrued, apparent or unapparent, including but not limited to any claims arising under any federal, state, foreign, or common law, including Unknown Claims, as defined herein.

1.4    "Company Stockholder" means all individuals and entities who held of record, or beneficially owned, directly or indirectly, any common stock of SandRidge as of the Record Date.

1.5    "Co-Lead Counsel" means Whitten Burrage and Kaplan Fox & Kilsheimer LLP.

1.6    "Corporate Governance Measures" has the meaning set forth in Section 3.1 below.

1.7    "Defendants" means the Settling Defendants and the Non-Settling Defendants collectively.

1.8    "Defensive Measures" means any actions taken by SandRidge or the Board prior to the filing of the Amended Complaint on October 9, 2013 with the actual or alleged purpose or effect of protecting against a hostile takeover or change of control, including (without limitation) the Board's approval of a shareholder rights plan (a.k.a. "poison pill"), the Board's adoption of bylaw provisions imposing a requirement that a majority of outstanding shares vote in favor of certain bylaw amendments, the Board's approval of debt instruments containing change of control (a.k.a. "proxy put") provisions, and the Board's alleged delay in approving the dissident slate of directors nominated by TPG-Axon for purposes of the change of control provisions in such debt instruments.

1.9    "Effective Date" means the first date by which all of the events and conditions specified in Section 7.1 of the Stipulation have been met and have occurred.

9

1.10    "Employment Agreements" mean the employment agreements between SandRidge and Tom Ward effective as of June 8, 2006, and December 20, 2011.

1.11    "Escrow Account" means the account to be established pursuant to Section 2 below and the Escrow Agreement.

1.12    "Escrow Agreement" means an escrow agreement substantially in the form of Exhibit A, subject to any revisions as may be agreed upon by all Parties hereto and by the escrow agent.

1.13    "Excluded Claims" means (a) any claims in the State Derivative Litigation that SandRidge may have for breach of fiduciary duty against Tom Ward, Matthew Grubb, James Bennett, William Gilliland, Jeffrey Serota, Everett Dobson, Jim J. Brewer, Daniel W. Jordan, Roy Oliver, D. Dwight Scott, or Stuart W. Ray based on allegations that each breached his fiduciary obligations by (i) making or approving the alleged misrepresentations concerning SandRidge's oil and gas assets and business prospects at issue in the complaints filed to date in the Securities Litigation, and/or (ii) failing to implement adequate internal controls and procedures to ensure the accuracy of the financial reporting and disclosures at issue in the complaints filed to date in the Securities Litigation

1.14    "Exhibits" means the exhibits to this Stipulation.

1.15    "Final Court Approval" means (i) if no appeal is filed, that the applicable time for the filing or noticing of any appeal from the Judgment has expired; or (ii) if an appeal is filed, that (a) the Judgment, has been finally affirmed on appeal or that the appeal has been dismissed, and (b) that the time within which to petition for rehearing, rehearing en banc, and for a writ of certiorari to review the Judgment has expired or all such petitions have been denied or,

if a petition for a writ of certiorari is granted, that the Judgment has been affirmed pursuant to that grant.

      1.16    "Final Resolution" means the entry of a judgment or judgments dismissing or otherwise resolving all claims asserted in the Securities Litigation and either (i) if no appeal is filed, that the applicable time for the filing or noticing of any appeal from any such judgment or judgments has expired; or (ii) if an appeal is filed from any such judgment, that (a) the judgment, has been finally affirmed on appeal or that the appeal has been dismissed, and (b) that the time within which to petition for rehearing, for rehearing en banc, and for a writ of certiorari to review the judgment has expired or all such petitions have been denied or, if a petition for a writ of certiorari is granted, that the judgment has been affirmed pursuant to that grant.

      1.17    "Insolvency Event" means: (a) the commencement of any case, action or proceeding before any court or other governmental authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or relief of debtors ("Insolvency Proceeding") that is filed, initiated or brought by SandRidge, as the debtor in such Insolvency Proceeding, or (b) any Insolvency Proceeding is filed, initiated or brought against a Party or Contributing Insurer, as the debtor in such Insolvency Proceeding, and such Insolvency Proceeding is not dismissed or otherwise terminated within sixty (60) days following the commencement thereof, or (c) any general assignment of assets made by a Party or Contributing Insurer for the benefit of creditors, or any composition, marshaling of assets for creditors, or other similar arrangement in respect of its creditors generally or any substantial portion of its creditors.

      1.18    "Judgment" means the judgment substantially in the form of Exhibit B, dismissing all claims against the Settling Defendants in the Consolidated Action and releasing

and discharging all Released Claims against all Released Persons, without releasing or discharging the Excluded Claims or Claims against the Non-Settling Defendants.

1.19 "Kallick Litigation" means the litigation filed in the Delaware Court of Chancery entitled Kallick v. SandRidge Energy, Inc. et al., C.A. No. 8182-CS.

1.20 "Non-Settling Defendants" means TLW, WCT and 192.

1.21 "Notice Order" means the order substantially in the form attached as Exhibit C granting preliminary approval of the proposed Settlement memorialized herein and providing for notice thereof to shareholders of SandRidge.

1.22 "Plaintiffs' Counsel" means Whitten Burrage, Kaplan Fox & Kilsheimer LLP, Jackson Walker L.L.P., and Federman & Sherwood.

1.23 "Record Date" means the date on which the Notice Order provided for in this Stipulation is entered by the Court.

1.24 "Related Party Transactions" means (i) any actual or alleged transaction involving or related to land, real property, or mineral rights between SandRidge, on the one hand, and any Released Person or Non-Settling Defendant, on the other hand, and (ii) any actual or alleged transaction involving a Released Person or a Non-Settling Defendant referenced in the Consolidated Complaint, the Supplemental Disclosures, or the Other Derivative Complaints. For the avoidance of doubt, the Related Party Transactions include, but are not limited to, (a) SandRidge's purchase of assets acquired by Ward as part of the Company's Executive Well Participation Program, and (b) SandRidge's sponsorship of the Oklahoma City Thunder and purchase of Oklahoma City Thunder tickets.

1.25 "Released Claims" means any and all Claims, with the exception of the Excluded Claims, that have been or could have been, or in the future can or might be, asserted by

12

SandRidge, or derivatively on behalf of SandRidge, in any court, tribunal, or proceeding against any Released Person arising out of or relating in any way, directly or indirectly, to:

(i)     any fact, circumstance, conduct, transaction or allegation asserted or referred to in the Amended Complaint, the Supplemental Disclosures, or any Other Derivative Complaint;

(ii)    the compensation, perquisites or severance paid to or received by Ward or any other officer or director of SandRidge prior to the filing of the Amended Complaint on October 9, 2013;

(iii)   the Board's oversight or alleged lack of oversight of land, real property, or mineral rights transactions or related activities of SandRidge, its officers, directors, or employees, or the Non-Settling Defendants, prior to the filing of the Amended Complaint on October 9, 2013;

(iv)    the approval or oversight of the Employment Agreements;

(v)     the Board's decision to terminate Tom Ward "without Cause;"

(vi)    the Related Party Transactions;

(vii)   any alleged usurpation of corporate opportunities of SandRidge or misappropriation of confidential information of SandRidge;

(viii)  the Chechele Litigation or the subject matter thereof; and

(ix)    the TPG-Axon Consent Solicitation, the TPG Litigation or the subject matter thereof, the Kallick Litigation or the subject matter thereof, or the Defensive Measures.

     1.26    "Released Persons" means all current and former officers and directors of SandRidge, including but not limited to Tom Ward, the Independent Directors, Stephen Beasley, Edward Moneypenny, Alan Weber, Dan Westbrook, James Bennett, Matthew Grubb, D. Dwight Scott, Stuart Ray, and Phil Warman and all of their respective agents, attorneys, financial or business advisors, consultants, heirs, representatives, executors, trustees, partners or general or limited partnerships, owned or affiliated entities, spouses, family members, estates,

administrators, insurers and reinsurers.  For the avoidance of doubt, the Settling Parties expressly

acknowledge and agree that the definition of Released Persons does not include the Non-Settling

Defendants.

      1.27    "Securities Litigation" means (i) the putative class action filed in the

United States District Court for the Western District of Oklahoma titled In re SandRidge Energy,

Inc. Securities Litigation, Case No. 5:12-cv-01341-W, (ii) the putative class action filed in the

United States District Court for the Western District of Oklahoma titled Lanier v. SandRidge

Energy, Inc. et al, Case No. CIV-15-634-M, and (iii) any subsequent litigation asserting

substantially similar securities law violations on behalf of a class or classes of common

stockholders or unitholders that overlaps in any respect with the proposed stockholder and

unitholder classes in the foregoing actions.

      1.28    "Settlement Payment" means $38 million dollars, to be funded solely by

the Settling Defendants' insurance carriers.

      1.29    "Settling Defendants" has the meaning set forth in the Recitals.

      1.30    "Settling Defendants' Counsel" means Covington & Burling LLP, Crowe

& Dunlevy, Latham & Watkins LLP and Corbyn Hampton Law Firm.

      1.31    "Supplemental Disclosure" has the meaning set forth in the Recitals.

      1.32    "SLC" has the meaning set forth in the Recitals.

      1.33    "TPG Axon Consent Solicitation" means the consent solicitation

commenced by TPG-Axon in or about December of 2012 seeking to destagger SandRidge's

Board and remove and replace the incumbent directors of SandRidge with nominees of TPG-

Axon.

      1.34    "TPG-Axon" means TPG-Axon Partners, LP.

1.35    "TPG Litigation" means the litigation filed in the Court of Chancery of the

State of Delaware titled TPG-Axon Partners, LP v. SandRidge Energy, Inc., et al., C.A. No.

8147-CS.

1.36    "Unknown Claims" means any Released Claims that SandRidge, the SLC,

Plaintiffs or any other Company Stockholder does not know or suspect to exist in his, her, or its

favor at the time of the release of the Released Persons.

2.    **SETTLEMENT PAYMENT**

2.1    Within 21 business days of the entry of the Judgment, the Settling

Defendants shall direct their insurers to make the Settlement Payment to the Escrow Account.

The Settling Parties expressly acknowledge and agree that the Settling Defendants shall have no

financial responsibility for the Settlement Payment.

2.2    SandRidge and the Settling Defendants acknowledge and agree that the

Settlement Payment is the direct result of the litigation of the Consolidated Action by Plaintiffs.

2.3    Unless and until (1) this Stipulation has received Final Court Approval

and a Final Resolution of the Securities Litigation has occurred or (2) this Stipulation has been

terminated, any funds deposited in the Escrow Account (including any accrued interest) shall be

disbursed only (a) to Plaintiffs' Co- Lead Counsel, in satisfaction of any Fee Award approved by

the Court in the Consolidated Action, or (b) to SandRidge and the Settling Defendants or their

respective counsel for the purpose of paying or reimbursing any attorneys' fees, expenses,

settlement obligations, or judgments arising out of the defense, settlement, or resolution of the

Securities Litigation, ("Designated Litigation Expenses"), pursuant to the terms and procedures

set forth in the Escrow Agreement.

2.4    The Settling Defendants acknowledge that for reasons of convenience and efficiency, it is desirable for them to appoint a single party to serve as their representative for the purpose of delivering disbursement instructions under the Escrow Agreement with respect to Designated Litigation Expenses.  The Settling Defendants hereby appoint SandRidge to serve in that capacity and authorize representatives of SandRidge's Legal Department as set forth in the Escrow Agreement, including, but not limited to, General Counsel Philip Warman and Associate General Counsel Matt Thompson, to issue instructions to the Escrow Agent to disburse funds from the Escrow Account with respect to Designated Litigation Expenses in accordance with this Stipulation and the Escrow Agreement.  SandRidge shall promptly issue such instructions under the Escrow Agreement upon the receipt of invoices or other reasonable documentation from a Settling Defendant setting forth the amount of Designated Litigation Expenses then due and owing to such Settling Defendant.  A Settling Defendant may submit such documentation to SandRidge for payment on a monthly or less frequent basis.  For the avoidance of doubt, the Settling Defendants and SandRidge acknowledge and agree that SandRidge shall have no discretion to withhold submission of any such instruction to the Escrow Agent on behalf of a Settling Defendant for payment of Designated Litigation Expenses from the Escrow Account. The Settling Defendants may, in their discretion, replace Sandridge as their representative for purposes of delivering disbursement instructions under the Escrow Agreement.

2.5    SandRidge and the Settling Defendants agree to exhaust the Escrow Account before seeking additional insurance coverage for Designated Litigation Expenses.

2.6    In the event that any funds remain in the Escrow Account after Final Resolution of the Securities Litigation, after this Stipulation has receive Final Court Approval, and after all payments contemplated in Sections 2.3 (a) and (b) of this Stipulation have been

16

made, such funds shall be paid to SandRidge.  In the event that this Stipulation is terminated, then any funds in the Escrow Account shall be returned to the Contributing Insurers in accordance with the terms set forth in the Escrow Agreement.

  2.7  The Parties acknowledge and agree that any amounts deposited in the Escrow Account are not and shall not be deemed to be property of the estate of any Party or any insurer funding the Settlement Payment (each, a "Contributing Insurer"), within the meaning of Section 541 of the U.S. Bankruptcy Code or any similar provision of any other law governing an Insolvency Proceeding, and each Party hereby disclaims, releases, and waives any right it may have to assert that it has any equitable title to any such amounts in the Escrow Account, subject only to its rights as expressly provided in this Stipulation of Settlement and the Escrow Agreement.  The occurrence of an Insolvency Event with respect to any Party or Contributing Insurer shall not operate to stay, terminate, cancel, suspend, excuse, delay, impede or otherwise interfere with or impair the rights of the other Parties under the Escrow Agreement, or the performance by Escrow Agent of its duties under the Escrow Agreement.

  2.8  None of the Parties shall have any right, title or interest in or to, or possession of, the Escrow Account and therefore shall not have the ability to pledge, convey, hypothecate or grant as security all or any portion of the funds in the Escrow Account, unless and until such funds have been released pursuant to Section 2.3 or Section 2.6 of this Stipulation. Accordingly, the Escrow Agent shall be in sole possession of the Escrow Account and shall not act as custodian of the Parties under this Agreement for the purposes of perfecting a security interest therein, and no creditor of any of the Parties shall have any right to have or to hold or otherwise attach or seize all or any portion of the Escrow Account as collateral for any obligation and shall not be able to obtain a security interest in any of the funds in the Escrow Account

17

unless and until such funds have been released pursuant to Section 2.3 or Section 2.6 of this Stipulation.

3.  **CORPORATE GOVERNANCE MEASURES**

3.1  Plaintiffs, the SLC and SandRidge agree that SandRidge shall implement the following corporate governance reforms and improvements ("Corporate Governance Measures"):

- Amend SandRidge's bylaws (Article III, Section 1(b)) to eliminate its staggered board, or in the alternative, eliminate the requirement in Article IX of SandRidge's bylaws (as amended on November 19, 2012) that bylaw changes affecting the staggered board can be made only by holders of more than 50% of the voting power of issued and outstanding stock;

- Amend SandRidge's corporate governance guidelines to provide that any director who fails to get a majority vote for two elections in a row will not be able to run for a third election;

- Submit to a stockholder vote the question whether to amend SandRidge's charter to lower the minimum number of shareholder votes required to call a special meeting of shareholders from 50% to 25%;

- Amend SandRidge's bylaws to require poison pills: (i) to be approved by affirmative vote of at least 75% of the Board; and (ii) to expire after 6 months, unless they are authorized or ratified by shareholder vote;

- Formally separate the positions of chairman of the board and chief executive officer;

- Director (and Executive Officer) Education. Directors shall participate in an initial orientation program upon election to the Board and in regular continuing education programs thereafter, in order that they fully understand their directorial responsibilities and can faithfully fulfill their fiduciary duties. Such continuing education, outlining the essential elements of best corporate governance practices and informing directors of new developments in this area, shall be conducted by the Company's general counsel (if that position is occupied) or otherwise by a designated outside counsel with corporate governance expertise. Executive officers of the Company shall similarly participate in such orientation program upon joining the Company, and all executive officers shall participate in such regular continuing education programs; and

- Reform SandRidge's executive compensation policies by modifying the Company's corporate governance guidelines to:

   a.  reduce executives' ability to engage in insider trading and incentive to engage in stock manipulation around sales by requiring executives to sell shares pursuant to a non-terminable 10b5-1 plan;

   b.  adopt and implement an executive compensation claw-back policy consistent with any final rule adopted by the Securities and Exchange Commission pursuant to the rulemaking process that is presently underway;

   c.  prohibit SandRidge directors, officers, and designated key executives from engaging in transactions in puts, calls or other derivatives related to Company securities or trust securities on an exchange or in any other organized market; and

19

    d.    move from tri-annual to bi-annual say-on-pay.

    3.2    To the extent such reforms have already been implemented, SandRidge will agree to maintain the Corporate Governance Measures in place for at least 5 years; provided, however, that amendments to such reforms are permitted as necessary to comply with any future New York Stock Exchange or Securities and Exchange Commission rules.

    3.3    To the extent the Corporate Governance Measures have been implemented since the commencement of the Consolidated Action, SandRidge and the SLC agree that Plaintiffs' prosecution and settlement of the Consolidated Action was a material factor in its decision to adopt, implement or maintain the Corporate Governance Measures.  The Corporate Governance Measures constitute additional consideration for this Stipulation, and SandRidge, the SLC and the Settling Defendants acknowledge and agree that the Corporate Governance Measures confer material benefit upon SandRidge and its stockholders.

## 4.    RELEASE OF CLAIMS

    4.1    Upon the Effective Date, the Plaintiffs, SandRidge, the SLC (on behalf of the Company), and all Company Stockholders (derivatively on behalf of the Company) shall, by operation of the Judgment and to the fullest extent permitted by law, (i) release and be deemed to release and forever discharge the Released Claims (including Unknown Claims) against the Released Persons, (ii) covenant and be deemed to covenant not to prosecute any Released Claims (including Unknown Claims) against any Released Persons, and (iii) forever be barred and enjoined from asserting any Released Claims (including Unknown Claims) against any Released Persons.

    4.2    Upon the Effective Date, each of the Released Persons shall, by operation of the Judgment and to the fullest extent permitted by law, (i) release and be deemed to have

released and forever discharged Plaintiffs and Plaintiffs' Counsel, from all Claims (including Unknown Claims) arising out of or related to the institution, prosecution, assertion, settlement or resolution of the Consolidated Action, (ii) covenant and be deemed to covenant not to prosecute any such Claims, and (ii) forever be barred and enjoined from asserting any such Claims.

        4.3     With respect to any and all Claims released by this Stipulation, the Settling Parties and all Company Stockholders shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights and benefits of California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Settling Parties and all Company Stockholders shall be deemed to have, and by operation of the Judgment shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. The Settling Parties and all Company Stockholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Claims released by this Settlement but nonetheless, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released all such Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct

which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties and all Company Stockholders shall be deemed by operation of the Judgment to have acknowledged that the foregoing waivers were separately bargained for and are key elements of this Settlement and the releases granted herein.

4.4     Notwithstanding anything in this Stipulation to the contrary, this Stipulation is not intended to and shall not result in the release of (a) any Claim to enforce this Stipulation, (b) the Excluded Claims, or (c) any Claims against the Non-Settling Defendants.

5.     **BAR ORDER**

5.1     Upon the Effective Date, the Non-Settling Defendants shall, by operation of the Judgment and to the fullest extent permitted by law, be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim, including Claims for indemnity or contribution, against any Released Person where the alleged injury is the actual or threatened liability to SandRidge (or any derivative Plaintiff asserting Claims on behalf of SandRidge) for any Claim or allegation asserted in, or arising out of or relating to the subject matter of, the Derivative Litigation, with the exception of the Excluded Claims.

5.2     Upon the Effective Date, the Settling Defendants shall, by operation of the Judgment and to the fullest extent permitted by law, be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim, including Claims for indemnity or contribution, against any Non-Settling Defendants where the alleged injury is the actual or threatened liability to SandRidge (or any derivative Plaintiff asserting Claims on behalf of SandRidge) for any Claim or allegation asserted in, or arising out of or relating to the subject matter of, the Derivative Litigation, with the exception of the Excluded Claims.

5.3     The Non-Settling Defendants against whom a judgment, if any, is rendered may seek a judgment credit to the extent available under Oklahoma law as a result of the Settlement.

6.     **PROCEDURE FOR APPROVAL**

6.1     Within thirty (30) days of the execution of this Stipulation by all parties hereto or as otherwise ordered by the Court, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit C attached hereto, directing that notice of the proposed Settlement be provided to shareholders of SandRidge as follows:

(a)     by mailing a notice of the proposed Settlement (the "Notice of Proposed Settlement") substantially in the form of Exhibit C-1 to all shareholders of record as of the date on which the Notice Order is entered (the "Record Date");

(b)     by posting a summary notice describing the proposed Settlement (the "Summary Notice") substantially in the form of Exhibit C-2 on the Company's website and publishing the Summary Notice via a national newswire service such as Business Wire, Marketwire or PR Newswire;

(c)     by posting the Notice of Proposed Settlement on the website of Kaplan Fox & Kilsheimer LLP; and

(d)     by filing with the Securities and Exchange Commission a form 8-K attaching this Stipulation and the Exhibits hereto.

6.2     The Notice Order shall set a date for a final hearing, at least 45 days following the mailing and publication of notice (the "Settlement Hearing"), at which the Court shall consider and determine whether to approve the proposed Settlement pursuant to Federal

23

Rule of Civil Procedure 23.1, by entering the Judgment, substantially in the form of Exhibit B, dismissing the Released Claims from the Consolidated Action and, releasing and discharging all Released Claims against Released Persons, and providing for other relief set forth therein including entry of the Bar Order.

6.3     All costs relating to providing notice of the Settlement (excluding the costs of posting the Notice of Proposed Settlement on websites of Plaintiffs' Counsel) shall be paid by SandRidge or its insurers regardless of whether the Settlement is approved.

6.4     If any Released Claims are asserted against any Released Person in any court prior to Final Court Approval of the Settlement, Plaintiffs shall cooperate with the Settling Defendants in obtaining the dismissal, stay or withdrawal of such related litigation, including, where appropriate, joining in any motion to dismiss or stay such litigation pending the Settlement Hearing in the Consolidated Action.

7.      **CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT.**

7.1     The Settlement shall be conditioned upon the occurrence of all of the following events:

(a)     entry of the Notice Order;

(b)     entry of the Judgment substantially in the form of Exhibit B and without material modification of the releases or the Bar Order contained therein or any other material modification;

(c)     making of the Settlement Payment; and

(d)     Final Court Approval of the Settlement.

24

7.2     Any Settling Party may terminate the Settlement and this Stipulation by filing notice of termination of the Settlement on PACER in the Consolidated Action or serving such notice on counsel for the Settling Parties by mail within thirty (30) days after (a) the Court declines to enter the Notice Order or the Judgment, declines to approve the Settlement, or materially modifies any term of the Notice Order, the Judgment, or the Settlement, (b) the Settlement Payment is not made within 21 business days of the entry of the Judgment, or (c) the Judgment is reversed or modified in any material respect by an appellate court.

7.3     In the event that the Settlement or the Stipulation is not approved by the Court or the Settlement is terminated for any reason, the Settling Parties shall be restored to their respective positions in the Consolidated Action as of the date immediately prior to the execution of this Stipulation, and this Stipulation and all related communications shall be deemed settlement communications within the meaning of Federal Rule of Evidence 408 and shall not be introduced in any action or proceeding, except to the extent necessary to enforce this provision. In the event that the Settlement is terminated based on the fact that the Settlement Payment has not been made within 21 days of the entry of the Judgment, the Settling Parties agree that the Settlement shall be null and void and the Settling Defendants shall not oppose any motion to vacate or otherwise set aside the Judgment.

8.     **NO ADMISSION OF WRONGDOING**

8.1     Neither this Stipulation nor any Exhibit or provision thereof, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement, nor any of the negotiations, discussions, or proceedings in connection with the Stipulation, the Settlement, or the Mediation:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any

25

wrongdoing or liability of the Settling Defendants or any Released Person; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Settling Defendants or any Released Person, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

8.2     The Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.     **ATTORNEYS FEES**

9.1     Concurrent with seeking court approval of the Settlement, Plaintiffs' Counsel intend to apply to the Court for an award of attorneys' fees and expenses (the "Fee Application") in an amount not to exceed thirteen million dollars ($13,000,000). The Settling Defendants, their insurers, the Company, and the SLC shall take no position on the amount of the Fee Application, provided it complies with this Stipulation and seeks fees or expenses that are less than or equal to thirteen million dollars ($13,000,000) in the aggregate. No other application for attorneys' fees and expenses shall be filed by Plaintiffs' Counsel in connection with the Settlement, or the Released Claims.

9.2     Any fees and expenses awarded by the Court (the "Fee Award") shall be paid from the Escrow Account to accounts designated by Co-Lead Counsel within 10 business days of the later of (a) the date of the Fee Award, (b) the date on which the Judgment is entered, and (c) the date on which the Settlement Payment is made. The Fee Award shall be funded entirely from the Settlement Payment made by the Settling Parties' insurers, and the Settling

26

Parties expressly acknowledge and agree that the Settling Defendants shall have no financial responsibility for the Fee Award.  Any payments made in satisfaction of the Fee Award shall be made subject to Co-Lead Counsel's joint and several obligations to make refunds or repayment to the Escrow Account (or the Settling Defendants' insurers, if applicable) if the Stipulation, the Settlement, or the Fee Award is subsequently terminated, modified, or reversed as the a result of any appeal, further proceedings on remand, or successful collateral attack.

9.3     The Fee Application may be considered by the Court separately from the proposed Stipulation and Settlement.  Neither the disapproval or modification of the Fee Application by the Court nor the reversal or modification of a Fee Award on appeal shall affect or delay the enforceability of this Stipulation, the Settlement or the Judgment, or provide any of the Settling Parties with the right to terminate the Stipulation or Settlement.   Nor shall any such judicial action with respect to a Fee Application or Fee Award affect or delay the validity of any release granted pursuant to this Stipulation and Settlement.

9.4     Plaintiffs and Plaintiffs' Counsel warrant that no portion of any Fee Award shall be paid to any of the individual Plaintiffs, without Court approval.  Co-Lead Counsel shall allocate the Fee Award among Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the prosecution and settlement of the Action.  The Settling Defendants, their insurers, the SLC, and the Company shall have no input into or responsibility or liability for the allocation of any Fee Award.

10.     **MISCELLANEOUS PROVISIONS**

10.1     All of the Exhibits attached hereto are material and integral parts hereof and shall be incorporated by reference as though fully set forth herein.

10.2    This Stipulation may not be amended or modified, nor may any of its provisions be waived, except by a written instrument signed by counsel for all of the Settling Parties or their successors-in-interest.

10.3    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.4    The Settling Parties represent and agree that the terms of the Settlement were negotiated at arm's-length and in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

10.5    The consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders with respect to the Fee Application and enforcing the terms of this Stipulation.

10.6    Without further Order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

10.7    To the extent permitted by law, all agreements made and orders entered during the course of the Consolidated Action relating to the confidentiality of documents or information shall survive this Stipulation.

10.8    This Stipulation and the Exhibits constitute the entire agreement between and among the Settling Parties with respect to the Settlement and supersede any prior agreements among the Settling Parties with respect to the Settlement.  No representations, warranties or inducements have been made to or relied upon by any Settling Party concerning this Stipulation or its Exhibits, other than the representations, warranties and covenants expressly set forth in such documents.

28

10.9   This Stipulation may be executed in one or more counterparts, including by facsimile and electronic mail.

10.10   The Settling Parties and their respective counsel of record agree that they will use their reasonable best efforts to obtain all necessary approvals of the Court required by this Stipulation (including, but not limited to, using their reasonable best efforts to resolve any objections raised to the Settlement).

10.11   Counsel for the Settling Parties agree to cooperate fully with one another and use best efforts in seeking Court approval of the Notice Order, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain Final Court Approval of the Settlement.

10.12   The Settling Parties acknowledge that the Settling Defendants have entered into this Stipulation in part to avoid the expense and disruption of further discovery in the Consolidated Action.  Plaintiffs shall accordingly make reasonable efforts to refrain from seeking any further discovery of the Settling Defendants in connection with the prosecution of their Claims against the Non-Settling Defendants and the Settling Defendants reserve the right to object to providing any further document discovery.

10.13   Each counsel signing this Stipulation represents and warrants that such counsel has been duly empowered and authorized to sign this Stipulation on behalf of his or her clients.  Lead Plaintiff, Plaintiff Ezell and Plaintiffs' Counsel represent that Lead Plaintiff and Plaintiff Ezell are current shareholders of SandRidge and continuously owned shares of SandRidge common stock at all times relevant to the claims in the Consolidated Action.

10.14   This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared

by counsel for such Settling Party.  The Settling Parties acknowledge that the Stipulation is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

      10.15    This Stipulation is and shall be binding upon and shall inure to the benefit of the Settling Parties and all other Released Persons and the respective legal representatives, heirs, executors, administrators, successors and assigns.

      10.16   Unless otherwise provided herein, this Stipulation, the Settlement, and any and all disputes arising out of or relating in any way to this Stipulation or Settlement, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of law principles.

      IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be duly executed by their duly authorized attorneys as of the 7th day of October, 2015.

[Signature Pages Follow]

*Plaintiffs Paul Elliot, on behalf of the Paul Elliot IRA R/O, Lisa Ezell, Jefferson L. Mangus, Tyler Mangus, Arthur I. Levine, Deborah Depuy, and Joan Brothers*

By: _____

WHITTEN BURRAGE
Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
Randa K. Reeves, OBA # 30695
1215 Classen Drive
Oklahoma City, Oklahoma 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859

30

By: _____

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan
Jeffrey P. Campisi
Matthew P. McCahill
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Co-Lead Counsel for the Plaintiffs*

-and-

JACKSON WALKER L.L.P.
Mark T. Josephs
Andrew D. Graham
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

FEDERMAN & SHERWOOD
William B. Federman
10205 North Pennsylvania
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*The Special Litigation Committee of the Board of Directors of SandRidge Energy, Inc.*

By: _____

FELLERS SNIDER, P.C.
Robert G. McCampbell, OBA #10390

Travis V. Jett, OBA #30601
100 N. Broadway, Suite 1700
Oklahoma City, OK 73102
(405) 232-0621 (phone)
(405) 232-9659 (fax)

DEBEVOISE & PLIMPTON LLP
Edwin G. Schallert
Maeve O'Connor
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)

Scott N. Auby
555 13th Street NW, Suite 1100E
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)

*Defendants Jim J. Brewer, Everett R. Dobson,*
*William A. Gilliland, Daniel W. Jordan, Roy T.*
*Oliver, Jr., and Jeffrey S. Serota*

By: _____

CROWE & DUNLEVY
Thomas B. Snyder, Esq., OBA #31428
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
(405) 234-3254

COVINGTON & BURLING LLP
C. William Phillips
Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

*Defendant Tom L. Ward*

By:

CORBYN HAMPTON LAW FIRM
George S. Corbyn, Jr., OBA #1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma 73102
Telephone: (405) 239-7055
Facsimile: (405) 702-4348

LATHAM & WATKINS LLP
Steven M. Bauer
Margaret A. Tough
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone: (415) 391-0600
Facsimile:  (415) 395-8085

Everett C. Johnson, Jr.
J. Christian Word
Christopher J. Fawal
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

EXHIBIT A

## ESCROW AGREEMENT

This Escrow Agreement dated this 7th day of October, 2015 (the "Escrow Agreement"), is entered into by and among the following: (1) SandRidge Energy, Inc. ("SandRidge"); (2) Wilmington Trust, N.A., as escrow agent ("Escrow Agent"); (3) solely with respect to Sections 1.1, 1.3(d) and 1.8 hereof and Article 4 hereof, each of the insurers identified in Schedule 1.1(d) hereof (the "Participating Insurers"); and (4) Whitten Burrage, and Kaplan, Fox & Kilsheimer LLP (collectively, the "Co-Lead Counsel"; together with SandRidge and the Participating Insurers, the "Parties" and each individually, a "Party"). Capitalized terms used but not defined in this Escrow Agreement shall have the meanings assigned to them in the Stipulation of Settlement (as defined below).

## RECITALS

WHEREAS, (1) Paul Elliot, on behalf of the Paul Elliot IRA R/O, Arthur I. Levine, Lisa Ezell, Jefferson L. Mangus, Tyler D. Mangus, Claudia D. Fanelli, Joan Brothers, and Deborah Depuy (each, a "Plaintiff"; collectively, "Plaintiffs"), (2) Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota (collectively, the "Independent Directors"), (3) Tom L. Ward (together with the Independent Directors, the "Settling Defendants"), and (4) the Special Litigation Committee of the Board of Directors of SandRidge Energy, Inc. have entered into a Stipulation of Settlement dated October 7, 2015 (the "Stipulation of Settlement");

WHEREAS, the Stipulation of Settlement has been approved by the Court in *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W;

WHEREAS, the Co-Lead Counsel, as counsel for the Plaintiffs, may be entitled to certain funds pursuant to the Stipulation of Settlement;

WHEREAS, pursuant to the terms of the Stipulation of Settlement, the Plaintiffs, Settling Defendants and SandRidge desire for the Parties to enter into this Escrow Agreement with the Escrow Agent to govern the Escrow Funds (as defined below) and ensure that such funds are disbursed in accordance with the Stipulation of Settlement;

WHEREAS, the Parties desire to create an escrow account for the Escrow Funds and appoint the Escrow Agent as the escrow agent for such account upon the terms and conditions set forth below;

WHEREAS, the Participating Insurers, for the benefit of the Settling Defendants, intend to fund the Settlement Payment in the amount of $38,000,000 for which the Stipulation of Settlement provides, each according to the remaining limits of its policy identified in Schedule 1.1(d) ("Policy"), with the full Settlement Payment allocated according to the hierarchy of their respective Policies as determined by the relative positions of such Policies as excess to or underlying each other;

WHEREAS, it is the intention of the Parties that the Escrow Funds be used exclusively for the purposes described in this Escrow Agreement and the Stipulation of Settlement and the

1

Parties recognize that this Escrow Agreement creates an arrangement for the benefit of each of them to the extent set forth in this Escrow Agreement and that no Party or any Participating Insurer making a payment under Section 1.1 of this Escrow Agreement has a beneficial interest in the Escrow Funds (other than in connection with any Escrow Funds that are otherwise distributable to such Party, as specifically set forth in the Stipulation of Settlement and herein) and cannot exercise control over the Escrow Funds except to the limited extent described herein; and

WHEREAS, under the Stipulation of Settlement, the Settling Defendants have appointed SandRidge as their representative under this Escrow Agreement for the limited purposes set forth in this Escrow Agreement and the Stipulation of Settlement;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, SandRidge, the Escrow Agent, Co-Lead Counsel, and, solely with respect to Sections 1.1, 1.3(d) and 1.8 hereof and Article 4 hereof, the Participating Insurers hereby agree as set forth below.

## ARTICLE 1
## ESCROW DEPOSIT

Section 1.1   <u>Establishment of Escrow Account; Receipt of Escrow Funds</u>.

(a)     On or prior to the date of this Escrow Agreement, the Escrow Agent shall establish an account as a separate and distinct escrow account (the "<u>Escrow Account</u>").

(b)     SandRidge, on behalf of itself and the Settling Defendants, shall within three business days after the entry of the Judgment, deliver to each of the Participating Insurers a notice setting forth the date of entry of the Judgment ("<u>Entry Date</u>") and a statement of claims that were submitted by SandRidge not later than the date 45 days prior to the Entry Date (the "<u>Prior Claim Cutoff Date</u>") that have not yet been paid under the Policies as of the date such notice is given.

(c)     Within three business days after receiving the notice pursuant to Section 1.1(b), each of the Participating Insurers shall provide SandRidge notice of the amount of the limit of its Policy remaining after allowing for payment of all claims that were submitted by SandRidge not later than the Prior Claim Cutoff Date.

(d)     SandRidge, on behalf of itself and the Settling Defendants, shall within nine business days of the Entry Date (i) deliver to the Escrow Agent a notice setting forth the amount of each Participating Insurer's portion of the Settlement Payment, which portions shall be determined in accordance with Schedule 1.1(d) and the remaining limits as to which notice was given under Section 1.1(c) and (ii) direct each Participating Insurer to pay its portion of the Settlement Payment to the Escrow Agent for deposit in the Escrow Account.

(e)     Each Participating Insurer shall no later than twelve business days after receipt of the direction of SandRidge under Section 1.1(d), pay its portion of the Settlement Payment to the

2

Escrow Agent without any setoff, deduction or counterclaim of any kind. For the avoidance of doubt, the obligations of the Participating Insurers hereunder shall be several and not joint.

(f)     The Escrow Agent will hold all funds deposited in the Escrow Account (together with all products and proceeds thereof and including all interest, dividend, gain and other income earned with respect thereto, and including any funds that a Party is required to deposit in the Escrow Account under Sections 1.3(d) or 1.3(e), the "Escrow Funds") upon the terms and conditions set forth in this Escrow Agreement and shall not disburse funds from the Escrow Account except as provided herein.

Section 1.2   Investments.

(a)     The Escrow Agent shall invest the Escrow Funds, including any and all interest and investment income, in accordance with the written instructions provided to the Escrow Agent and signed by SandRidge; *provided* that the Escrow Funds may only be invested in money market mutual funds that are registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, and operated in accordance with Rule 2a-7 and that at the time of such investment are rated Aaa by Moody's and/or AAAm by S&P, including such funds for which the Escrow Agent or an affiliate provides investment advice or other services. In the absence of written investment instructions from SandRidge, the Escrow Funds shall remain uninvested. Any investment earnings and income on the Escrow Funds shall become part of the Escrow Funds, and shall be disbursed in accordance with Section 1.3 of this Escrow Agreement.

(b)     The Escrow Agent is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Escrow Agreement. The Escrow Agent shall have no responsibility or liability for any loss which may result from any investment or sale of investment made pursuant to this Escrow Agreement. The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Escrow Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Escrow Agent or for any third person or dealing as principal for its own account.   The Parties acknowledge that the Escrow Agent is not providing investment supervision, recommendations, or advice.

Section 1.3 Disbursements.   The Escrow Agent shall disburse the Escrow Funds only in accordance with the terms of this Section 1.3 and Section 1.7.

(a)     *Fee Award*. Upon receipt of a written instruction from each Co-Lead Counsel and SandRidge substantially in the form attached as Exhibit A and signed by an Authorized Person (as defined in Section 2.3) of each Co-Lead Counsel and SandRidge confirming and evidencing that the Court has entered a Fee Award and setting forth the amount of Escrow Funds payable to Co-Lead Counsel under such Fee Award, the Escrow Agent shall disburse to each Co-Lead Counsel the amount of Escrow Funds set forth in such instruction.

(b)     *Designated Litigation Expenses*. Upon receipt by the Escrow Agent of a written instruction from SandRidge, acting on behalf of itself and the Settling Defendants (and/or the Substitute Representative, acting on behalf of the Settling Defendants, if applicable),

3

substantially in the form attached as Exhibit B, and signed by an Authorized Person of SandRidge (and/or the Substitute Representative, if applicable), confirming and evidencing that Designated Litigation Expenses are payable to or for the benefit of a Settling Defendant or SandRidge under the Stipulation of Settlement and setting forth the amount of Escrow Funds payable to SandRidge or such Settling Defendant, as the case may be, as Designated Litigation Expenses, the Escrow Agent shall disburse the amount of Escrow Funds as set forth in such instruction to SandRidge, such Settling Defendant or the designee of SandRidge (or the Substitute Representative, if applicable), as the case may be. If the Designated Litigation Expenses of SandRidge and the Designated Litigation Expenses of the Settling Defendants exceed the amount of Escrow Funds held by the Escrow Agent, consistent with the "Payment Priority" provision in Endorsement 14 to the Directors and Officers Liability Policy-Zurich D&O Select issued by Zurich American Insurance Policy, the Escrow Agent shall pay such Designated Litigation Expenses in the following priority:  (i) first, the Escrow Agent shall disburse the Escrow Funds in payment of the Designated Litigation Expenses of the Settling Defendants, and (ii) second, the Escrow Agent shall disburse any remaining Escrow Funds in payment of the Designated Litigation Expenses of Sandridge.

(c)     *Surplus Funds Upon Termination.* Upon receipt by the Escrow Agent of a written instruction from SandRidge substantially in the form attached as Exhibit C and signed by an Authorized Person of SandRidge confirming and evidencing that the Stipulation of Settlement has received Final Court Approval and a Final Resolution of the Securities Litigation has occurred, the Escrow Agent shall disburse all of the Escrow Funds then remaining in the Escrow Account (after giving effect to any written instructions received by the Escrow Agent under Sections 1.3(a) and (b) of this Escrow Agreement) to SandRidge.

(d)     *Termination of Settlement.* If the Stipulation of Settlement is terminated after the disbursement of Escrow Funds to Co-Lead Counsel pursuant to Section 1.3(a), then, within ten business days of such termination, (i) each Co-Lead Counsel shall pay funds to the Escrow Agent for deposit in the Escrow Account in an amount equal to the amount of Escrow Funds disbursed to or for the benefit of each such Co-Lead Counsel under Section 1.3(a) and (ii) SandRidge shall provide written notice to the Escrow Agent setting forth the amounts to be distributed to each Participating Insurer as determined by SandRidge in accordance with Schedule 1.3(d). The Escrow Agent shall, after deducting for any fees owed or payable to the Escrow Agent pursuant to the terms hereof, thereafter distribute the Escrow Funds to the Participating Insurers such amounts as provided in the notice provided by SandRidge. The limits of each of the Policies shall be reinstated by the amounts so distributed. Any remaining Escrow Funds after the completion of all such disbursements shall be distributed to the Participating Insurers on a pro rata basis in proportion to the amount of each Participating Insurer's contributions under Section 1.1(e), as determined by the Escrow Agent. The Escrow Agent's calculations pursuant to this paragraph shall be final and conclusive absent manifest error.

(e)     *Vacatur or Modification of Fee Award.* If the Fee Award is reduced, modified, reversed, annulled, or vacated pursuant to a Final Order after the disbursement of Escrow Funds to Co-Lead Counsel pursuant to Section 1.3(a), then, within ten business days of such event, Co-Lead Counsel shall deliver funds to the Escrow Agent for deposit in the Escrow Account in an amount equal to the difference between (x) the aggregate amount of Escrow Funds disbursed to or for the benefit of each such Co-Lead Counsel under Section 1.3(a) before such reduction,

4

modification, reversal, annulment, or vacating of the Fee Award minus (y) the maximum amount of Escrow Funds payable to or for the benefit of each such Co-Lead Counsel under the Fee Award, as so reduced, reversed, modified, annulled or vacated. The Escrow Agent shall retain all Escrow Funds received from Co-Lead Counsel pursuant to this Section 1.3(e) and disburse such funds pursuant to the terms of this Escrow Agreement. "Final Order" means an order or judgment from a court of competent jurisdiction as entered on its docket as to which the time to appeal or petition for rehearing or certiorari has expired and as to which no appeal or petition for rehearing or certiorari is pending or, if an appeal or petition for rehearing or certiorari has been timely filed or taken, the order or judgment of the relevant tribunal has been affirmed (or such appeal or petition has been dismissed as moot) by the highest court (or other tribunal having appellate jurisdiction over the order or judgment) to which the order was appealed or the petition for rehearing or certiorari has been denied, and the time to take any further appeal or to seek further rehearing or certiorari has expired.

(f)     The Escrow Agent shall, in its sole discretion, comply with judgments or orders issued or process entered by any court with respect to the Escrow Funds, including without limitation any attachment, levy or garnishment, without any obligation to determine such court's jurisdiction in the matter and in accordance with its normal business practices. If the Escrow Agent complies with any such judgment, order or process, then it shall not be liable to any Party or any other person by reason of such compliance, regardless of the final disposition of any such judgment, order or process.

(g)     Upon request the Escrow Agent will furnish monthly statements to SandRidge setting forth the activity in the Escrow Account.

(h)     All disbursement instructions to the Escrow Agent under this Section 1.3 shall be in writing, which may be delivered by hand, courier, telecopier or by e-mail as a portable document file (pdf) to the addresses set forth in Section 4.3 of this Escrow Agreement.

The Escrow Agent shall disburse funds held in the Escrow Account by wire transfer in immediately available funds to the account set forth in the applicable written instruction delivered to the Escrow Agent under this Section 1.3 of this Escrow Agreement.

Section 1.4   Disbursement Instructions; Incumbency Certificates

(a)     The Parties understand and agree that Escrow Agent shall have no obligation or duty to act upon an instruction delivered to Escrow Agent for the disbursement of Escrow Funds under this Agreement unless such instruction is (i) in writing, (ii) signed by, in the case of the Co-Lead Counsel, any individual designated by Co-Lead Counsel on a certificate substantially in the form of Exhibit D-1 (such certificate, as updated from time to time, the "Co-Lead Counsel Certificate"); in the case of SandRidge, any individual designated by SandRidge on a certificate substantially in the form of Exhibit D-2 (such certificate, as updated from time to time, the "SandRidge Certificate"); or in the case of a Substitute Representative, any individual designated by such Substitute Representative on a certificate substantially in the form of Exhibit D-3 (such certificate, as updated from time to time, the "Substitute Representative Certificate" and together with the Co-Lead Counsel Certificate and the SandRidge Certificate, the "Incumbency Certificates") (in each case, each such individual an "Authorized Representative" of such party),

5

(iii) delivered to the Escrow Agent in accordance with Section 4.3; and (iv) authenticated by the Escrow Agent in accordance with Section 1.5.

(b)     With respect to any written instruction received by the Escrow Agent under this Escrow Agreement, or any other notice, direction or other instruction required to be delivered by a party to the Escrow Agent under this Escrow Agreement, the Escrow Agent is authorized to follow and rely upon any and all such instructions given to it from time to time if the Escrow Agent believes, in good faith, that such instruction is genuine and to have been signed by an Authorized Representative of such party. Except as set forth in Section 1.5(a), the Escrow Agent shall have no duty or obligation to verify that the person who sent such instruction is, in fact, a person duly authorized to give instructions on behalf of a party, other than to verify that the signature of the Authorized Representative on any such instruction appears to be the signature of such person. Each Party acknowledges and agrees that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to Escrow Agent, and that there may be more secure methods of transmitting instructions other than the method selected by such party. The Escrow Agent shall have no responsibility or liability for any loss which may result from (i) any action taken or not taken by the Escrow Agent in good faith reliance on any such signatures or instructions, (ii) as a result of a Party's reliance upon or use of any particular method of delivering instructions to the Escrow Agent, including the risk of interception of such instruction and misuse by third parties, or (iii) any action taken or not taken by an officer or Authorized Representative of a Party named in an updated Incumbency Certificate prior to actual receipt by the Escrow Agent of such updated Incumbency Certificate and the lapse of a reasonable time for Escrow Agent to act upon such updated Incumbency Certificate.

(b) A Party may, at any time, update its Incumbency Certificate by signing and submitting to Escrow Agent an updated such Incumbency Certificate. Any updated Incumbency Certificate shall become effective upon countersignature by the Escrow Agent.

Section 1.5   <u>Delivery and Authentication of Disbursement Instructions</u>

(a)     A written instruction to disburse Escrow Funds delivered by any party to the Escrow Agent under Section 1.3 of this Escrow Agreement (a "<u>Disbursement Instruction</u>") must be delivered to the Escrow Agent by one of the delivery methods set forth in Section 4.3.

(b)     The Escrow Agent will apply the following security procedures to verify the authenticity of Disbursement Instructions:

(i)     Escrow Agent will inspect the name and signature of the person identified on the Disbursement Instruction to confirm that such name and signature appear to be the same as the name and signature of an Authorized Representative of such party;

(ii)    The Escrow Agent will make a telephone call to an Authorized Representative of the party purporting to deliver the Disbursement Instruction (which Authorized Representative may be the same as the Authorized Representative who delivered the Disbursement Instruction) at any telephone number for such Authorized Representative as set forth on the applicable Incumbency Certificate to obtain oral

6

confirmation of delivery of the Disbursement Instruction. The Escrow Agent will make such confirmatory telephone call to an Authorized Representative of each party in the case of a joint Disbursement Instruction; and

(iii)    If a Disbursement Instruction is sent by email to the Escrow Agent, the Escrow Agent will review the email address of the sender of such Disbursement Instruction to verify that it appears to have been sent from an email address for an Authorized Representative of such Party as set forth on the applicable Incumbency Certificate or from an email address for a person authorized under such Incumbency Certificate to email a Disbursement Instruction to the Escrow Agent on behalf of the Authorized Representative).

(c)    Each Party acknowledges and agrees that the security procedures set forth in this Section 1.5 are a commercially reasonable method of verifying the authenticity of a Disbursement Instruction.

(d)    The Escrow Agent is authorized to disburse Escrow Funds as instructed under, and each Party expressly agrees to be bound by, any Disbursement Instruction that is verified by the Escrow Agent in accordance with the security procedures set forth in this Section 1.5, whether or not such Disbursement Instruction was actually authorized by such party. The Escrow Agent shall be deemed to have acted in good faith and without negligence, gross negligence or misconduct if the Escrow Agent disburses Escrow Funds as instructed under a Disbursement Instruction that has been verified by the Escrow Agent under this Section 1.5. Any action taken by Escrow Agent pursuant to this Section 1.5(d) prior to Escrow Agent's actual receipt and acknowledgement of a notice of revocation, cancellation or amendment of a Disbursement Instruction shall not be affected by such notice.

(e)    The security procedures set forth in this Section 1.5 are intended to verify the authenticity of Disbursement Instructions and are not designed to, and do not, detect errors in the transmission or content of any Disbursement Instruction. The Escrow Agent is not responsible for detecting an error in a Disbursement Instruction, regardless of whether any party believes the error was apparent.

(f)    When instructed to credit or pay a party by both name and a unique numeric or alphanumeric identifier (e.g., ABA number or account number), the Escrow Agent, and any other banks participating in the funds transfer, may rely solely on the unique identifier, even if it identifies a party different than the party named. Each party agrees to be bound by the rules of any funds transfer network used in connection with any payment order accepted by Escrow Agent under this Escrow Agreement.

(g)    The Escrow Agent shall not be obligated to make any payment requested under this Escrow Agreement if it is unable to verify the authenticity of the Disbursement Instruction by the security procedures set forth in this Section 1.5. The Escrow Agent's inability to verify a Disbursement Instruction may result in a delay or failure to act on that Disbursement Instruction. The Escrow Agent shall not be required to treat a Disbursement Instruction as having been received until Escrow Agent has authenticated it pursuant to the security procedures set forth in

7

this Section 1.5 and shall not be liable or responsible for any losses arising in relation to any such delay or failure to act.

Section 1.6  Income Tax Allocation and Reporting.

(a)    The Parties agree that, for tax reporting purposes, all interest and other income from investment of the Escrow Funds shall, as of the end of each calendar year and to the extent required by the Internal Revenue Service, be reported as having been earned by SandRidge, whether or not such income was disbursed during such calendar year.

(b)    Upon execution of this Escrow Agreement, the Parties shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Escrow Agent may request. The Parties understand that if such tax reporting documentation is not provided and certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Escrow Funds.

(c)    To the extent that the Escrow Agent becomes liable for the payment of any taxes in respect of income derived from the investment of the Escrow Funds, the Escrow Agent shall satisfy such liability to the extent possible from the Escrow Funds. SandRidge shall indemnify, defend and hold the Escrow Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Escrow Agent on or with respect to the Escrow Funds and the investment thereof unless such tax, late payment, interest, penalty or other expense was directly caused by the gross negligence or willful misconduct of the Escrow Agent. The indemnification provided by this Section 1.6(c) is in addition to the indemnification provided in Section 3.1 and shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

Section 1.7  Termination.  This Escrow Agreement shall terminate upon the later to occur of: (a) entry of the Final Order and Judgment with respect to the Stipulation of Settlement and any Fee Award Order; provided, that SandRidge shall promptly provide notice of the occurrence of such event to the Escrow Agent and (b) disbursement of all of the Escrow Funds, including any interest and investment earnings thereon and any amounts deposited to the Escrow Account pursuant to Section 1.3. Upon termination, the Escrow Agent is authorized to close the Escrow Account, and this Escrow Agreement shall be of no further force and effect except that the provisions of Sections 1.6(c), 3.1 and 3.4 of this Escrow Agreement shall survive termination.

Section 1.8  Limitations on Rights to Escrow Funds; Insolvency Event.

(a)    None of the Parties shall have any right, title or interest in or to, or possession of, the Escrow Account and therefore shall not have the ability to pledge, convey, hypothecate or grant as security all or any portion of the Escrow Funds unless and until such Escrow Funds have been released pursuant to Section 1.3 above. Accordingly, the Escrow Agent shall be in sole possession of the Escrow Funds and shall not act as custodian of the Parties under this Agreement for the purposes of perfecting a security interest therein, and no creditor of any of the Parties shall have any right to have or to hold or otherwise attach or seize all or any portion of

8

the Escrow Funds as collateral for any obligation and shall not be able to obtain a security interest in any of the Escrow Funds unless and until such Escrow Funds have been released pursuant to Section 1.3 above.

(b)    The Parties acknowledge and agree that all Escrow Funds are not and shall not be deemed to be property of the estate of any Party, within the meaning of Section 541 of the U.S. Bankruptcy Code or any similar provision of any other law governing an Insolvency Proceeding, and each Party hereby disclaims, releases, and waives any right it may have to assert that it has any equitable title to the Escrow Funds, subject to its rights as expressly provided in this Escrow Agreement and the Stipulation of Settlement. The occurrence of an Insolvency Event with respect to any Party shall not operate to stay, terminate, cancel, suspend, excuse, delay, impede or otherwise interfere with or impair the rights of the other Parties and performance by Escrow Agent of its duties under this Escrow Agreement. Unless Escrow Agent is specifically prevented by operation of law or by the provisions of an injunction or restraining order issued by a court of competent jurisdiction prohibiting Escrow Agent from carrying out its duties under this Escrow Agreement, Escrow Agent shall continue performing its duties under this Escrow Agreement, including, without limitation, making all required disbursements. "Insolvency Event" means: (a) the commencement of any case, action or proceeding before any court or other governmental authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or relief of debtors ("Insolvency Proceeding") that is filed, initiated or brought by a Party, as the debtor in such Insolvency Proceeding, or (b) any Insolvency Proceeding is filed, initiated or brought against a Party, as the debtor in such Insolvency Proceeding, and such Insolvency Proceeding is not dismissed or otherwise terminated within 60 days following the commencement thereof, or (c) any general assignment of assets made by a Party for the benefit of creditors, or any composition, marshaling of assets for creditors, or other similar arrangement in respect of its creditors generally or any substantial portion of its creditors.

## ARTICLE 2
## DUTIES OF THE ESCROW AGENT

Section 2.1 Scope of Responsibility.  Notwithstanding any provision to the contrary, the Escrow Agent is obligated only to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature. Under no circumstances will the Escrow Agent be deemed to be a fiduciary to any Party or any other person under this Escrow Agreement. The Escrow Agent will not be responsible or liable for the failure of any Party to perform in accordance with this Escrow Agreement. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement, whether or not an original or a copy of such agreement has been provided to the Escrow Agent; and the Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any such agreement, instrument, or document. References in this Escrow Agreement to any other agreement, instrument, or document are for the convenience of the Parties, and the Escrow Agent has no duties or obligations with respect thereto. This Escrow Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Escrow Agreement or any other agreement.

Section 2.2<u>Attorneys and Agents</u>.  The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Escrow Agent in accordance with the advice of counsel or other professionals retained or consulted by the Escrow Agent. The Escrow Agent shall be reimbursed as set forth in Section 3.1 for any and all compensation (fees, expenses and other costs) paid or reimbursed to such counsel or professionals. The Escrow Agent may perform any and all of its duties through its agents, representatives, attorneys, custodians, and nominees.

Section 2.3<u>Reliance</u>.  The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of the Parties or their respective agents, representatives, successors, or assigns. The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority. Concurrent with the execution of this Escrow Agreement, the Co-Lead Counsel and SandRidge shall deliver to the Escrow Agent certificates identifying those persons authorized to sign certificates and other documents (an "<u>Authorized Person</u>") on behalf of the Co-Lead Counsel and SandRidge, respectively, substantially in the form of <u>Exhibit D-1</u> and <u>Exhibit D-2</u> to this Escrow Agreement.

Section 2.4<u>Right Not Duty Undertaken</u>.  The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties.

Section 2.5<u>Substitute Representative</u>.  The Escrow Agent acknowledges that the Settling Defendants have the right to replace SandRidge as their representative under the Stipulation of Settlement and this Escrow Agreement at any time. Subject solely to the Escrow Agent receiving notice from the Settling Defendants appointing a replacement representative (such person, "<u>Substitute Representative</u>") and the Substitute Representative executing and delivering a joinder to this Escrow Agreement in the form of <u>Exhibit F</u>, the Substitute Representative shall assume all rights and obligations as the representative of the Settling Defendants under this Escrow Agreement (and SandRidge shall be relieved of and released from all such rights and obligations) and the Escrow Agent agrees to take instructions from the Substitute Representative on behalf of the Settling Defendants. For the avoidance of doubt, the Substitute Representative shall act only on behalf of the Settling Defendants and SandRidge retains all rights to act on its own behalf. Concurrent with the execution and delivery of a joinder to this Escrow Agreement, the Substitute Representative shall deliver to the Escrow Agent a certificate identifying those persons authorized to sign certificates and other documents on its behalf substantially in the form of <u>Exhibit D-3</u> to this Escrow Agreement and such persons shall be deemed to be "Authorized Persons" under this Escrow Agreement.

## ARTICLE 3
## PROVISIONS CONCERNING THE ESCROW AGENT

Section 3.1 <u>Indemnification</u>.  SandRidge hereby agrees to indemnify the Escrow Agent, its directors, officers, employees and agents (collectively, the "<u>Indemnified Parties</u>"), and hold the Indemnified Parties harmless from any and against all liabilities, losses, actions, suits or

proceedings at law or in equity, and any other expenses, fees or charges of any character or nature, including, without limitation, attorney's fees and expenses, which an Indemnified Party may incur or with which it may be threatened by reason of acting as or on behalf of Escrow Agent under this Agreement or arising out of the existence of the Escrow Account, except to the extent the same shall be caused by the Escrow Agent's gross negligence or willful misconduct. The terms of this paragraph shall survive termination of this Agreement.

Section 3.2 Limitation of Liability. THE ESCROW AGENT SHALL NOT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (I) DAMAGES, LOSSES OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED UNDER THIS ESCROW AGREEMENT, OTHER THAN DAMAGES, LOSSES OR EXPENSES WHICH HAVE BEEN FINALLY ADJUDICATED TO HAVE DIRECTLY RESULTED FROM THE ESCROW AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR (II) SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSSES OF ANY KIND WHATSOEVER (INCLUDING WITHOUT LIMITATION LOST PROFITS), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

Section 3.3 Resignation or Removal. The Escrow Agent may resign by furnishing 30 days' prior written notice of its resignation to the Parties. SandRidge may remove the Escrow Agent by furnishing to the Escrow Agent a written notice of its removal along with payment of all fees and expenses to which it is entitled through the date of termination. Such resignation or removal, as the case may be, shall be effective 30 days after the delivery of such notice or upon the earlier appointment of a successor, and the Escrow Agent's sole responsibility thereafter shall be to safely keep the Escrow Funds and to deliver the same to a successor escrow agent as shall be appointed by SandRidge, as evidenced by a written notice filed with the Escrow Agent or in accordance with a court order. If SandRidge fails to appoint a successor escrow agent prior to the expiration of 30 days following the delivery of such notice of resignation or removal, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon the Parties.

Section 3.4 Compensation. The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit E, which compensation shall be paid by SandRidge. The fee agreed upon for the services rendered under this Escrow Agreement is intended as compensation for the Escrow Agent's services as contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Escrow Agreement are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement, or any material modification hereof, or if any material controversy arises under this Escrow Agreement, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or its subject matter, then the Escrow Agent shall be compensated for such extraordinary services and reimbursed for all costs and expenses, including reasonable attorneys' fees and expenses, occasioned by any such delay, controversy, litigation or event. If any amount due to the Escrow Agent under this Escrow Agreement is not paid within 30 days of the date due, the Escrow Agent in its sole discretion may charge interest on such amount up to the highest rate permitted by applicable law. The Escrow Agent shall have,

and is hereby granted, a prior lien upon the Escrow Funds with respect to its unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights under this Escrow Agreement, superior to the interests of any other persons or entities and is hereby granted the right to set off and deduct any unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights from the Escrow Funds. The terms of this paragraph shall survive termination of this Agreement.

Section 3.5 <u>Disagreements</u>. If any conflict, disagreement or dispute arises between, among, or involving any of the Parties hereto concerning the meaning or validity of any provision of this Escrow Agreement or concerning any other matter relating to this Escrow Agreement, or the Escrow Agent is in doubt as to the action to be taken under this Escrow Agreement, the Escrow Agent may, at its option, retain the Escrow Funds until the Escrow Agent (i) receives a final non-appealable order of a court of competent jurisdiction or a final non-appealable arbitration decision directing delivery of the Escrow Funds, (ii) receives a written agreement executed by each of the Parties involved in such disagreement or dispute directing delivery of the Escrow Funds, or (iii) files an interpleader action in any court of competent jurisdiction, and upon the filing thereof, the Escrow Agent shall be relieved of all liability as to the Escrow Funds and shall be entitled to recover attorneys' fees, expenses and other costs incurred in commencing and maintaining any such interpleader action. The Escrow Agent shall be entitled to act on any such agreement, court order, or arbitration decision without further question, inquiry, or consent.

Section 3.6 <u>Merger or Consolidation</u>. Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

Section 3.7 <u>Attachment of Escrow Funds; Compliance with Legal Orders</u>. In the event that any Escrow Funds shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrow Funds (any of the foregoing court orders, judgments or decrees an "<u>Order</u>"), the Escrow Agent is hereby expressly authorized, in its sole discretion, to respond as it deems appropriate or to comply with any such Order, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction; provided, however, the Escrow Agent shall provide notice of any Order to the Parties and will provide the Parties with reasonable opportunity to respond to any Order). In the event that the Escrow Agent obeys or complies with any such Order it shall not be liable to any of the Parties or to any other person, firm or corporation, should, by reason of such compliance notwithstanding, such Order be subsequently reversed, modified, annulled, set aside or vacated.

Section 3.8 <u>Force Majeure</u>. The Escrow Agent shall not be responsible or liable for any failure or delay in the performance of its obligation under this Escrow Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fire; flood; wars; acts of terrorism; civil or military disturbances; sabotage; epidemic; riots; interruptions, loss or malfunctions of utilities, computer

(hardware or software) or communications services; accidents; labor disputes; acts of civil or military authority or governmental action; it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

Section 3.9 Consultation with Counsel.  The Escrow Agent shall be entitled to consult with legal counsel in the event that a question or dispute arises with regard to the construction of any of the provisions hereof, and shall incur no liability and shall be fully protected in acting in accordance with the advice or opinion of such counsel.

Section 3.10     Disagreements.  If the Escrow Agent receives conflicting instructions under this Escrow Agreement, the Escrow Agent shall be fully protected in refraining from acting until such conflict is resolved to the satisfaction of Escrow Agent.

Section 3.11     No Financial Obligation.  The Escrow Agent shall not be required to use its own funds in the performance of any of its obligations or duties or the exercise of any of its rights or powers, and shall not be required to take any action which, in the Escrow Agent's sole and absolute judgment, could involve it in expense or liability unless furnished with security and indemnity which it deems, in its sole and absolute discretion, to be satisfactory.

## ARTICLE 4
## MISCELLANEOUS

Section 4.1 Successors and Assigns; Benefit of Agreement.  This Escrow Agreement shall be binding on and inure to the benefit of the Parties and the Escrow Agent and their respective successors and permitted assigns. Each of the Settling Defendants shall be third party beneficiaries of this Escrow Agreement and shall have full rights to enforce the terms and provisions of this Escrow Agreement. No other persons shall have any rights under this Escrow Agreement. No assignment of the interest of any of the Parties (including by operation of law in connection with a merger or consolidation) shall be binding unless and until written notice of such assignment shall be delivered to each other Party and the Escrow Agent and shall require the prior written consent of each other Party and the Escrow Agent (such consent not to be unreasonably withheld).

Section 4.2 The Parties are aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state. The Escrow Agent shall have no liability to the Parties, their respective heirs, legal representatives, successors and assigns, or any other party, should any or all of the Escrow Funds escheat by operation of law.

Section 4.3 Notices.  Except as otherwise set forth in this Escrow Agreement, all notices, requests, demands, and other communications required under this Escrow Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) by overnight delivery with a reputable national overnight delivery service, (iv) by mail or by certified mail, return receipt requested, and postage prepaid, or (v) by email as a portable document file (pdf). If any notice is mailed, it shall be deemed given five business days after the date such notice is deposited in the

13

United States mail. If notice is given to a Party, it shall be given at the address for such Party set forth below or in the case of the Participating Insurers, at the address for each such Participating Insurer set forth on Schedule 1.1(d). It shall be the responsibility of the Parties to notify the Escrow Agent and the other Parties in writing of any name or address changes. Communications delivered to the Escrow Agent shall be deemed to have been given on the date received by the Escrow Agent.

If to SandRidge:

SandRidge Energy, INC.
123 Robert S. Kerr Ave.
Oklahoma City, OK 73102
Attention: J. Matthew Thompson
Telephone: (405) 429-6008
Facsimile:   (405) 429-5988

If to the Escrow Agent:

Wilmington Trust, N.A.
Corporate Client Services
50 South Sixth Street, Ste. 1290
Minneapolis, MN 55402
Attn: Andrew Wassing
Facsimile: (612) 217-5651

If to Co-Lead Counsel:

Whitten Burrage
1215 Classen Drive
Oklahoma City, Oklahoma 73103
Attention: Reggie N. Whitten
Telephone: (405) 516-7800
Facsimile: (405) 516-7859

and

Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Attention: Robert N. Kaplan
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Section 4.4 <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.  This Escrow Agreement shall be governed by and construed in accordance with the internal laws of the State

of New York applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

**EACH OF THE PARTIES HERETO EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN RESOLVING ANY CLAIM OR COUNTERCLAIM RELATING TO OR ARISING OUT OF THIS ESCROW AGREEMENT.**

Section 4.5 <u>Entire Agreement</u>.  This Escrow Agreement sets forth the entire agreement and understanding of the Parties related to the Escrow Funds and supersedes all prior understandings or agreements by or among the Parties, whether written or oral, relating to the Escrow Funds.

Section 4.6 <u>Amendment</u>.  This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled, or any provision of this Escrow Agreement may be waived, only by a written instrument executed by the Parties and the Escrow Agent.

Section 4.7 <u>Waivers</u>.  The failure of any Party to this Escrow Agreement at any time or times to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same performance. A waiver by any Party to this Escrow Agreement of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

Section 4.8 <u>Headings</u>.  Section headings of this Escrow Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions of this Escrow Agreement.

Section 4.9 <u>Counterparts</u>.   This Escrow Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original, and such counterparts shall together constitute one and the same instrument.

Section 4.10     <u>Severability</u>. The invalidity, illegality or unenforceability of any provision of this Escrow Agreement will in no way affect the validity, legality or enforceability of any other provision, and if any provision is held to be enforceable as a matter of law, the other provisions will not be affected thereby and will remain in full force and effect.

Section 4.11     <u>No Strict Construction; Interpretation</u>.     The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their collective mutual intent, and no rule of strict construction shall be applied against any Person. Whenever the words "<u>include</u>", "<u>includes</u>" or "<u>including</u>" are used in this Agreement, they shall be deemed to be followed by the words "<u>without limitation</u>," whether or not so followed. Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form.

Section 4.12     <u>Anti-Terrorism/Anti-Money-Laundering Laws</u>.     To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust, or other legal entity, Escrow Agent requires documentation to verify its formation and existence as a legal entity.     Escrow Agent may ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.     A portion of the identifying information set forth herein is being requested by Escrow Agent in connection with the USA PATRIOT Act, Pub. L. 107-56 (the "Act"), and each Party agrees to provide any additional information requested by Escrow Agent in connection with the Act or any similar legislation or regulation to which Escrow Agent is subject, in a timely manner.

[The remainder of this page left intentionally blank.]

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed by the Parties, or their duly authorized attorneys, as of the date first written above.

**SANDRIDGE ENERGY, INC.**

By: _____

Name:
Title:

**WILMINGTON TRUST, NATIONAL ASSOCIATION, as Escrow Agent**

By: _____

Name:
Title:

A-1

**Executed solely for the purpose of being bound by Sections 1.1, 1.3(d), 1.8 and Article 4:**

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.


By: _____


U.S. SPECIALTY INSURANCE COMPANY


By: _____


OLD REPUBLIC INSURANCE COMPANY


By: _____


BERKLEY INSURANCE COMPANY


By: _____

**WHITTEN BURRAGE, as Co-Lead Counsel**

By: _____

Name:
Title:

1215 Classen Drive
Oklahoma City, Oklahoma 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859

**KAPLAN, FOX & KILSHEIMER LLP, as Co-Lead Counsel**

By: _____

Name:
Title:

850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

<u>SCHEDULE 1.1(d)</u>

**Notice Addresses for the Participating Insurers,**
**The Policies Issued by the Participating Insurers, and**
**Their Obligations for Payment of the Settlement Payment**

A.     The Participating Insurers, their Policy Numbers, and their addresses for the purpose of giving notices under this Escrow Agreement are as follows:

     1.     National Union Fire Insurance Company of Pittsburgh, Pa.
           Policy Number: 01-593-23-63

           Kieran Hughes
           Vice President
           AIG Property Casualty
           32 Old Slip, 21st Floor,
           New York, NY 10005

     2.     U.S. Specialty Insurance Company
           Policy Number: 14-MGU-12-A26011

           Todd Richardson
           HCC Global Financial Products
           8 Forest Park Drive
           Farmington, CT 06032

     3.     Old Republic Insurance Company
           Policy Number: CUG 34937

           Vivian Cohn
           General Counsel
           Chicago Underwriting Group, Inc.
           191 North Wacker Drive, Suite 1000
           Chicago, IL  60606-1905

     4.     Berkley Insurance Company
           Policy Number: 11090275

           Michelle Klein
           VP - Chief Claims Officer
           Berkley Professional Liability, a W.R. Berkley Company
           757 Third Avenue, 10th Floor
           New York, NY 10017

B.      The Participating Insurers shall pay the full Settlement Amount among them, allocated according to the hierarchy of their Policies as determined by the relative positions of such Policies as excess to or underlying each other, as follows:

1. *First*, National Union Fire Insurance Company of Pittsburgh, Pa. shall pay the remaining amount of the limit of its Policy, as set forth in its notice under Section 1.1(c) of the Escrow Agreement.  For the avoidance of doubt, if such remaining limit is zero, then no payment will be due under this Paragraph B.1.

2. *Second,* U.S. Specialty Insurance Company shall pay the remaining amount of the limit of its Policy, as set forth in its notice under Section 1.1(c) of the Escrow Agreement.

3. *Third*, Old Republic Insurance Company shall pay $10,000,000.

4. *Fourth*, Berkley Insurance Company shall pay the lesser of (a) $10,000,000 and (b) $38,000,000 minus the total of the amounts to be paid by other Participating Insurers under Paragraphs B.1 through B.3.

<u>SCHEDULE 1.3(d)</u>

**Termination of Settlement**

In the event of termination of the Stipulation of Settlement as referenced in Section 1.3(d), SandRidge shall provide notice to and direct the Escrow Agent to disburse the Escrow Funds to the Participating Insurers as follows until no funds remain in the Escrow Account, if applicable:

1. *First,* the Escrow Agent shall disburse to Berkley Insurance Company the principal amount of its payment under Section 1.1(e).

3. *Second*, the Escrow Agent shall disburse to Old Republic Insurance Company the principal amount of its payment under Section 1.1(e).

4. *Third*, the Escrow Agent shall disburse to U.S. Specialty Insurance Company the principal amount of its payment under Section 1.1(e).

5. *Fourth*, the Escrow Agent shall disburse to National Union Fire Insurance Company of Pittsburgh, Pa. the principal amount of its payment under Section 1.1(e), if any.



## Exhibit A

### Form of Disbursement Instruction - Fee Award

### To

### Wilmington Trust, N.A.,

### as Escrow Agent

SandRidge Energy, Inc., a Delaware corporation ("SandRidge") and Wilmington Trust, N.A., a national banking association, as escrow agent (the "Escrow Agent") are parties to an Escrow Agreement, dated as of October [__], 2015 (the "Escrow Agreement"). Capitalized terms defined in the Escrow Agreement have the same meanings when used in this Disbursement Instruction.

Pursuant to Section 1.3(a) of the Escrow Agreement, the Co-Lead Counsel and SandRidge hereby confirm that the Court has entered a Fee Award in favor of Co-Lead Counsel in the amount of $[_____] and hereby instruct you to release Escrow Funds to each Co-Lead Counsel in the amounts set forth below by wire transfer of immediately available funds to the respective accounts set forth below not later than the second business day after receipt of this Disbursement Instruction.

Whitten Burrage

Amount: $[_____]

[Wire instructions]


Kaplan, Fox & Kilsheimer LLP

Amount: $[_____]

[Wire instructions]



Co-Lead Counsel:
WHITTEN BURRAGE

By:_____
    Name:
    Title:


Co-Lead Counsel:
KAPLAN, FOX & KILSHEIMER LLP

By:_____
    Name:
    Title:


SandRidge Energy, Inc.


By:_____
    Name:
    Title:


Dated:  [_____]


**WILMINGTON**
**TRUST**

## <u>Exhibit B</u>

**Form of Disbursement Instruction - Designated Litigation Expenses**

**to**

**Wilmington Trust, N.A.,**

**as Escrow Agent**

SandRidge Energy, Inc., a Delaware corporation ("<u>SandRidge</u>") and Wilmington Trust, N.A., a national banking association, as escrow agent (the "<u>Escrow Agent</u>") are parties to an Escrow Agreement, dated as of October [__], 2015 (the "<u>Escrow Agreement</u>"). Capitalized terms defined in the Escrow Agreement have the same meanings when used in this Disbursement Instruction.

Pursuant to Section 1.3(b) of the Escrow Agreement, [*insert name of SandRidge or the Substitute Representative, as applicable*] hereby instructs the Escrow Agent to pay the following Designated Litigation Expenses of [*insert name of SandRidge and/or Settling Defendant(s), as applicable*] under Section 2.2 of the Stipulation of Settlement to the following parties by wire transfer of immediately available funds to the account(s) set forth below not later than the second business day after receipt of this Disbursement Instruction.

| Name of Recipient (SandRidge, a Settling Defendant, or a designee of the foregoing) | Amount of Escrow Funds (payable for Designated Litigation Expenses) | Wire instructions |
|---|---|---|
|  |  |  |
|  |  |  |

[*SandRidge Energy, Inc. or Substitute Representative, as applicable*]

By:_____
    Name:
    Title:

Dated:  [_____]



**EXHIBIT C**

**FORM OF DISBURSEMENT INSTRUCTION - SURPLUS FUNDS UPON TERMINATION**

**TO**

**WILMINGTON TRUST, N.A.,**

**as Escrow Agent**

SandRidge Energy, Inc., a Delaware corporation ("SandRidge") and Wilmington Trust, N.A., a national banking association, as escrow agent (the "Escrow Agent") are parties to an Escrow Agreement, dated as of October [__], 2015 (the "Escrow Agreement"). Capitalized terms defined in the Escrow Agreement have the same meanings when used in this Disbursement Instruction.

Pursuant to Section 1.3(c) of the Escrow Agreement, SandRidge hereby confirms that the Stipulation of Settlement has received Final Court Approval and a Final Resolution of the Securities Litigation has occurred and hereby instructs you to release all of the Escrow Funds (after giving effect to any written instructions received by the Escrow Agent under Sections 1.3(a) and 1.3(b) of the Escrow Agreement) to SandRidge by wire transfer of immediately available funds to the account set forth below not later than the second business day after receipt of this Disbursement Instruction.

[Wire instructions]

SandRidge Energy, Inc.

By:_____
      Name:
      Title:

Dated:  [_____]



## EXHIBIT D-1

## FORM OF CERTIFICATE AS TO AUTHORIZED SIGNATURES
## OF CO-LEAD COUNSEL

Co-Lead Counsel hereby designates each of the following persons as its Authorized Representative for purposes of this Escrow Agreement, and confirms that the title, contact information and specimen signature of each such person as set forth below is true and correct. Each such Authorized Representative is authorized to initiate and approve transactions of all types for the Escrow Account established under the Escrow Agreement to which this Certificate is attached, on behalf of Co-Lead Counsel.

| **Name** (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required):<br>*If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required):<br>*If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |

| **Name** (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required):<br>*If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required):<br>*If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |



| Name (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number (required):** *If more than one, list all* | Office: Cell: Home: Other: |
| **E-mail (required):** *If more than one, list all* | Email 1: Email 2: |
| **Facsimile:** | |

| Name (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number (required):** *If more than one, list all* | Office: Cell: Home: Other: |
| **E-mail (required):** *If more than one, list all* | Email 1: Email 2: |
| **Facsimile:** | |

## COMPLETE BELOW TO UPDATE CERTIFICATE

If [Co-Lead Counsel] wishes to change the names or details of any of its Authorized Representatives, [Co-Lead Counsel] must complete, sign and send to Escrow Agent an updated copy of this Certificate with such changes. Any updated Certificate shall be effective once signed by [Co-Lead Counsel] and Escrow Agent and shall entirely supersede and replace any prior Certificate submitted to the Escrow Agent.

### WHITTEN BURRAGE

By:_____

Name:_____

Title:_____

Date: _____



**KAPLAN, FOX & KILSHEIMER LLP**

By:_____
Name:_____
Title:_____
Date: _____


**WILMINGTON TRUST, NATIONAL ASSOCIATION**


By:_____
Name:_____
Title:_____
Date: _____



*Internal Use Only:*
☐   **Updated details of Authorized Representatives completed in full**
☐   **Signed by a representative of [Lessor] per relevant board resolutions/certificate of incumbency on file (if relevant).**
☐   **Call-back performed to [Lessor] to confirm authenticity of updated Certificate:**
    **Person Called:_____  Date of Call: _____  Time of Call: __am/pm**

*Reviewed by (name):_Signature: ___Date:*



**EXHIBIT D-2**
**FORM OF CERTIFICATE AS TO AUTHORIZED SIGNATURES**
**OF SANDRIDGE**

SandRidge designates each of the following persons as its Authorized Representative for purposes of this Escrow Agreement, and confirms that the title, contact information and specimen signature of each such person as set forth below is true and correct. Each such Authorized Representative is authorized to initiate and approve transactions of all types for the Escrow Account established under the Escrow Agreement to which this Certificate is attached, on behalf of SandRidge.

| | |
|---|---|
| **Name** (print): | |
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required): *If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required): *If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |

| | |
|---|---|
| **Name** (print): | |
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required): *If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required): *If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |

| | |
|---|---|
| **Name** (print): | |
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required): *If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required): *If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |



| Name (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number (required):** *If more than one, list all* | Office: Cell: Home: Other: |
| **E-mail (required):** *If more than one, list all* | Email 1: Email 2: |
| **Facsimile:** | |

## COMPLETE BELOW TO UPDATE CERTIFICATE

If [SandRidge] wishes to change the names or details of any of its Authorized Representatives, [SandRidge] must complete, sign and send to Escrow Agent an updated copy of this Certificate with such changes. Any updated Certificate shall be effective once signed by [SandRidge] and Escrow Agent and shall entirely supersede and replace any prior Certificate submitted to Escrow Agent.

## SANDRIDGE ENERGY, INC.

By:_____
Name:_____
Title:_____
Date: _____

## WILMINGTON TRUST, NATIONAL ASSOCIATION

By:_____
Name:_____
Title:_____
Date: _____

*Internal Use Only:*
- ☐ **Updated details of Authorized Representatives completed in full**
- ☐ **Signed by a representative of Lessee per relevant board resolutions/certificate of incumbency on file (if relevant).**
- ☐ **Call-back performed to Lessee to confirm authenticity of updated Certificate:**
  **Person Called:_____ Date of Call: _____ Time of Call: __am/pm**

*Reviewed by (name):_____Signature: Date:*



**WILMINGTON**
TRUST

<u>**EXHIBIT D-3**</u>

**FORM OF CERTIFICATE AS TO AUTHORIZED SIGNATURES**
**OF SUBSTITUTE REPRESENTATIVE**

The Substitute Representative designates each of the following persons as its Authorized Representative for purposes of this Escrow Agreement, and confirms that the title, contact information and specimen signature of each such person as set forth below is true and correct. Each such Authorized Representative is authorized to initiate and approve transactions of all types for the Escrow Account established under the Escrow Agreement to which this Certificate is attached, on behalf of the Substitute Representative.

| | |
|---|---|
| **Name** (print): | |
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required): *If more than one, list all* | Office: Cell: Home: Other: |
| **E-mail** (required): *If more than one, list all* | Email 1: Email 2: |
| **Facsimile:** | |

| | |
|---|---|
| **Name** (print): | |
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number** (required): *If more than one, list all* | Office: Cell: Home: Other: |
| **E-mail** (required): *If more than one, list all* | Email 1: Email 2: |
| **Facsimile:** | |



| Name (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number (required):** *If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required):<br>*If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |

| Name (print): | |
|---|---|
| **Specimen Signature:** | |
| **Title:** | |
| **Telephone Number (required):** *If more than one, list all* | Office:<br>Cell:<br>Home:<br>Other: |
| **E-mail** (required):<br>*If more than one, list all* | Email 1:<br>Email 2: |
| **Facsimile:** | |

## COMPLETE BELOW TO UPDATE CERTIFICATE

If [Substitute Representative] wishes to change the names or details of any of its Authorized Representatives, [Substitute Representative] must complete, sign and send to Escrow Agent an updated copy of this Certificate with such changes.  Any updated Certificate shall be effective once signed by [Substitute Representative] and Escrow Agent and shall entirely supersede and replace any prior Certificate submitted to Escrow Agent.

## [SUBSTITUTE REPRESENTATIVE]

By:_____
Name:_____
Title:_____
Date: _____



## WILMINGTON TRUST, NATIONAL ASSOCIATION

By:_____

Name:_____

Title:_____

Date: _____

*Internal Use Only:*

☐   **Updated details of Authorized Representatives completed in full**

☐   **Signed by a representative of** Lessee **per relevant board resolutions/certificate of incumbency on file (if relevant).**

☐   **Call-back performed to** Lessee **to confirm authenticity of updated Certificate: Person Called:_____   Date of Call: _____   Time of Call: __am/pm**

*Reviewed by (name):_Signature: ___Date:*



Exhibit E

**Fees of Escrow Agent**

**Acceptance Fee:**                                                                                       **$TBD**

Initial Fees as they relate to Wilmington Trust acting in the capacity of Escrow Agent – includes review of the Escrow Agreement; acceptance of the Escrow appointment; setting up of Escrow Account(s) and accounting records; and coordination of receipt of funds for deposit to the Escrow Account(s). **Acceptance Fee payable at time of Escrow Agreement execution**

**Escrow Agent Administration Fee:**                                                          **$TBD**

For ordinary administrative services by Escrow Agent – includes daily routine account management; investment transactions; cash transaction processing (including wire and check processing); monitoring claim notices pursuant to the agreement; disbursement of funds in accordance with the agreement; and mailing of trust account statements to all applicable parties.

*Wilmington Trust's bid is based on the following assumptions:*

- Number of Escrow Accounts to be established: One (1)
- Est. Term: TBD
- Investment in M&T Deposit Products

**Out-of-Pocket Expenses:**                                                                **Billed At Cost**

EXHIBIT F

**FORM OF JOINDER - SUBSTITUTE REPRESENTATIVE**

This Joinder Agreement is made and entered into by the undersigned with reference to the Escrow Agreement (the "Escrow Agreement"), dated as of October [__], 2015, by and among SandRidge Energy, Inc. ("SandRidge") and Wilmington Trust, N.A., as escrow agent. Capitalized terms not otherwise defined shall have the meaning given to them in the Escrow Agreement.

The undersigned (the "Substitute Representative") has been appointed by the Settling Defendants as their representative under the Stipulation of Settlement and Escrow Agreement in the place of SandRidge. The Substitute Representative hereby agrees to be bound as a party to all of the terms and conditions of the Escrow Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Joinder Agreement this ___ day of _____, 20___.

[_____], as Substitute Representative

By:_____
Name: _____
Title: _____

Address for Notices:

_____
_____
_____


Acknowledged and Accepted:

WILMINGTON TRUST, N.A.

_____
Name:
Title:

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W <br><br> Relating to All Derivative Actions |

## [PROPOSED] FINAL ORDER AND JUDGMENT

A final Settlement Hearing was held before this Court on_____, pursuant to this Court's Preliminary Approval Order of_____, to determine: (i) whether to grant Final Approval to the Settlement set forth in the Stipulation of Settlement, dated ____, 2015 which Stipulation is incorporated herein by reference; (ii) whether to enter the Final Order and Judgment proposed by the Settling Parties; and, separately, (iii) whether and/or in what amount to grant the application by Co-Lead Counsel for a Fee and Expense Award. After due and sufficient notice having been given in accordance with the provisions of the Preliminary Approval Order, and all Persons having any objection to the proposed Settlement or the request for attorneys' fees and reimbursement of expenses having been given an opportunity to present such objections to the Court; the Court having heard and considered the matter, including all papers filed in connection therewith and the oral presentations of counsel and any objections raised at the hearing; and good cause appearing therefor,

**THE COURT HEREBY FINDS AND ORDERS,** as follows:

1.      Unless otherwise defined herein, all defined terms have the meanings set forth in the Stipulation or the Preliminary Approval Order, as applicable.

2.      This Court has jurisdiction over the subject matter of the Consolidated Action and the Settling Parties.

3.      The Court hereby finds that notice of the Settlement was (i) provided pursuant to and in the form and manner directed by the Preliminary Approval Order, (ii) meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and (iii) constitutes due and sufficient notice to all interested persons and entities of all matters relating to the Settlement.

4.      Pursuant to and in compliance with Rule 23.1 of the Federal Rules of Civil Procedure and due process, the Court hereby finds that the notice provided advised persons and entities in interest of the terms of the Settlement, of Co-Lead Counsels' intent to apply for attorneys' fees and reimbursement of litigation expenses incurred in connection with the prosecution of the Consolidated Action, and of their right to object thereto, and a full and fair opportunity was accorded to all persons and entities in interest to be heard with respect to the foregoing matters.

5.      The Court hereby grants final approval to the Settlement as set forth in the Stipulation, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of SandRidge and the current Company shareholders.[1] This Court further finds that the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Settling Parties. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with the terms and provisions of the Stipulation.

6.      All Claims against the Settling Defendants are hereby dismissed with prejudice from the Consolidated Action. The Settling Parties shall bear their own fees, costs, and/or

---

[1] Shareholders that owned SandRidge common stock as of ____, 2015 and continue to own such stock through ___, 2015, the date of the Settlement Hearing, are current Company shareholders ("Current Shareholder").

2

expenses except as provided in paragraph 13 below or as otherwise provided in the Stipulation and the Preliminary Approval Order.

7.      As of the Effective Date, Plaintiffs (acting on their own behalf and on behalf of SandRidge and the Current Shareholders), the Company, and all Current Shareholders shall, to the fullest extent allowed by law and by operation of the Settlement and this Final Order and Judgment: (i) fully and finally release and forever discharge and be deemed to have released and forever discharged the Released Claims against the Settling Defendants and other Released Persons; (ii) covenant and be deemed to have covenanted not to sue any of the Settling Defendants and other Released Persons with regard to any Released Claims; and (iii) forever be barred and enjoined from asserting any Released Claims against any Settling Defendants or other Released Persons. As set forth in the Stipulation, the definition of Released Persons does not include Non-Settling Defendants TLW Land & Cattle, LP, WCT Resources, LLC, and 192 Investments, LLC.

8.      As of the Effective Date, the Released Persons shall, to the fullest extent allowed by law and by operation of the Settlement and this Final Order and Judgment: (i) fully and finally release and forever discharge and be deemed to have released and forever discharged any and all claims that could have been asserted against Plaintiffs and Plaintiffs' Counsel arising out of or related to the institution, prosecution, assertion, settlement or resolution of this Consolidated Action; (ii) covenant and be deemed to have covenanted not to sue any of the Plaintiffs and Plaintiffs' Counsel with regard to any and all claims that could have been asserted against Plaintiffs arising out of or related to the institution, prosecution, assertion, settlement or resolution of this Consolidated Action; and (iii) forever be barred and enjoined from asserting any and all claims that could have been asserted against Plaintiffs and Plaintiffs' Counsel arising

3

out of or related to the institution, prosecution, assertion, settlement or resolution of this Consolidated Action.

9.    As of the Effective Date, the Non-Settling Defendants shall, by operation of the Judgment and to the fullest extent permitted by law, be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim, including Claims for indemnity or contribution, against any Released Person where the alleged injury is the actual or threatened liability to SandRidge (or any derivative Plaintiff asserting Claims on behalf of SandRidge) for any Claim or allegation asserted in, or arising out of or relating to the subject matter of, the Derivative Litigation, with the exception of the Excluded Claims.

10.    As of the Effective Date, the Settling Defendants shall, by operation of the Judgment and to the fullest extent permitted by law, be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim, including Claims for indemnity or contribution, against any the Non-Settling Defendants where the alleged injury is the actual or threatened liability to SandRidge (or any derivative Plaintiff asserting Claims on behalf of SandRidge) for any Claim or allegation asserted in, or arising out of or relating to the subject matter of, the Derivative Litigation, with the exception of the Excluded Claims.

11.    The Non-Settling Defendants against whom a judgment, if any, is rendered may seek a judgment credit, if any, as a result of the Settlement in accordance with Oklahoma Law.

12.    The Stipulation and any negotiations, proceedings or agreements relating to it shall not be offered or received against any of the Settling Parties as evidence of or construed as or deemed to be evidence of (a) any liability, negligence, fault, or wrongdoing of any of the Settling Parties, (b) a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing (c) a presumption, concession, or admission by any of the

Settling Defendants with respect to the truth of any fact alleged in the Consolidated Action or the validity of any of the claims or the deficiency of any defense that was or could have been asserted in the Consolidated Action, (d) a presumption, concession, or admission by Plaintiffs of any infirmity in the claims asserted, or (e) an admission or concession that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial.  The Stipulation and any negotiations, proceedings or agreements relating to it shall not be in any way referred to for any reason as against any of the Settling Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation or to establish a settlement-related defense, including but not limited to a defense based on res judicata or the releases or other provisions of the Stipulation and this Final Order and Judgment.

13.    Without in any way affecting the finality of this Final Order and Judgment, this Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation.

14.    This Settlement shall be a final and complete resolution of all disputes among the Settling Parties with respect to the Consolidated Action.  No Settling Party may assert in any forum that the Consolidated Action was brought, commenced, or prosecuted by Plaintiffs or Co-Lead Counsel, or defended by the Settling Defendants or their counsel, in bad faith or that the Consolidated Action was not filed or raised in good faith or was not settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel. No claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Consolidated Action may be brought by any Settling Party.

15.    Pending the occurrence of the Effective Date, no person may institute, commence, or prosecute any action which asserts Released Claims against any of the Released Persons.

16.    In the event the Settlement is terminated or the Effective Date cannot occur for any reason, then the Settlement shall be without prejudice, and none of its terms, shall be effective or enforceable except as specifically provided in the Stipulation; the Settling Parties shall be deemed to have reverted to their respective positions in this Consolidated Action immediately prior to the execution of the Stipulation on _____, 2015; and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

17.    Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

18.    Pursuant to Fed. R. Civ. P. 54(b), the Court finds that there is no just reason for delay in the entry of this Judgment dismissing all claims against the Settling Defendants and discharging all Released Claims against the Settling Defendants and other Released Persons, and the Clerk of Court is accordingly expressly directed to immediately enter this Judgment.

Dated: _____, 2015

By Order of the Clerk of Court United States District Court
for the Western District of Oklahoma

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br><br>Relating to All Derivative Actions |

### [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT, AUTHORIZING NOTICE, AND SETTING SETTLEMENT HEARING

WHEREAS, (1) lead plaintiff Paul Elliot, on behalf of the Paul Elliot IRA R/O, and plaintiffs Arthur I. Levine, Lisa Ezell, Jefferson L. Mangus, Tyler D. Mangus, Claudia D. Fanelli, Joan Brothers, and Deborah Depuy (each, a "Plaintiff"; collectively, "Plaintiffs"); (2) the Special Litigation Committee (the "SLC") of the Board of Directors (the "Board") of nominal defendant SandRidge Energy, Inc. ("SandRidge" or the "Company"); (3) defendants Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota  (the "Independent Directors"); and (4) defendant Tom L. Ward ("Ward") (the Independent Directors and Ward are referred to collectively as the "Settling Defendants") entered into a partial settlement of this derivative action (the "Settlement"), as reflected in the Stipulation of Settlement dated _____, 2015 (the "Stipulation"), which sets forth the terms and conditions for the proposed settlement of the above-captioned shareholder derivative litigation (the "Consolidated Action"), subject to review and approval by this Court pursuant to Rule 23.1 of the  Federal Rules of Civil Procedure; and

WHEREAS, Plaintiffs have moved for an Order preliminarily approving the Settlement in accordance with the terms of the Stipulation and providing for notice of the Settlement; and

WHEREAS, the Court having read and considered the Stipulation and the exhibits thereto, including the proposed (i) Notice of Proposed Partial Settlement of Shareholder Derivative Litigation (the "Notice"); (ii) Summary Notice of Proposed Partial Settlement of Shareholder Derivative Litigation (the "Summary Notice"); and (iii) proposed Final Order and Judgment, and finding that substantial and sufficient grounds exist for entering this Order:

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.    This Order incorporates by reference the definitions in the Stipulation, and, unless otherwise herein defined, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2.    The Court preliminarily approves the Settlement on the terms set forth in the Stipulation, subject to further consideration at a hearing to be held before this Court on__, 2015, at _:_ _.m., at the United States District Court for the Western District of Oklahoma, 200 N.W. 4th Street, Oklahoma City, Oklahoma 73102 (the "Settlement Hearing"). At the Settlement Hearing, the Court will consider (a) whether the proposed Settlement of the Action, on the terms and conditions set forth in the Stipulation, should receive final approval by the Court as fair, reasonable, and adequate, and in the best interests of SandRidge and Company Stockholders; (b) any objections to the proposed Settlement; (c) whether the Court should enter the proposed Final Order and Judgment; (d) in the event the Settlement receives Final Approval as requested, any application by Co-Lead Counsel for a Fee and Expense Award; and (e) any other matters as the Court may deem appropriate.

3.    The Settlement Hearing may be continued or rescheduled without further notice to current Company shareholders.[1] The Court further reserves the right to consider any

---

[1] Shareholders that owned SandRidge common stock as of ____, 2015 and continue to own such stock through ___, 2015, the date of the Settlement Hearing, are current Company shareholders ("Current Shareholder").

2

modifications of the Settlement agreed to by the Settling Parties without providing further written notice to Current Shareholders.

4.     The Court approves the form, content, and requirements of the Notice and the Summary Notice and finds that the filing, posting, and publication of these notices, substantially in the manner and form set forth in this Order, meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and constitutes due and sufficient notice of all matters relating to the Settlement.

5.     Within ten (10) business days of the date of entry of this Preliminary Approval Order, SandRidge shall (i) file a copy of the Notice, substantially in the form attached hereto as Exhibit 1, as an exhibit to a Form 8-K with the United States Securities and Exchange Commission; and (ii) post a copy of the Notice on SandRidge's corporate website, along with a copy of the Stipulation, which documents shall remain posted on SandRidge's corporate website through the Effective Date of the Settlement. Kaplan Fox & Kilsheimer LLP shall post a copy of the Notice, along with a copy of the Stipulation, on its firm website.

6.     Within seven (7) business days of the date of filing of the Notice in accordance with the provisions of paragraph 5 above, SandRidge or a notice administrator retained on behalf of the Company shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 2, to be published once via a national newswire service such as Business Wire, Marketwire, or PR Newswire.

7.     Within fifteen (15) business days of the date of filing of the Notice in accordance with the provisions of paragraph 5 above, SandRidge or a notice administrator

retained on behalf of the Company shall mail a copy of the Notice to all shareholders of record as of the date on which the Preliminary Approval Order is entered.

8.      At least twenty-one (21) calendar days before the Settlement Hearing, SandRidge's Counsel shall file with the Court an appropriate proof of compliance with the notice procedures set forth in this Preliminary Approval Order.

9.      All papers in support of the Settlement, and any Fee and Expense Award, shall be filed with the Court and served no later than twenty-one (21) calendar days before the Settlement Hearing.

10.     The Court will consider written objections to the proposed Settlement or the application for attorneys' fees and reimbursement of expenses at the Settlement Hearing, but only if such objections, and any supporting papers, are mailed to each of the following, TO BE RECEIVED no later than fourteen (14) calendar days before the Settlement Hearing:

| Clerk's Office | Co-Lead Counsel |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA<br>Clerk of the Court<br>200 N.W. 4th St.<br>Oklahoma City, Oklahoma 73102 | KAPLAN FOX & KILSHEIMER LLP<br>Robert N. Kaplan<br>850 Third Avenue, 14th Floor<br>New York, New York 10022<br>Telephone: (212) 687-1980<br>Facsimile: (212) 687-7714<br>rkaplan@kaplanfox.com |
| Co-Lead Counsel | Counsel for the Director Defendants |
| WHITTEN BURRAGE<br>Michael Burrage<br>1215 Classen Drive<br>Oklahoma City, Oklahoma 73103<br>Telephone: (405) 516-7800<br>Facsimile: (405) 516-7859<br>mburrage@whittenburragelaw.com | COVINGTON & BURLING LLP<br>Mark P. Gimbel<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>(212) 841-1000<br>mgimbel@cov.com |

<u>Counsel for the SLC of SandRidge</u>

DEBEVOISE & PLIMPTON LLP
Maeve O'Connor
919 Third Avenue
New York, New York 10022
mloconnor@debevoise.com

<u>Counsel for Defendant Ward</u>

LATHAM & WATKINS, LLP
J. Christian Word
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
christian.word@lw.com

Written objections must provide a detailed signed statement of the objector's specific objections and must include all documents such Person wishes the Court to consider, as well as a statement specifying the objector's name, address, telephone number, the number of shares of SandRidge common stock currently owned, and an account statement evidencing such ownership.

11.     Any Current Shareholders may appear at the Settlement Hearing, in person or through counsel of his or her choice, to object and show cause why: (i) the Settlement as set forth in the Stipulation should not be approved; (ii) the proposed Final Order and Judgment should not be entered; or (iii) Co-Lead Counsels' application for a Fee and Expense Award should not be granted in the amounts sought; provided, however, that no Current Shareholders shall be entitled to appear or be heard, or be entitled to object to or otherwise contest any of the matters to be considered at the Settlement Hearing, unless such Current Shareholders has: (i) filed with the Clerk of the Court, and (ii) served by hand, by first class U.S. mail, postage prepaid, or by reputable express carrier on the Clerk of the Court and each of the counsel listed in paragraph 10 above, the following materials, TO BE RECEIVED no later than fourteen (14) calendar days before the Settlement Hearing: (i) a notice of intention to appear at the Settlement Hearing; (ii) a statement specifying that person's name, address, telephone number, the number of shares of

SandRidge common stock currently owned, and a brokerage account statement evidencing such ownership; (iii) the name(s) of any attorney(s), if any, that will appear on the Current Shareholder's behalf; and (iv) a statement of such Current Shareholder's position with respect to the Settlement, providing all supporting bases and reasons for the objection, including the identification of all witnesses, documents, or other evidence that are to be presented at the Settlement Hearing in connection with the objection and a summary of the substance of the testimony to be given by any such witnesses.

12.     Any Current Shareholder who does not timely file and serve an objection in the manner provided in paragraphs 10 and 11 of this Order shall be deemed to have waived any objection such person might have and shall forever be barred, in these proceedings or in any other proceeding, from making any objection to or otherwise challenging the Settlement of the Action, the Stipulation or any provision thereof, the Final Order and Judgment, any Fee and Expense Award, and/or any other proceedings herein, and shall have no right to appeal therefrom.

13.     Any replies to any objections to the Settlement shall be filed and served no later than seven (7) calendar days before the Settlement Hearing.

14.     Unless and until the Stipulation is terminated in accordance with its terms, neither SandRidge nor the Plaintiffs nor the SLC nor any other party purporting to act on behalf of SandRidge shall commence or prosecute against any Released Claim against any Released Persons.

15.     In the event the Settlement is terminated or the Effective Date does not occur for any reason, then the Settlement shall be null and void and without prejudice, and none of its terms, shall be effective or enforceable except as specifically provided in the Stipulation; the

Settling Parties shall be deemed to have reverted to their respective positions in this Litigation immediately prior to the execution of the Stipulation on _____, 2015; and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

16.     Neither the Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by any of the Settling Defendants of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind.

17.     The Court retains exclusive jurisdiction over the Litigation to consider all further matters arising out of or connected with the Settlement.

Dated: _____ , 2015

By Order of the Clerk of Court United States District Court
for the Western District of Oklahoma

# EXHIBIT C-1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br><br>Relating to All Derivative Actions |

## NOTICE OF PROPOSED PARTIAL SETTLEMENT OF
## SHAREHOLDER DERIVATIVE LITIGATION

TO:    ALL PERSONS WHO OWNED SHARES OF SANDRIDGE ENERGY, INC. ("SANDRIDGE" or the "COMPANY") COMMON STOCK AS OF _____, 2015 AND CONTINUE TO OWN SUCH SHARES.

The purpose of this Notice is to inform you about: (i) the pendency of the above-captioned shareholder derivative lawsuit (the "Consolidated Action"), which was brought by certain SandRidge shareholders on behalf of and for the benefit of SandRidge in the United States District Court for the Western District of Oklahoma (the "Court"); (ii) a proposed partial settlement of the Consolidated Action (the "Settlement"), subject to Court approval, as provided in a Stipulation and Agreement of Settlement (the "Stipulation") that was filed with the Court and is available for review as indicated at paragraph ___ below; (iii) the hearing that the Court will hold on ____, 2015 to determine whether to approve the partial Settlement and to consider Co-Lead Counsels' application for an award of attorneys' fees and for reimbursement of litigation expenses incurred in the prosecution of the Consolidated Action (the "Settlement Hearing"); and (iv) current shareholders' rights with respect to the proposed partial Settlement and Co-Lead Counsels' application for attorneys' fees and reimbursement of expenses.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THIS LITIGATION.

The Stipulation was entered into as of _____, 2015, between and among: (1) lead plaintiff Paul Elliot, on behalf of the Paul Elliot IRA R/O, and plaintiffs Arthur I. Levine, Lisa Ezell, Jefferson L. Mangus, Tyler D. Mangus, Claudia D. Fanelli, Joan Brothers, and Deborah Depuy (each, a "Plaintiff"; collectively, "Plaintiffs"); (2) the Special Litigation Committee (as further defined below, the "SLC") of the Board of Directors (the "Board") of nominal defendant SandRidge Energy, Inc. ("SandRidge" or the "Company"); (3) defendants Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota (the "Independent Directors"); and (4) defendant Tom L. Ward ("Ward") (the Independent Directors and Ward are referred to collectively as the "Settling Defendants"), subject to the approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. Defendants WCT Resources, L.L.C. ("WCT"), 192 Investments, L.L.C. ("192"), and TLW Land & Cattle, L.P. ("TLW") (collectively, the "Ward Entity Defendants") are not parties to the Settlement. The Consolidated Action continues against the Ward Entity Defendants.

Because this Consolidated Action was brought as a derivative action on behalf of and for the benefit of SandRidge, any monetary benefits from the Settlement will go to SandRidge. Individual SandRidge shareholders will not receive any direct payment from the Settlement.

The following description of the Consolidated Action and Settlement does not constitute findings of the Court. It is based on statements of Plaintiffs and the Settling Defendants (the "Settling Parties") and should not be understood as an expression of any opinion of the Court as to the merits of any of the claims or defenses raised by any of the Settling Parties. The Court has not yet approved the Settlement.

All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

## WHAT IS THE PURPOSE OF THIS NOTICE?

1.      The purpose of this Notice is to explain the Consolidated Action, the terms of the proposed Settlement, and how the proposed Settlement affects SandRidge shareholders' legal rights.

2.      In a derivative action, one or more people and/or entities who are current shareholders of a corporation sue on behalf of and for the benefit of the corporation, seeking to enforce the corporation's legal rights.

3.      As described more fully below, current SandRidge shareholders[1] have the right to object to the proposed Settlement and the application by Co-Lead Counsel for an award of attorneys' fees and expenses. Current SandRidge shareholders have the right to appear and be heard at the Settlement Hearing, which will be held on      , 2015, at  _:_  _.m., before the Honorable Lee R. West, at the United States District Court for the Western District of Oklahoma, 200 N.W. 4th Street, Oklahoma City, Oklahoma 73102.  At the Settlement Hearing, the Court will determine: (i) whether the Settlement should be approved; (ii) whether the Released Claims against the Settling Defendants should be dismissed with prejudice as set forth in the Stipulation; and (iii) whether Co-Lead Counsels' request for an award of attorneys' fees and reimbursement of litigation expenses should be approved by the Court.

## WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR?

4.      Between December 19, 2012 and March 22, 2013, five derivative action complaints were filed in the United States District Court for the Western District of Oklahoma, alleging, among other things, that the Independent Directors breached their fiduciary duties and wasted corporate assets by allowing Ward to engage in self-interested and conflicted behavior, by failing to prevent him from taking improper and illegal actions, and by granting wasteful

---

[1] Shareholders that owned SandRidge common stock as of October __, 2015 and continue to own such stock through ___, 2015, the date of the Settlement Hearing, are current SandRidge shareholders ("Current Shareholder").

compensation packages to Ward and other senior executives.  Certain of the complaints also alleged claims against Ward for self-dealing, usurpation of SandRidge's corporate opportunities, and misappropriation of SandRidge's assets.

5.      On April 10, 2013, the Court consolidated the five actions, appointed Paul Elliot, on behalf of the Paul Elliot IRA R/O as Lead Plaintiff, and appointed Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Whitten Burrage as Co-Lead Counsel for the Consolidated Action.

6.      On May 1, 2013, Plaintiffs filed a Consolidated and Verified Shareholder Derivative Complaint (the "Complaint").  The Complaint realleged the claims identified above in Paragraph 4, and further alleged claims for violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 14a-9 promulgated thereunder.

7.      On June 3, 2013, the Independent Directors, Ward, and the Ward Entity Defendants (collectively, "Defendants") moved to dismiss the Complaint. Following extensive briefing, on September 11, 2013, the Court issued an Order dismissing the Complaint, and granting Plaintiffs leave to file an amended complaint.

8.      On October 9, 2013, Plaintiffs filed a Consolidated, Amended and Verified Shareholder Derivative Complaint (the "Amended Complaint").   The Amended Complaint realleged all of the claims alleged in the Complaint, except for the claims for constructive fraud, civil conspiracy, and claims under the Exchange Act.  On November 15, 2013, Defendants moved to dismiss the Amended Complaint.

9.      Following extensive briefing, on September 22, 2014, the Court issued orders denying the Independent Directors' motion in its entirety, denying Ward and TLW's motion as to the claims for misappropriation of SandRidge's assets and denying TLW's motion as to the claims for unjust enrichment, and denying 192 and WCT's motion as to the claims for misappropriation of SandRidge's assets, and unjust enrichment. *In re SandRidge Energy, Inc. S'holder Derivative Litig.*, 302 F.R.D. 628 (W.D. Okla. 2014).  The motions to dismiss were granted as to all other causes of action.

10.     On September 26, 2014, the Board of Directors of SandRidge formed a Special Litigation Committee (the "SLC").  On October 9, 2014, the SLC moved for a six-month stay of the Consolidated Action in order to facilitate an independent review, investigation, and determination with respect to the claims asserted by Plaintiffs.  Plaintiffs opposed this motion. Following extensive briefing, on October 22, 2014, the Court issued an Order denying the SLC's motion to stay the Consolidated Action.

11.     Starting in October 2014, the parties engaged in discovery.  Plaintiffs served numerous document requests and interrogatories.  Plaintiffs also served several subpoenas to non-parties, including land brokers.  To date, hundreds of thousands of documents have been produced and plaintiffs have taken several depositions, including the deposition of Mayer Brown, LLP concerning certain topics relating to Mayer Brown's engagement by the Audit Committee of SandRidge to investigate allegations against Ward and certain allegedly related parties.

3

12.     On January 30 and March 27, 2015, the parties mediated before former U.S. District Judge Layn R. Phillips. After the mediations, the parties continued negotiations with the assistance of Judge Phillips.

13.     On March 30, 2015, Independent Directors moved for judgment on the pleadings that Plaintiffs had not asserted a claim against the Independent Directors based on their decision to terminate Ward without cause and had no right to recover on any such claim. On April 28, 2015, the Court denied Independent Directors' motion for judgment on the pleadings. On June 2, 2015, Judge West ordered the Independent Directors to produce documents concerning Ward's termination in response to a motion to compel filed by Plaintiffs on March 31, 2015. The Court ruled that production of these documents was required because the decision of the SandRidge Board to terminate Ward "without cause," resulting in the payment of severance compensation to Ward, was an aspect of Plaintiffs' waste claim.

14.     On June 22, 2015, Plaintiffs and the Settling Defendants reached an agreement in principle to settle the claims alleged in the Consolidated Action against the Settling Defendants, subject to a number of terms and conditions including the negotiation of a mutually acceptable long form Stipulation of Settlement.

15.     The parties entered into the Stipulation on October __, 2015, and on _____, 2015, the Court preliminarily approved the Settlement in which, among other things, the Court (i) directed that this Notice be mailed to all shareholders of record as of _____, attached as an exhibit to a Form 8-K filed with the U.S. Securities and Exchange Commission, and be posted, along with a copy of the Stipulation, on SandRidge's corporate website and on Kaplan Fox's website, and (ii) scheduled the Settlement Hearing to consider whether to grant Final Approval to the Settlement.

## WHAT ARE THE BENEFITS OF THE SETTLEMENT?

16.     In exchange for the Release described below in Paragraphs 21-25, the Settling Defendants' insurers have agreed to make a payment of $38 million in cash (the "Settlement Payment"), which shall be paid to the Company to the extent that funds remain after deducting certain Designated Litigation Expenses, as defined in the Stipulation, arising from a separate Securities Litigation against SandRidge and certain of its current or former officers or directors. As further consideration for the Settlement, SandRidge and the SLC agree to create and effectuate the following corporate governance measures:

- Amend SandRidge's bylaws (Article III, Section 1(b)) to eliminate its staggered board, or in the alternative, eliminate the requirement in Article IX of SandRidge's bylaws (as amended on November 19, 2012) that bylaw changes affecting the staggered board can be made only by holders of more than 50% of the voting power of issued and outstanding stock;

- Amend SandRidge's corporate governance guidelines to provide that any director who fails to get a majority vote for two elections in a row will not be able to run for a third election;

- Submit to a stockholder vote the question whether to amend SandRidge's charter to lower the

minimum number of shareholder votes required to call a special meeting of shareholders from 50% to 25%;

- Amend SandRidge's bylaws to require poison pills: (i) to be approved by affirmative vote of at least 75% of the Board; and (ii) to expire after 6 months, unless they are authorized or ratified by shareholder vote;

- Formally separate the positions of chairman of the board and chief executive officer;

- Director (and Executive Officer) Education.   Directors shall participate in an initial orientation program upon election to the Board and in regular continuing education programs thereafter, in order that they fully understand their directorial responsibilities and can faithfully fulfill their fiduciary duties.   Such continuing education, outlining the essential elements of best corporate governance practices and informing directors of new developments in this area, shall be conducted by the Company's general counsel (if that position is occupied) or otherwise by a designated outside counsel with corporate governance expertise.   Executive officers of the Company shall similarly participate in such orientation program upon joining the Company, and all executive officers shall participate in such regular continuing education programs; and

- Reform SandRidge's executive compensation policies by modifying the Company's corporate governance guidelines to:

  a.   reduce executives' ability to engage in insider trading and incentive to engage in stock manipulation around sales by requiring executives to sell shares pursuant to a non-terminable 10b5-1 plan;

  b.   adopt and implement an executive compensation claw-back policy consistent with any final rule adopted by the Securities and Exchange Commission pursuant to the rulemaking process that is presently underway;

  c.   prohibit SandRidge directors, officers, and designated key executives from engaging in transactions in puts, calls or other derivatives related to Company securities or trust securities on an exchange or in any other organized market; and

  d.   move from tri-annual to bi-annual say-on-pay.

To the extent such reforms have already been implemented, SandRidge agrees to maintain the Corporate Governance Measures in place for at least 5 years; provided, however, that amendments to such reforms are permitted as necessary to comply with any future New York Stock Exchange or Securities and Exchange Commission rules.

## WHAT ARE PLAINTIFFS' REASONS FOR THE SETTLEMENT?

17.   Plaintiffs and Co-Lead Counsel believe that the claims asserted against the Settling Defendants have merit. Plaintiffs and Co-Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against the Settling Defendants through trial and appeal. Plaintiffs and Co-Lead Counsel have taken into account the possibility that the claims asserted in the Amended Complaint might have been dismissed in response to motions for summary judgment by the Settling Defendants, and have also considered

the defenses available to the Settling Defendants at trial and other issues that would have been decided by a jury in the event of a trial of the Consolidated Action.

18.     In light of the significant corporate governance measures and cash payment created by the Settlement, Plaintiffs and Co-Lead Counsel, the Company, and the SLC believe that the proposed Settlement is fair, reasonable, adequate, and in the best interests of SandRidge. The Settlement provides substantial immediate benefits to SandRidge without the risk that continued litigation could result in obtaining similar or lesser relief for SandRidge after continued extensive and expensive litigation, including trial and the appeals that were likely to follow.

19.     The Settling Defendants have denied the claims asserted against them and disclaim any liability or damages or having engaged in any wrongdoing or violation of law of any kind whatsoever and have entered into the Settlement solely in order to avoid the expense, risk, distraction and uncertainty of further litigation. Accordingly, the Settlement may not be construed as an admission of the Settling Defendants' wrongdoing, nor construed or deemed to be evidence of or an admission or concession on the part of any Settling Defendant with respect to the merits of any claim, nor of any infirmity in the defenses that the Settling Defendants have, or could have, asserted in this Consolidated Action. Likewise, the Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in the claims that Plaintiffs have, or could have, asserted.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

20.     If there were no Settlement and Plaintiffs failed to establish any essential legal or factual element of their claims, SandRidge would not receive any of the benefits of the Settlement, as described above, some of which have been created to prevent the reoccurrence of the wrongdoing alleged by Plaintiffs in the Consolidated Action, which the Settling Defendants have denied.

## WHAT CLAIMS WILL THE SETTLEMENT RELEASE?

21.     If the Settlement is approved, the Court will enter a judgment (the "Judgment"). Plaintiffs, SandRidge, the SLC (on behalf of the Company), and all Company Stockholders (derivatively on behalf of the Company) shall, by operation of the Judgment and to the fullest extent permitted by law, (i) release and be deemed to release and forever discharge the Released Claims (including Unknown Claims) against the Released Persons, (ii) covenant and be deemed to covenant not to prosecute any Released Claims (including Unknown Claims) against any Released Persons, and (iii) forever be barred and enjoined from asserting any Released Claims (including Unknown Claims) against any Released Persons.

22.     "Released Claims" means any and all Claims, with the exception of the Excluded Claims, that have been or could have been, or in the future can or might be, asserted by SandRidge, or derivatively on behalf of SandRidge, in any court, tribunal, or proceeding against any Released Person arising out of or relating in any way, directly or indirectly, to:

(i)   any fact, circumstance, conduct, transaction or allegation asserted or referred to in the Amended Complaint, the Supplemental Disclosures, or any Other Derivative Complaint;

(ii)   the compensation, perquisites or severance paid to or received by Ward or any other officer or director of SandRidge prior to the filing of the Amended Complaint on October 9, 2013;

(iii)   the Board's oversight or alleged lack of oversight of land, real property, or mineral rights transactions or related activities of SandRidge, its officers, directors, or employees, or the Non-Settling Defendants, prior to the filing of the Amended Complaint on October 9, 2013;

(iv)   the approval or oversight of the Employment Agreements;

(v)   the Board's decision to terminate Tom Ward "without Cause;"

(vi)   the Related Party Transactions;

(vii)   any alleged usurpation of corporate opportunities of SandRidge or misappropriation of confidential information of SandRidge;

(viii)   the Chechele Litigation or the subject matter thereof; and

(ix)   the TPG-Axon Consent Solicitation, the TPG Litigation or the subject matter thereof, the Kallick Litigation or the subject matter thereof, or the Defensive Measures.

23.   "Released Persons" means all current and former officers and directors of SandRidge, including but not limited to Tom Ward, the Independent Directors, Stephen Beasley, Edward Moneypenny, Alan Weber, Dan Westbrook, James Bennett, Matthew Grubb, D. Dwight Scott, Stuart Ray, and Phil Warman and all of their respective agents, attorneys, financial or business advisors, consultants, heirs, representatives, executors, trustees, partners or general or limited partnerships, owned or affiliated entities, spouses, family members, estates, administrators, insurers and reinsurers. For the avoidance of doubt, the Settling Parties expressly acknowledge and agree that the definition of Released Persons does not include the Non-Settling Defendants.

24.   "Excluded Claims" means any claims in the State Derivative Litigation that SandRidge may have for breach of fiduciary duty against Tom Ward, Matthew Grubb, James Bennett, William Gilliland, Jeffrey Serota, Everett Dobson, Jim J. Brewer, Daniel W. Jordan, Roy Oliver, D. Dwight Scott, or Stuart W. Ray based on allegations that each breached his fiduciary obligations by (i) making or approving the alleged misrepresentations concerning SandRidge's oil and gas assets and business prospects at issue in the complaints filed to date in the Securities Litigation, and/or (ii) failing to implement adequate internal controls and procedures to ensure the accuracy of the financial reporting and disclosures at issue in the complaints filed to date in the Securities Litigation.

25.    "Unknown Claims" means any Released Claims that SandRidge, the SLC, Plaintiffs or any other Company Stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons.  With respect to any and all Claims released by this Stipulation, the Settling Parties and all Company Stockholders shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights and benefits of California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Settling Parties and all Company Stockholders shall be deemed to have, and by operation of the Judgment shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.  The Settling Parties and all Company Stockholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Claims released by this Settlement but nonetheless, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released all such Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties and all Company Stockholders shall be deemed by operation of the Judgment to have acknowledged that the foregoing waivers were separately bargained for and are key elements of this Settlement and the releases granted herein.

## WHO REPRESENTS PLAINTIFFS AND HOW WILL THE ATTORNEYS BE PAID?

26.    On April 10, 2013, the Court appointed Kaplan Fox and Whitten Burrage as Co-lead Counsel in the Consolidated Action.  Co-Lead Counsel have not received any payment for their services in pursuing the claims against Defendants in the Consolidated Action, nor have Co-Lead Counsel been reimbursed for their out-of-pocket expenses.

27.    Co-Lead Counsel intends to apply to the Court for an award of attorneys' fees and expenses incurred in connection with the prosecution of the Consolidated Action to Co-Lead Counsel from the $38 million paid into escrow by the Insurers in the amount of $13 million. The Court will determine the ultimate amount of any fee award, and the Settlement is not conditioned upon such an award.

**WHEN AND WHERE WILL THE COURT RULE ON APPROVAL OF THE SETTLEMENT? DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING?**

28.     The Settlement Hearing will be held on        , 2015, at   _:_  _.m.,  before   the Honorable Lee R. West, at the United States District Court for the Western District of Oklahoma, 200 N.W. 4th Street, Oklahoma City, Oklahoma 73102. The Court may approve the Settlement or the application for attorneys' fees and expenses at or after the Settlement Hearing without further notice to Current Shareholders.

29.     If you owned SandRidge common stock as of _____, 2015 and continue to own such stock through        ___, 2015, the date of the Settlement Hearing, you may, if you wish to do so, comment to the Court on the proposed Settlement and/or the application for an award of attorneys' fees and reimbursement of litigation expenses. Current Shareholders who do not wish to object in person to the proposed Settlement and/or the application for attorneys' fees and expenses, do not need to attend the Settlement Hearing.

30.     Co-Lead Counsel will file papers with the Court in support of the Settlement and application for an award of attorneys' fees and expenses incurred in connection with the prosecution of the Consolidated Action on _____.

31.     Objections or oppositions must be in writing and must be filed together with proof that you owned shares of SandRidge common stock as of _____, 2015 and continue to own such shares, with the Clerk's Office at the address set forth below on or before  , 2015.   You must also serve the papers on Co-Lead Counsel and Defendants' Counsel at the addresses set forth below so that the papers are *received* on or before ___, 2015.

32.     Co-Lead Counsel will file reply papers with the Court, if any, on _____.

| <u>Clerk's Office</u> | <u>Co-Lead Counsel</u> |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA | KAPLAN FOX & KILSHEIMER LLP |
| Clerk of the Court | Robert N. Kaplan |
| 200 N.W. 4th St. | 850 Third Avenue, 14th Floor |
| Oklahoma City, Oklahoma 73102 | New York, New York 10022 |
| | Telephone: (212) 687-1980 |
| | Facsimile: (212) 687-7714 |
| | rkaplan@kaplanfox.com |

Co-Lead Counsel

WHITTEN BURRAGE
Michael Burrage, OBA #1350
1215 Classen Drive
Oklahoma City, Oklahoma 73103
Telephone: (405) 516-7800
Facsimile:  (405) 516-7859
mburrage@whittenburragelaw.com

Counsel for the Independent Directors

COVINGTON & BURLING LLP
Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
mgimbel@cov.com

Counsel for the SLC of SandRidge

DEBEVOISE & PLIMPTON LLP
Maeve O'Connor
919 Third Avenue
New York, New York 10022
mloconnor@debevoise.com

Counsel for Defendant Ward

LATHAM & WATKINS, LLP
J. Christian Word
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
christian.word@lw.com

33.     A Current Shareholder who or which wishes to be heard orally at the hearing in opposition to the approval of the Settlement or Co-Lead Counsels' request for an award of attorneys' fees and expenses, and has filed and served a timely written objection as described above, also must notify the above counsel on or before         ,  _____ 2015 concerning his, her, or its intention to appear. Current Shareholders who or which intend to object and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify at the Settlement Hearing and the exhibits they intend to introduce into evidence at the Settlement Hearing.

34.     The Settlement Hearing may be adjourned by the Court without further written notice to Current Shareholders. If you intend to attend the Settlement Hearing, you should confirm the date and time with Co-Lead Counsel.

35.     Unless the Court orders otherwise, any Current Shareholder who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement or Co-Lead Counsels' request for an award of attorneys' fees and expenses. Current Shareholders do not need to appear at the hearing or take any other action to indicate their approval.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

36.     This Notice contains only a summary of the terms of the proposed Settlement. More detailed information about the Consolidated Action is available at www._____.com/SandRidge, or www.kaplanfox.com, including, among other documents, the

Amended Complaint and the Stipulation of Settlement. You or your attorney may examine the Court files for *In re SandRidge Energy, Inc. Shareholder Derivative Litigation,* No. CIV-13-102-W during regular business hours at the Western District of Oklahoma Court. Questions about the Settlement or about this Notice in general should be directed to:

Co-Lead Counsel        Co-Lead Counsel

KAPLAN FOX & KILSHEIMER LLP     WHITTEN BURRAGE
Robert N. Kaplan        Michael Burrage, OBA #1350
850 Third Avenue, 14th Floor      1215 Classen Drive
New York, New York 10022     Oklahoma City, Oklahoma 73103
Telephone: (212) 687-1980     Telephone: (405) 516-7800
Facsimile: (212) 687-7714     Facsimile:  (405) 516-7859
rkaplan@kaplanfox.com     mburrage@whittenburragelaw.com

You should ask Co-Lead Counsel to confirm receipt of any email correspondence regarding the Settlement of this Notice within three business days.  If Co-Lead Counsel do not confirm receipt within three business days, you should call to ensure receipt.

DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.

Dated: _____ , 2015

By Order of the Clerk of Court United States District Court
      for the Western District of Oklahoma

EXHIBIT C-2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br><br>Relating to All Derivative Actions |

## SUMMARY NOTICE OF PROPOSED PARTIAL SETTLEMENT OF
## SHAREHOLDER DERIVATIVE LITIGATION

**TO:** ALL PERSONS WHO OWN SHARES OF SANDRIDGE ENERGY, INC. ("SANDRIDGE" or the "COMPANY") COMMON STOCK AS OF _____, 2015 AND CONTINUE TO OWN SUCH SHARES.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Oklahoma (the "Court"), of (i) the pendency of the above-captioned shareholder derivative litigation (the "Litigation" or "Action"), which was brought by certain SandRidge shareholders on behalf of and for the benefit of SandRidge; and (ii) a proposed partial settlement of the Litigation (the "Settlement"), subject to Court approval, for consideration including the adoption by SandRidge of certain corporate governance measures as provided in a Stipulation and Agreement of Settlement (the "Stipulation") that is filed with the Court and available for review as indicated below, and a payment of $38 million in cash (the "Settlement Payment") by the Settling Defendants' insurers, which shall be paid to the Company to the extent that funds remain after deducting certain Designated Litigation Expenses, as defined in the Stipulation, arising from a separate Securities Litigation against SandRidge and certain of its current or former officers or directors.

A hearing will be held on ___ 2015, at _:__m, before the Honorable Lee R. West, at the United States District Court for the Western District of Oklahoma, 200 N.W. 4th Street, Oklahoma City, Oklahoma 73102 (the "Settlement Hearing") to determine (i) whether the proposed Settlement should be approved; (ii) whether the Released Claims against the Settling Defendants should be dismissed with prejudice as set forth in the Stipulation; and (iii) whether Co-Lead Counsels' request for an award of attorneys' fees and reimbursement of litigation expenses should be approved by the Court.

IF THE SETTLEMENT IS APPROVED, THE RIGHTS OF SANDRIDGE SHAREHOLDERS TO PURSUE THE CLAIMS ASSERTED IN THE LITIGATION ON BEHALF OF SANDRIDGE WHICH ARE BEING RELEASED PURSUANT TO THE SETTLEMENT WILL BE AFFECTED.

<u>Please Note</u>: Because this Litigation was brought as a derivative action, which means that it was brought on behalf of and for the benefit of the Company, any monetary benefits from the

Settlement Payment, after deducting the Designated Litigation Expenses, will go to SandRidge. In a derivative action, individual shareholders do not receive any direct monetary recovery from the settlement.

A more detailed Notice of Proposed Partial Settlement of Shareholder Derivative Litigation (the "Notice") that provides additional information concerning the Litigation, the terms of the proposed Settlement, and SandRidge shareholders' legal rights with respect to the proposed Settlement and the application for attorneys' fees and litigation expenses, along with copies of the Stipulation and other documents filed in the Litigation, can be obtained from Co-Lead Counsels' website, www._____.com/SandRidge. The notice has been mailed to all shareholders of record as of **[the date on which the Preliminary Approval Order is entered]**. The Notice has also been filed as an exhibit to the Form 8-K filed with the U.S. Securities and Exchange Commission by SandRidge on       ,  2015  and  it  is  posted  on  SandRidge's website  www.sandridgeenergy.com/_____,  and  Co-Lead  Counsel's  website (www.kaplanfox.com). You may also examine the Court files for the Litigation during regular business hours at the United States District Court for the Western District of Oklahoma, 200 N.W. 4th Street, Oklahoma City, Oklahoma 73102.

If you owned shares of SandRidge common stock as of ____, 2015 and continue to own such shares through____, 2015 (the date of the Settlement Hearing), you may, if you wish to do so, comment to the Court on the proposed Settlement or the application for an award of attorneys' fees and reimbursement of litigation expenses. Any objections to the proposed Settlement or the application for attorneys' fees and expenses must be filed with the Court and delivered to Co-Lead Counsel and Counsel for each of the Settling Defendants no later than _____, 2015, in accordance with the instructions set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THE SETTLEMENT AND THIS NOTICE. All inquiries may be made to Co-Lead Counsel:

|  |  |
|---|---|
| KAPLAN FOX & KILSHEIMER LLP | WHITTEN BURRAGE |
| Robert N. Kaplan | Michael Burrage, OBA #1350 |
| 850 Third Avenue, 14th Floor | 1215 Classen Drive |
| New York, New York 10022 | Oklahoma City, Oklahoma 73103 |
| Telephone: (212) 687-1980 | Telephone: (405) 516-7800 |
| Facsimile: (212) 687-7714 | Facsimile: (405) 516-7859 |
| rkaplan@kaplanfox.com | mburrage@whittenburragelaw.com |
| *Co-Lead Counsel* | *Co-Lead Counsel* |

You should ask Co-Lead Counsel to confirm receipt of any email correspondence regarding the Settlement or the notice within three business days. If Co-Lead Counsel do not confirm receipt within three business days, you should call to ensure receipt.

By Order of the Clerk of Court United States District Court for the Western District of Oklahoma