## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br><br>Relating to All Derivative Actions |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL DERIVATIVE
## LITIGATION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Matthew P. McCahill (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714

**WHITTEN BURRAGE**
Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
Randa K. Reeves, OBA #30695
1215 Classen Drive
Oklahoma City, Oklahoma 73103
Telephone: (405) 516-7800
Facsimile:  (405) 516-7859

*Co-Lead Counsel for Plaintiffs*

Dated: November 25, 2015

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND OF THE LITIGATION AND THE SETTLEMENT ............................. 3

III.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................... 5

        A.      The Final Approval Standard ................................................................. 5

        B.      Consideration of Final Approval Criteria Supports Final Approval ........... 6

                1.      The Proposed Settlement was Fairly and Honestly Negotiated ........... 6

                2.      Questions of Law and Fact Exist, Placing the Ultimate Outcome
                        of the Litigation in Doubt ................................................................. 9

                        (a) There Are Questions of Law and Fact Concerning Plaintiffs'
                            Breach of Fiduciary Duty Claim .......................................... 9

                        (b) There Are Questions of Law and Fact Concerning Plaintiffs'
                            Waste Claims Director Defendants Motion for
                            Judgment on the Pleadings .................................................. 10

                        (c) The SLC Could Seek to Dismiss All or Part of the Litigation ........ 12

                3.      The Value of an Immediate Recovery Outweighs the
                        Mere Possibility of Future Relief After Protracted and Expensive Litigation...... 13

                4.      The Judgment of the Parties is that the Settlement is Fair and Reasonable........... 15

                5.      The Reaction of SandRidge's Shareholders Favors Final Approval .................... 15

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
 No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D. N.J. Dec. 4, 2012),
 *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ............................................................................. 8

*AmSouth Bancorporation v. Ritter*,
 911 A.2d 362, 372 (Del. 2006)............................................................................................. 10

*Ashley v. Reg'l Transp. Dist.*,
 No. 05-CV-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069 (D. Colo. Feb. 11, 2008)......... 7

*Freebird, Inc. v. Merit Energy Co.*,
 No. CIV.A. 10-1154-KHV, 2012 WL 6085135 (D. Kan. Dec. 6, 2012) ................................... 6

*Freedman v. Adams*,
 58 A.3d 414, 417 (Del. 2013).............................................................................................. 11

*In re Caremark Int'l Inc. Derivative Litig.*,
 698 A.2d 959, 967 (Del. Ch. 1996) .................................................................................. 9, 10

*In re DaVita Healthcare Partners, Inc.*,
 No. 12-CV-2074-WJM-CBS, 2015 WL 3582265 (D. Colo. June 5, 2015).................... 5, 9, 13

*In re Qwest Commc'n Int'l, Inc. Sec. Litig.*,
 No. 01-CV-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006) ........................ 9

*In re the Walt Disney Company Derivative Litigation*,
 906 A.2d 27, 74 (Del. 2006)............................................................................................... 11

*Jones v. Nuclear Pharmacy, Inc.*,
 741 F.2d 322, 324 (10th Cir. 1984)................................................................................... 5, 6

*Lucas v. Kmart Corp.*,
 234 F.R.D. 688, 695 (D. Colo. 2006).................................................................................. 15

*Maher v. Zapata Corp.*,
 714 F.2d 436, 455 (5th Cir. 1983)............................................................................. 5, 6, 9, 14

*Marcus v. Kansas Dept. of Revenue*,

209 F. Supp. 2d 1179 (D. Kan. 2002) ...................................................................................... 15

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 WL 4816510, (W.D. Okla. Oct. 27, 2008) ............................ 6, 9, 15

*Mohammed v. Ells*,
   No. 12-CV-1831-WJM-MEH, 2014 WL 4212687 (D. Colo. Aug. 26, 2014) ....................... 5, 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180, 1188 (10th Cir. 2002) ....................................................................................... 6

*Ryskamp v. Looney*,
   No. 10-CV-00842-WJM-KLM, 2012 WL 3397362 (D. Colo. Aug. 14, 2012) .................... 6, 13

*Unitrin, Inc. v. Am. Gen. Corp.*,
   651 A.2d 1361, 1374 (Del. 1995) ............................................................................................. 11

## **Statutes**

DGCL § 102(b)(7) ........................................................................................................................ 11

DGCL § 141(e) ............................................................................................................................ 11

## **Rules**

Fed. R. Civ. Rule 23.1(c) .............................................................................................................. 5

## **Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   Federal Practice and Procedure: CIVIL 3D § 1839, at 195 (2007) .......................................... 5

Pursuant to Federal Rule of Civil Procedure 23.1, court-appointed lead plaintiff Paul Elliot, on behalf of the Paul Elliot IRA R/O, and plaintiff Lisa Ezell ("Plaintiffs") respectfully submit this Motion for Final Approval of Partial Derivative Litigation Settlement and Memorandum of Law in Support.  On October 9, 2015, this Court entered its Order Preliminarily Approving Settlement, Authorizing Notice and Setting Settlement Hearing.  ECF No. 302.[1]  Plaintiffs now seek final approval of the partial settlement (the "Settlement") as memorialized in the Stipulation of Settlement dated October 7, 2015 (the "Stipulation," ECF No. 301-1) and entry of the [Proposed] Final Order and Judgment.  A proposed Final Order and Judgment will be submitted to the court via e-mail.[2]

## I.    INTRODUCTION

Plaintiffs, the Special Litigation Committee (the "SLC") of the Board of Directors (the "Board") of nominal defendant SandRidge Energy, Inc. ("SandRidge" or the "Company"), and defendants  Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., and Jeffrey S. Serota (the "Independent Directors") and Tom L. Ward ("Ward")[3] have entered into a partial settlement of this derivative action

---

[1] Counsel for both Plaintiffs and SandRidge have complied with the Court's order with respect to the notice requirements.  Jt. Decl. ¶ 101.

[2] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

[3] The Independent Directors and Ward are referred to as the "Settling Defendants."

(the "Consolidated Action"), as reflected in the Stipulation.[4]  The Settlement amount of $38 million in cash (subject to deductions for certain expenses that may be incurred as part of a separate securities class action) and Corporate Governance Measures represent an excellent result for SandRidge and its shareholders.

Although Plaintiffs believe the claims asserted in the Consolidated Action have merit, they recognize that they would face substantial risks in establishing liability and damages should this case proceed to trial.  Further, even if the Consolidated Action were to proceed to trial, the Settling Defendants could appeal any judgment favorable to the Company, putting at risk, or otherwise delaying, any recovery to the Company and its shareholders.

The Settling Defendants deny each and all of the claims alleged by Plaintiffs. Nonetheless, the Settling Defendants have concluded that further conduct of the Consolidated Action would be protracted and expensive, and that it is desirable that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

As explained below, the Settlement is fair, reasonable, and adequate.  Accordingly, the Court should approve the Settlement and enter the Proposed Final Order and Judgment.

---

[4] Defendants WCT Resources, L.L.C. ("WCT"), 192 Investments, L.L.C. ("192"), and TLW Land & Cattle, L.P. ("TLW") (collectively, the "Ward Entity Defendants") are not parties to the Settlement.

## II.     BACKGROUND OF THE LITIGATION AND THE SETTLEMENT

The Joint Declaration of Michael Burrage and Robert N. Kaplan in Support of (1) Plaintiffs' Motion For Final Approval of Partial Derivative Litigation Settlement and (2) Award of Attorneys' Fees and Expenses dated November 25, 2015 ("Jt. Decl.") is an integral part of this submission (filed concurrently herewith).  The Court is respectfully referred to it for a summary of the Settlement, a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation and document review undertaken, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

### A.  Key Terms of the Proposed Settlement

In exchange for the Release described in the Stipulation, the Settling Defendants' insurers have agreed to pay $38 million in cash (the "Settlement Payment"), which shall be paid to the Company to the extent that funds remain after deducting certain Designated Litigation Expenses, as defined in the Stipulation, arising from a separate Securities Litigation against SandRidge and certain of its current or former officers or directors.  Jt. Decl. ¶ 103.  As further consideration for the Settlement, SandRidge has agreed to create and implement a series of Corporate Governance Measures.  *Id*.  The Court is respectfully referred to Section 3 of the Stipulation for a full description of these Measures.

Many of the Corporate Governance Measures created by the Settlement directly address Plaintiffs' claims and are specifically designed to prevent future occurrences of the alleged misconduct.  Plaintiffs' Counsel conferred with Professor Jesse M. Fried, the Dane Professor of Law at Harvard Law School and a published expert on executive

3

compensation and corporate governance matters, in drafting the proposed Corporate Governance Measures.  Jt. Decl. ¶ 18.[5]  Further, SandRidge, the SLC, and the Settling Defendants have acknowledged and agree that the Corporate Governance Measures confer a material benefit upon SandRidge and its stockholders.  Stipulation ¶ 3.3.

Some of the highlights of the Corporate Governance Measures are as follows:

- Reform SandRidge's policies regarding the election of its directors, such as eliminating a staggered board, and plurality voting, under certain circumstances;

- Submit to a stockholder vote the question whether to amend SandRidge's charter to lower the minimum number of shareholders votes required to call a special meeting of shareholders from 50% to 25%;

- Amend SandRidge's bylaws to require poison pills: (i) to be approved by affirmative vote of at least 75% of the Board; and (ii) to expire after 6 months, unless they are authorized or ratified by shareholder vote;

- Formally separate the positions of chairman of the board and chief executive officer;

- Additional training of directors and officers concerning best corporate governance practices; and

- Reforms to SandRidge's executive compensation policies.

Stipulation ¶ 3.1.

To the extent the Corporate Governance Measures have already been implemented, SandRidge agrees to maintain them in place for at least 5 years (but amendments to such

---

[5] Due to Professor Fried's unavailability, Plaintiffs submit the declaration of another corporate governance expert, Irving Kagan, of Kagan Consultants.  Declaration of Irving Kagan ("Kagan Decl."), attached as Exhibit 1 to the Jt. Decl.; Jt. Decl. ¶ 106.  Mr. Kagan reviewed the Corporate Governance Measures included in the Settlement, and following his review and assessment of the Settlement, he concluded that the Corporate Governance Measures constitute a valuable benefit to SandRidge and its shareholders.  *Id.*

reforms are permitted as necessary to comply with any future NYSE or SEC rules).  *Id.* ¶ 3.3.

## III.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

### A.  The Final Approval Standard

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  The authority to approve a settlement of a derivative action is committed to the sound discretion of the trial court.  *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (internal citations omitted).  Settlements of derivative actions are "'favored because such litigation is notoriously difficult and unpredictable.'"  *Make a Difference Found., Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 WL 917283, at *2 (D. Colo. Mar. 19, 2012) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)); *Mohammed v. Ells*, No. 12-CV-1831-WJM-MEH, 2014 WL 4212687, at *3 (D. Colo. Aug. 26, 2014). Therefore, courts "do not lightly reject such settlements."  *Make a Difference Found.*, at *2. In determining the standards applicable to approval of a derivative shareholder settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions … are relevant by analogy." 7C Charles Alan Wright, Arthur r. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1839, at 195 (2007).

The court will ordinarily grant final approval of a derivative action where it determines "that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate."  *In re DaVita Healthcare Partners, Inc.*, No. 12-CV-2074-WJM-CBS, 2015 WL 3582265, at *2 (D. Colo. June 5, 2015) (quoting

*Maher*, 714 F.2d at 455); *see also Ryskamp v. Looney*, No. 10-CV-00842-WJM-KLM, 2012 WL 3397362, at *3 (D. Colo. Aug. 14, 2012).  In assessing whether a proposed settlement is fair, reasonable, and adequate, courts in the Tenth Circuit consider the following factors:

> (1)   whether the proposed settlement was fairly and honestly negotiated;
>
> (2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3)   whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4)   the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Nuclear Pharmacy*, 741 F.2d at 324; *see also McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *10-11 (W.D. Okla. Oct. 27, 2008); *Freebird, Inc. v. Merit Energy Co.*, No. CIV.A. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012) (collecting cases).

An analysis of the foregoing factors confirms that the proposed Settlement is fair, reasonable, and adequate, and that it should therefore be granted final approval.

### B.  Consideration of Final Approval Criteria Supports Final Approval

### 1.  The Proposed Settlement was Fairly and Honestly Negotiated

In reaching the proposed Settlement, Plaintiffs' and Settling Defendants' counsel engaged in fair, honest, and arm's-length negotiations.  "The fairness of the negotiating process is to be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations

themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-CV-01567-WYD-BNB, 2008 U.S. Dist.

LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (internal citations omitted).  In fact, the

Settlement was achieved only after Plaintiffs' Counsel, *inter alia*:

> (i) conducted a lengthy and detailed investigation of potential claims against defendants Ward and the Independent Directors, including numerous witness interviews, the search for and analysis of oil-and-gas records throughout the Mississippian (including expert analysis of the records uncovered during the investigations), review of SEC filings and investigative materials collected and made public by TPG-Axon Capital, an activist shareholder which waged a proxy fight against the incumbent SandRidge directors (Jt. Decl. ¶¶ 16-17);

> (ii) compiled and analyzed documents, public filings and land records uncovered during Plaintiffs' Counsel's investigation to prepare a consolidated complaint as well as a consolidated amended complaint (*Id.* ¶¶ 16-17, 19, 21-26);

> (iii) briefed two comprehensive motions to dismiss filed by the Settling and Non-Settling Defendants and nominal defendant SandRidge Energy, Inc. (*Id.* ¶¶ 19, 28-29)[6];

> (iv) prepared and negotiated (and, when necessary, litigated) extensive discovery on a range of complex issues, and organized and reviewed millions of pages of documents produced by both parties and non parties (*Id.* ¶¶ 42-62, 67-70, 86-88);

> (v) negotiated with defense counsel on the scope of the document discovery served on Plaintiffs, and reviewed and produced several thousand pages of responsive documents on behalf of plaintiffs Elliott and Ezell (*Id.* ¶¶ 71-78);

> (vi) litigated the proper scope of, and ultimately prepared extensive responses to, numerous contention interrogatories propounded by defendant WCT (*Id.* ¶¶ 79-85);

> (vii) prepared and negotiated dozens of nonparty subpoenas and reviewed and analyzed  tens of thousands of documents produced in response to those subpoenas (*Id.* ¶¶ 89-94);

> (viii) briefed motions to compel (filed both by and against Plaintiffs), defeated a motion to stay the litigation filed by SandRidge's SLC and prevailed on Director Defendants' motion for judgment on the pleadings (*Id.* ¶¶ 38-41, 63-66);

---

[6] The two motions to dismiss involved a total of approximately 330 pages of briefing from all parties.

(ix) analyzed the discovery record and compiled extensive witness and exhibit lists in preparation for trial (*Id.* ¶ 102); and

(x) participated in lengthy and complex mediation and settlement discussions with all defendants, and negotiated the terms of the Settlement with the Settling Defendants, nominal defendant SandRidge and the SLC. (*Id.* ¶¶ 95-100)

Both the Plaintiffs and Settling Defendants are represented by competent and experienced attorneys who vigorously conducted this Consolidated Action. With the assistance of Judge Phillips, they negotiated extensively before reaching an agreement.[7] Jt. Decl. ¶¶ 95-100. The negotiations were at all times hard-fought, and they have produced a result that all parties believe to be in their respective best interests. Further, the Settlement was reached only after Plaintiffs thoroughly reviewed and considered the Settling Defendants' defenses, financial condition, and insurance coverage, as well as documents produced in the Consolidated Action. Jt. Decl. ¶¶ 8, 109-11. The Settlement was finally reached as the result of Judge Phillips's mediator's proposal. Jt. Decl. ¶ 99. Following agreement, the Stipulation itself took several more months to negotiate.

The fact that settlement negotiations were overseen by Judge Phillips, a highly regarded mediator and former judge in this District with substantial experience resolving shareholder derivative litigation, highlights the lack of collusion in reaching the Settlement. *See Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D. N.J. Dec. 4, 2012) *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent

---

[7] On December 15, 2014, the Court appointed Judge Phillips as mediator for the Action. ECF No. 230. The parties participated in two mediation sessions with Judge Phillips. The first mediation session took place on January 30, 2015, and the second took place on March 27, 2015. Jt. Decl. ¶¶ 95, 97.

mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'") (internal citations omitted).

### 2. Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

The next factor requires an examination of whether questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.  "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."  *McNeely*, 2008 WL 4816510, at *13 (citing *In re Qwest Commc'n Int'l, Inc. Sec. Litig.*, No. 01-CV-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71039, at *16-18 (D. Colo. 2006)).

Moreover, courts have held that "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable."  *Maher*, 714 F.2d at 455; *see also DaVita Healthcare*, 2015 WL 3582265, at *3; *Mohammed*, 2014 WL 4212687, at *3.  As explained below, while Plaintiffs believe that they would have prevailed against the Settling Defendants, there are questions of law and fact exist regarding the claims asserted against the Settling Defendants.

### a. There Are Questions of Law and Fact Concerning Plaintiffs' Breach of Fiduciary Duty Claim

The breach-of-fiduciary-duty claim against the Independent Directors is based on their alleged failure of oversight under *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  Specifically, the Amended Complaint alleged that the Independent Directors breached their duty of loyalty by failing to oversee Ward's allegedly

wrongful conduct.  Complaint ¶¶ 161, 286.  Many courts have recognized that *Caremark* claims are premised on "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'"  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (citing *In re Caremark*, 698 A.2d at 967).

In order for Plaintiffs to withstand summary judgment and to prevail at trial, Plaintiffs will be required to prove that "(a) the [Independent Directors] utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Id*. at 370.  The Independent Directors have maintained that there was no systematic failure of oversight because SandRidge had an Audit Committee that met four times in both 2011 and 2012, a Nominating and Corporate Governance Committee, Corporate Governance Guidelines, and a Code of Ethics.  *See* Motion of Defendant SandRidge Energy, Inc. and the Independent Director Defendants to Dismiss Plaintiffs' Amended Consolidated Shareholder Derivative Complaint, ECF No. 147 at 25.  Further, the Independent Directors have asserted that they considered Ward's related-party transactions and properly disclosed his transactions to SandRidge investors.  *Id*. at 4-5.

### b.  There Are Questions of Law and Fact Concerning Plaintiffs' Waste Claims

Plaintiffs assert two theories that the Independent Directors wasted SandRidge's corporate assets: (1) that the termination payment to Ward of over $90 million was waste

("Termination Waste"); and (2) that the payment of excessive compensation to Ward and senior SandRidge executives was waste.

In order for Plaintiffs' waste claims to withstand summary judgment and to prevail at trial, Plaintiffs will be required to prove that "the exchange was so one sided that no business person of ordinary, sound judgment would conclude that the corporation has received adequate consideration. A claim of waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets." *Freedman v. Adams*, 58 A.3d 414, 417 (Del. 2013) (quoting *In re the Walt Disney Company Derivative Litigation,* 906 A.2d 27, 74 (Del. 2006)). Although Plaintiffs believe they would have prevailed, there are substantial risks.

With respect to the Termination Waste claim, at summary judgment and at trial, the Independent Directors would assert that the termination payment made to Ward under his employment contract was within the scope of the business judgment rule which "shield[s] directors from personal liability if, upon review, the court concludes the directors' decision can be attributed to any rational business purpose." *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1374 (Del. 1995). Further, the Independent Directors would assert that they are protected from liability under Section 102(b)(7)[8] and Section 141(e)[9] of the Delaware

---

[8] DGCL § 102(b)(7) provides that a certificate of incorporation may contain a provision eliminating or limiting personal liability of a director unless Plaintiffs can show (a) a breach of the duty of loyalty, (b) bad faith conduct or knowing, intentional wrongdoing, or (c) an improper personal benefit.

[9] DGCL § 141(e) provides full protection from liability where a director in good faith relies upon "information, opinions, reports, or statements presented to the corporation by any of the corporation's officers or employees." The statute further provides full protection from

General Corporation Law ("DGCL"). Jt. Decl. ¶ 110. It is anticipated that the Independent Directors would also argue at summary judgment and at trial that their conduct was within their business judgment, and that it was reviewed and approved by their legal advisors. *Id*.

With respect to the claim that the Independent Directors' approved excessive compensation to Defendant Ward and SandRidge's senior executives, the Independent Directors have maintained that Ward provided significant consideration to SandRidge by serving as the full-time CEO, and that Ward's compensation was below the 75th percentile for large peer companies. *See* Motion of Defendant SandRidge Energy, Inc. and the Independent Director Defendants to Dismiss Plaintiffs' Amended Consolidated Shareholder Derivative Complaint, ECF No. 147 at 17. Further, the Independent Directors would assert that they relied upon the opinion of Longnecker & Associates, a compensation and governance consulting firm based in Houston, Texas, in determining that SandRidge's executive compensation was reasonable. *See* Jt. Decl. ¶¶ 91, 110.

### c. The SLC Could Seek to Dismiss All or Part of the Litigation

The resolution forming the SLC delegates the full power and authority to determine whether the Consolidated Action is in the best interests of the Company. ECF No. 175 at 4. There is a substantial risk that the SLC could seek to dismiss all or part of the Consolidated Action, placing the ultimate outcome of the litigation in doubt. Jt. Decl. ¶ 110.

---

liability to the extent they rely on advice of experts or professionals selected with "reasonable care."

Consequently, the outcome of this Consolidated Action is far from certain. In contrast, the proposed Settlement provides immediate, material benefits to SandRidge and avoids the time, expense, and risks inherent in any complex litigation with no guarantee of a favorable resolution. In fact, the cash component of the proposed Settlement will benefit SandRidge, whose stock price has declined as a result of the decline in the price of oil, and further, will spare the Company's officers, directors and employees from the distraction and expense of continued litigation.

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

The proposed Settlement is valuable to SandRidge and its shareholders because it provides for the payment of $38 million in cash (subject to deductions for certain expenses that may be incurred as part of a separate securities class action) and the Corporate Governance Measures described above. Jt. Decl. ¶ 103. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Jt. Decl. ¶ 112. Plaintiffs and their counsel recognize that there would be risks if this case were tried, with the distinct possibility that any future relief may well provide less value than the benefits SandRidge and its stockholders will receive as a result of the Settlement. Jt. Decl. ¶¶ 109-11.

In addition to monetary relief, courts have held that corporate governance reforms are a very valuable form of relief that can be obtained in a shareholder derivative action. *See*, *e.g.*, *DaVita Healthcare*, 2015 WL 3582265, at *3 ("The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees)

13

does not weigh against approval of the settlement.   To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action."); *Ryskamp*, 2012 WL 3397362, at *4 ("The fact that the settlement involves some corporate governance reforms also weighs in favor of approval of the settlement."); *Maher*, 714 F.2d at 461 ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action.").

Here, Plaintiffs asserted that the Independent Directors breached their fiduciary duties and wasted corporate assets by knowingly or recklessly allowing Ward to engage in self-interested and conflicted behavior, by failing to prevent him from taking improper illegal actions, and by granting wasteful compensation packages to him and other senior executives.   Many of the Corporate Governance Measures created by the Settlement directly address Plaintiffs' claims and are specifically designed to prevent future occurrences of the alleged misconduct.   Kagan Decl. ¶¶ 6-8 (The Corporate Governance Measures seek to deal directly with the alleged wrongful acts and would adequately address the alleged wrongful acts if actually instituted and maintained).   Plaintiffs' Counsel conferred with Professor Fried as to the Corporate Governance Measures included in the Settlement.   Jt. Decl. ¶ 18.   However, due to his unavailability, Plaintiffs are submitting the declaration of Irving Kagan, a corporate governance expert, who opines that the corporate governance measures are valuable to the corporation and its shareholders.   Jt. Decl. ¶ 106; Kagan Decl. ¶ 9.   Finally, SandRidge, the SLC, and the Settling Defendants have

14

acknowledged and agree that the Corporate Governance Measures confer a material benefit upon SandRidge and its stockholders.  Stipulation ¶ 3.3.

### 4. The Judgment of the Parties is that the Settlement is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *McNeely*, 2008 WL 4816510, at *13 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006)); *see also Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182-83 (D. Kan. 2002).  Here, Plaintiffs are represented by counsel with extensive experience in derivative and complex litigation similar to this Consolidated Action, and based on this experience and information reviewed and analyzed to date, believe that the proposed Settlement is in the best interests of SandRidge and its shareholders.  Similarly, the Company and the SLC are represented by counsel that support the Settlement and believe that it is fair and reasonable.  Jt. Decl. ¶ 11.

### 5. The Reaction of SandRidge's Shareholders Favors Final Approval

The deadline for shareholders to file objections to the settlement is December 4, 2015.  ECF No. 302.  To date, no SandRidge shareholder has filed an objection to this Settlement.[10]  This factor will be further addressed in Plaintiffs' reply brief in support of the Settlement if any objections are filed.

---

[10] If any objections are received in advance of the deadline for filing objections, Plaintiffs will respond thereto in its reply brief in support of the Settlement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs ask this Court to grant final approval of the Settlement and enter the proposed Final Order and Judgment.

Dated: November 25, 2015                                   Respectfully submitted,

/s/ Michael Burrage
Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
Randa K. Reeves, OBA # 30695
**WHITTEN BURRAGE**
1215 Classen Drive
Oklahoma City, Oklahoma  73103
Telephone:    (405) 516-7800
Facsimile:    (405) 516-7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
rreeves@whittenburragelaw.com

*-and-*

/s/ Robert N. Kaplan
Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Matthew P. McCahill (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:    (212) 687-1980
Facsimile:    (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
mmccahill@kaplanfox.com

***Co-Lead Counsel for the Plaintiffs***

***Other Plaintiffs' Counsel:***

**JACKSON WALKER L.L.P.**
Mark T. Josephs
Texas State Bar No. 11031400

16

(admitted *pro hac vice*)
Andrew D. Graham
Texas State Bar No. 24041002
(admitted *pro hac vice*)
Edwin M. Buffmire
Texas State Bar No. 24078283
(admitted *pro hac vice*)
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone:    (214) 953-6000
Facsimile:     (214) 953-5822
mjosephs@jw.com
agraham@jw.com
ebuffmire@jw.com

-and-

**Liaison Counsel for Plaintiffs:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania
Oklahoma City, Oklahoma  73120
Telephone:    (405) 235-1560
Facsimile:     (405) 239-2112
wbf@federmanlaw.com

17

## CERTIFICATE OF SERVICE

I hereby certify that, on November 25, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Amanda F. Lawrence alawrence@scott-scott.com
Andrea T Cutter  acutter@cutterlawfirm.com
Andrew D. Graham agraham@jw.com
Christian Word  christian.word@lw.com
C. William Phillips cphillips@cov.com
Everett C Johnson, Jr  Everett.johnson@lw.com
George S Corbyn, Jr.  gcorbyn@corbynhampton.com
James E. Dunn jim@usattorney.com
Jeffrey P. Campisi jcampisi@kaplanfox.com
Joe M Hampton  jhampton@corbynhampton.com
Joseph P. Guglielmo jguglielmo@scott-scott.com
Louis N. Boyarsky lboyarsky@glancylaw.com
Margaret A Tough  margaret.tough@lw.com
Mark P. Gimbel migmbel@cov.com
Mark T. Joseph mjosephs@jw.com
Matthew P McCahill  mmccahill@kaplanfox.com
Michael Burrage mburrage@whittenburragelaw.com
Peter Scaff  pscaff@gardere.com
Randa Kay Reeves rreeves@whittenburragelaw.com
Reggie N. Whitten rwhitten@burragelaw.com
Robert N. Kaplan rkaplan@kaplanfox.com
Steven M. Bauer  steven.bauer@lw.com
Thomas A Hagemann  thagemann@gardere.com
Thomas B. Snyder Thomas.snyder@crowedunlevy.com
Edwin G. Schallert egschallert@debevoise.com
Maeve O'Connor mloconnor@debevoise.com
Scott N. Auby snauby@debevoise.com
Robert G. McCampell rmccampbell@fellerssnider.com
Travis V. Jett tjett@fellerssnider.com

 /s/ Michael Burrage
Michael Burrage