# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SHAREHOLDER DERIVATIVE LITIGATION | Case No. CIV-13-102-W<br>Relating to All Derivative Actions |

## SHAREHOLDER DALE HEFNER'S CONTINGENT MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

        A.     The State Action ................................................................................ 2

        B.     The Federal Action ........................................................................... 5

        C.     The Settling Parties Seek to Settle Virtually All the Derivative
               Claims ................................................................................................ 7

        D.     The Court's Preliminary Approval of the Settlement ...................... 8

III.    HEFNER IS ENTITLED TO REASONABLE ATTORNEYS' FEES IN
        THE EVENT THE SETTLEMENT IS APPROVED ................................... 8

        A.     Hefner Has Conferred Substantial Benefits on SandRidge ............ 9

               1.      Hefner Was a Material Factor in the Settlement and Turning
                       the Tide in This Litigation ................................................... 10

               2.      The Value of the Settlement Necessarily Reflects Hefner's
                       Assertion and Prosecution of the State Action and the Unique
                       *Hefner* Claims ...................................................................... 11

        B.     Hefner's Proposed Fee and Expense Award Is Reasonable ......... 12

               1.      Time and Labor Involved and Expenses Incurred ............. 14

               2.      Novelty and Difficulty of the Issues, and the Skill Necessary
                       for Successful Prosecution ................................................. 15

               3.      Experience, Reputation, and Ability of Counsel ............... 16

               4.      The Contingent Nature of the Fee and Preclusion of Other
                       Employment ........................................................................ 17

               5.      Amount Involved and Results Obtained ............................ 18

IV.     HEFNER REQUESTS ATTORNEYS' FEES AND COSTS TO THE
        EXTENT HIS OBJECTIONS CONFER A BENEFIT .......................... 21

V.      CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Ams. Mining Corp. v. Theriault*,
    51 A.3d 1213 (Del. 2012) ................................................................. 13

*Belote v. Rivet Software, Inc.*,
    No. 12-CV-02792-WYD-MJW, 2014 WL 3906205
    (D. Colo. Aug. 11, 2014) ................................................................ 20

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989) ......................................................................... 13

*Blum v. Stenson*,
    465 U.S. 886 (1984) ....................................................................... 17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .................................................................... 9, 10

*Boyd Rosene and Assocs., Inc. v. Kan. Mun. Gas Agency*,
    174 F.3d 1115 (10th Cir. 1999) ..................................................... 13

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ....................................................... 14

*Chester v. Assiniboia Corp.*,
    355 A.2d 880 (Del. 1976) .............................................................. 13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .......................................................... 17

*Combs v. Shelter Mut. Ins. Co.*,
    551 F.3d 991 (10th Cir. 2008) ....................................................... 13

*Dover Historical Soc'y, Inc. v. Dover Planning Comm'n*,
    902 A.2d 1084 (Del. 2006) ............................................................ 13

*Finkel v. Am. Oil & Gas, Inc.*,
    No. 10-CV-01808-CMA-MEH, 2012 WL 171038
    (D. Colo. Jan. 20, 2012) ................................................................ 13

*Glassman v. Unocal Exploration Corp.*,
    777 A.2d 242 (Del. 2001) .............................................................. 18

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................. 17

*Goodrich v. E.F. Hutton Grp., Inc.*,
681 A.2d 1039 (Del. 1996)................................................................. 13

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ....................................................... 13, 21

*Hall v. Cole*,
412 U.S. 1 (1973) ............................................................................... 9

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6,
2006)................................................................................................. 15

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*,
3 F. Supp. 2d 1208 (D.N.M. 1998)................................................ 22, 23

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) ..................................................... 16

*In re Miniscribe Corp.*,
309 F.3d 1234 (10th Cir. 2002) ......................................................... 18

*In re Sauer-Danfoss Inc. S'holders Litig.*
65 A.3d 1116 (Del. Ch. 2011) ........................................................... 10

*In re Walt Disney Co. Derivative Litig.*,
907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ........... 18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)
*aff'd¸* 798 F.2d 35 (2d Cir. 1986)..................................................... 16

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ............................................................. 13

*Mares v. Credit Bureau of Raton*,
801 F.2d 1197 (10th Cir. 1986)......................................................... 12

*Mathes v. Roberts*,
85 F.R.D. 710 (S.D.N.Y. 1980)......................................................... 15

*McKittrick v. Gardner*,
378 F.2d 872 (4th Cir. 1967) ............................................................. 17

*Mills v. Elec. Auto-Lite Co.*,
      396 U.S. 375 (1970) ............................................................................... 9

*Rosenbaum v. MacAllister*,
      64 F.3d 1439 (10th Cir. 1995) ................................................. 9, 18, 19, 20

*Sw. Stainless, L.P. v. Sappington*,
      No. 07-CV-0334-CVE-TLW, 2010 WL 1486935
       (N.D. Okla. Apr. 13, 2010) ................................................................. 12

*UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont*
      *Mining Corp.*,
      352 F. App'x 232 (10th Cir. 2009) (unpublished) ................................. 21

*United Vanguard Fund, Inc. v. TakeCare, Inc.*
      693 A.2d 1076 (Del. 1997) .................................................................. 10

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
      9 F.3d 849 (10th Cir. 1993) ............................................................ 14, 21

## I.    INTRODUCTION

This case is one of two semi-related shareholder derivative actions currently brought on behalf of SandRidge Energy, Inc. ("SandRidge" or the "Company"). The other action is *Hefner v. Ward, et al.*, Case No. CJ-2013-63, pending in the District Court of Oklahoma County, State of Oklahoma, before the Honorable Patricia G. Parrish (the "State Action"). Dale Hefner ("Hefner") is a shareholder of SandRidge and the plaintiff in the State Action. Hefner has filed a notice indicating his intent to object to the partial settlement (the "Settlement") proposed by some of the parties (the "Settling Parties") in this federal action (the "Federal Action"). At this time, Hefner, who is still in the process of seeking relevant information, believes that the current terms of the proposed Settlement are unfair, unreasonable, and not in SandRidge's best interests.

On October 9, 2015, this Court preliminarily approved the Settlement. *See* Doc. 302 (the "Preliminary Approval Order"). The Court ordered that "all applications for attorney fees and seeking reimbursement of litigation expenses shall be filed with the Court and served no later than twenty-one (21) calendar days before the Settlement Hearing," which is currently scheduled for December 18, 2015. *Id.*, ¶¶2, 9. To comply with this order, Hefner now files this application for reasonable attorneys' fees and reimbursement of his counsel's reasonable litigation expenses.

In the event that the Court disagrees with Hefner's forthcoming objections and approves the Settlement, Hefner and his counsel ("Hefner's Counsel") should be awarded reasonable attorneys' fees and reimbursed their litigation expenses for their contribution to any substantial benefits and recovery conferred by the proposed Settlement. Without

Hefner's successful litigation in the State Action, the Settlement would not have occurred – and certainly not on the same terms.  Hefner was vigorously litigating the State Action during the times when the Company took drastic steps to fire its Chief Executive Officer ("CEO"), Tom Ward, replace a large part of its Board of Directors ("Board"), and adopt various reforms credited to plaintiffs in this action (the "Federal Plaintiffs").  After this case initially was dismissed, Hefner also helped turned the tide in this litigation, beating a motion to dismiss on demand futility grounds.  The Settlement also concerns several valuable claims that are only asserted and being prosecuted by Hefner.  Thus, Hefner's counsel should be paid an amount that bears a reasonable relation to any award granted to the Federal Plaintiffs.  The amount requested is dependent on the receipt of information requested of the Settling Parties regarding the relative contributions to the Settlement amongst all of the parties.

Hefner also requests that his counsel be compensated to the extent his objections benefit SandRidge or the Court.  It is well established in the Tenth Circuit that attorneys' fees and expenses may be awarded to objecting attorneys who confer a benefit through the arguments they make and the information they provide.

## II.   BACKGROUND

### A.   The State Action

Hefner is a current shareholder of SandRidge and the plaintiff in the State Action pending before Judge Parrish in Oklahoma state court.  *See* Doc. 316 at 2; Doc. 320. Since January 4, 2013, he has asserted and prosecuted on behalf of SandRidge in the State Action various derivative claims against Tom Ward, Matthew K. Grubb, James D.

Bennett, William A. Gilliland, Jeffrey S. Serota, Everett R. Dobson, Jim J. Brewer, Daniel W. Jordan, Roy T. Oliver, Jr., D. Dwight Scott, and Stuart W. Ray.  *See generally* Verified Shareholder Derivative Petition for Breach of Fiduciary Duties, Waste of Corporate Assets, and Unjust Enrichment ("Hefner Petition"), *Hefner v. Ward*, No. CJ-2013-63 (Okla. Dist. Ct.–Okla. Cnty. Jan. 4, 2013), Ex. 1 to the Aguilar Decl.[1]  Hefner alleges that these individuals, as officers and directors of the Company, breached their fiduciary duties, wasted corporate assets, or otherwise were unjustly enriched in connection with wrongdoing extending back to at least 2008.  *See, e.g.*, *id.*, ¶¶1-4, 61-69, 102-20.

Some of the claims Hefner asserts in the State Action arise from wrongdoing involving improper statements in the Company's press releases and public filings concerning, *inter alia*, the Company's oil reserves and operational status, and its ability to achieve target revenues and earnings; and the failure to ensure that reliable systems of disclosure controls and reporting were in place at the Company (the "Improper Statements Claims").  *See id.*, ¶¶5-10, 43-60, 107-09.  Other claims asserted by Hefner concern the director defendants' efforts to perpetuate themselves in office or otherwise maintain control over SandRidge (the "Entrenchment Claims").  *See, e.g.*, *id.*, ¶¶11, 70-78, 106.

---

[1]  "Aguilar Decl." refers to the Declaration of George C. Aguilar in Support of Shareholder Dale Hefner's Contingent Motion for Attorneys' Fees and Reimbursement of Expenses and Brief in Support, filed herewith.

Last, but not least, Hefner alleges claims involving Ward's and the Board's repeated prioritization of Ward's interests over SandRidge's, including:

(i)     paying Ward an excessive and unwarranted $67 million to buy out his well interests in the Executive Well Participation Plan (the "EWPP");

(ii)    paying Ward egregiously excessive compensation, totaling approximately $150 million over just five years;

(iii)   leasing land and other interests in property belonging to Ward; and

(iv)    paying over $16 million in corporate sponsorships of Ward's partially-owned basketball team, the Oklahoma City Thunder ("Thunder").

*See, e.g.*, *id.*, ¶¶2-4, 33-34, 61-69, 105.

From the outset of the State Action, defendants attempted to stay or dismiss the State Action.  Defendants' Motion to Stay, or, in the Alternative, Dismiss, *Hefner v. Ward*, No. CJ-2013-63 (Okla. Dist. Ct.–Okla. Cnty. Mar. 4, 2013), Ex. 2 to the Aguilar Decl.  Hefner opposed the hybrid motion.  Plaintiff's [Corrected] Memorandum of Law in Opposition to Defendants' Motion to Stay, or, in the Alternative, Dismiss, *Hefner v. Ward*, No. CJ-2013-63 (Okla. Dist. Ct.–Okla. Cnty. Apr. 22, 2013), Ex. 3 to the Aguilar Decl.  In June 2013, Judge Parrish initially stayed the case in favor of the Securities Litigation.[2]  *Hefner v. Ward*, No. CJ-2013-63, slip op. (Okla. Dist. Ct.–Okla. Cnty. June 19, 2013), Ex. 4 to the Aguilar Decl.

The next month, Hefner sought to lift the stay after it became clear defendants were taking an inconsistent position by pressing forward with the Federal Action.

---

[2] "Securities Litigation" refers to *In re SandRidge Energy, Inc. Securities Litigation*, Case No. CIV-12-1341-W (W.D. Okla.).

Plaintiff's Motion to Lift Stay and Brief in Support, *Hefner v. Ward*, No. CJ-2013-63 (Okla. Dist. Ct.–Okla. Cnty. July 1, 2013), Ex. 5 to the Aguilar Decl.  Judge Parrish lifted the stay and scheduled defendants' motion to dismiss to be heard on September 12, 2013, as this Court was informed through notice provided by the Federal Plaintiffs.  Doc. 127 at 2.

Just the day before the September 12, 2013 hearing in the State Action, this Court granted defendants' initial motions to dismiss the Federal Action.  Docs. 132-34. After argument by the parties on September 12, 2013, in the State Action, and after "extensive briefing" on the issue of demand futility, Judge Parrish denied the defendants' motion to dismiss.  Doc. 142 ("Amended Complaint"), ¶¶175-76; *Hefner v. Ward*, No. CJ-2013-63, slip op. (Okla. Dist. Ct.-Okla. Cnty. Oct. 1, 2013), Ex. 11 to the Aguilar Decl.

After defeating the motion to dismiss, Hefner took steps in furtherance of coordinating his State Action with the Federal Action.  For example, Hefner agreed to temporarily stay his action, with the Special Litigation Committee ("SLC") agreeing to cause SandRidge to provide Hefner with discovery produced in the Federal Action and to notify Hefner of any settlement discussions.  Stipulation and Agreed Order Granting the Special Litigation Committee's Motion to Stay, *Hefner v. Ward*, No. CJ-2013-63 (Okla. Dist. Ct.–Okla. Cnty. Nov. 14, 2014), Ex. 12 to the Aguilar Decl.

### B.     The Federal Action

This Federal Action is different than the State Action in several ways.   The Federal Action asserts claims based on wrongful conduct during a "Relevant Period" beginning October 25, 2010.  *See* Amended Complaint, ¶2.  The primary focus of the

Federal Action is Ward's usurpation of corporate opportunities and front running SandRidge's efforts to acquire leases and other rights relating to oil drilling. *See generally* Amended Complaint; Doc. 127 at 2 (understating the claims in the State Action and exaggerating how "the usurpation of corporate opportunity claims that are encompassed in" the Federal Action "dwarf" the claims asserted in the State Action). The Federal Plaintiffs' Amended Complaint does not assert the Improper Statements Claims asserted by Hefner.  Regarding the Board's entrenchment efforts, the Federal Plaintiffs only assert a "*Caremark*" oversight claim. *See* Amended Complaint, ¶¶286, 289; Doc. 301 at 12-13.  With regard to Ward's excessive compensation, they only assert a waste claim. *See* Amended Complaint, ¶292.  They assert no allegations regarding the EWPP, and only tangential allegations regarding the Thunder sponsorship. *See id.*, ¶¶235-36, 240-41.

All told, there are numerous claims that are only asserted and being prosecuted in the State Action.  These claims, referred to hereafter as the "Unique *Hefner* Claims," include:

- breach of fiduciary duty of loyalty by Ward and the director defendants for approving egregiously excessive executive compensation, SandRidge's purchase of Ward's well interests in the EWPP, and SandRidge's corporate sponsorship of Ward's partially-owned Thunder basketball team (Hefner Petition, ¶105);

- breach of fiduciary duty of loyalty by the Compensation Committee for approving the egregiously excessive compensation (*id.*, ¶110);

- breach of fiduciary duty loyalty by Ward and the director defendants for the purchase of Ward's well interests in the EWPP (*id.*, ¶105);

- breach of fiduciary duty loyalty by the director defendants for actively attempting to entrench themselves (*id.*, ¶106); and

- unjust enrichment by Ward from excessive compensation, sponsorship of his Thunder basketball team, improper bailout of his interests in the EWPP, and other benefits unjustly conferred on him by SandRidge (*id.*, ¶118).[3]

### C.   The Settling Parties Seek to Settle Virtually All the Derivative Claims

Despite his critical role in this overall derivative litigation, the parties to this Federal Action engaged in settlement negotiations without ever including Hefner. These negotiations culminated in the proposed Settlement, which seeks to release virtually all the claims asserted in the two derivative actions, except for Hefner's Improper Statement Claims and the Federal Plaintiffs' claims against the Ward-related entities. Stipulation, ¶¶1.13, 4.4. The proposed Settlement would even release the Unique *Hefner* Claims that are only asserted and being litigated by Hefner. The proposed Settlement also provides that Federal Plaintiffs' counsel may apply for, and the settling defendants will not object to, attorneys' fees up to $13 million. *Id.*, ¶9.1. The money not paid to Federal Plaintiffs' counsel would then remain in an escrow account to pay for any litigation costs or settlement by defendants in the Securities Litigation. *Id.*, ¶¶2.3-2.4. SandRidge would only be paid, if at all, with any money remaining in the escrow account after the resolution of the Securities Litigation. *Id.*, ¶¶2.5-2.6. In addition, SandRidge has agreed to adopt or maintain a handful of corporate governance measures. *Id.*, ¶¶3.1-3.2. The

---

[3] As noted earlier, Hefner also asserts the Improper Statements Claims, which the Stipulation includes in a small category of "Excluded Claims." *See* Doc. 301-1 ("Stipulation"), ¶1.13. The Improper Statements Claims are the ***only*** derivative claims asserted by Hefner that are carved out of the proposed Settlement. *See id.*, ¶1.25.

Stipulation provides that the Federal Plaintiffs' "prosecution and settlement of the Consolidated Action was a material factor" in SandRidge's "decision to adopt, implement or maintain" the corporate governance measures. *Id.*, ¶3.3.

### D.   The Court's Preliminary Approval of the Settlement

On October 8, 2015, the Federal Plaintiffs filed a motion asking the Court to preliminarily approve the proposed Settlement. Doc. 301. The Federal Plaintiffs made no mention in the motion of the pending State Action or that the proposed Settlement releases claims only brought in the State Action. The Court granted the motion the next day. Doc. 302. The Preliminary Approval Order provides in part that "[t]he Court will consider written objections to the proposed Settlement or to any application for attorney fees and reimbursement of expenses" at a settlement approval hearing currently scheduled for December 18, 2015. *Id.*, ¶¶2, 10. "[A]ll applications for attorney fees and seeking reimbursement of litigation expenses shall be filed with the Court and served no later than twenty-one (21) calendar days before the Settlement Hearing." *Id.*, ¶9. On November 25, 2015, Federal Plaintiffs' counsel moved for an award of $12,306,468.37 in attorneys' fees and $693,531.63 in expenses—in other words, the full $13 million provided for under the Settlement. Doc. 327 at 1.

## III.   HEFNER IS ENTITLED TO REASONABLE ATTORNEYS' FEES IN THE EVENT THE SETTLEMENT IS APPROVED

In the event that the Court approves the Settlement, Hefner and his counsel request reasonable attorneys' fees and reimbursement of expenses incurred in connection with

litigating the Released Claims[4] ("Fee and Expense Award").  The reasonable amount requested by Hefner and his counsel should bear a reasonable relation to the amount awarded to the Federal Plaintiffs' counsel, and is dependent on the receipt of information requested of the Settling Parties regarding the relative contributions to the Settlement amongst all of the parties.  Hefner's Counsel submits that such an award is fair, reasonable, and supported by relevant precedent.

### A.    Hefner Has Conferred Substantial Benefits on SandRidge

Shareholder litigants in derivative actions may receive attorneys' fees and expenses "where the litigation has conferred a substantial benefit" on the corporation or shareholders generally.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970);[5] *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)).  "To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit."  *Mills*, 396 U.S. at 396-97.

A litigant may also be entitled to reasonable attorneys' fees where there is a common fund recovery.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common-fund doctrine "rests on the perception that persons who obtain the benefit of a

---

[4] *See* Stipulation, ¶1.25.

[5] Here, as throughout, all citations and footnotes are omitted and all emphasis is deemed added unless otherwise noted.

lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* Courts "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*[6]

To the extent the Court approves the Settlement, it is plain that Hefner and his counsel conferred a substantial benefit to SandRidge and its shareholders, and contributed to any recovery for the Company in this case. Their vigorous litigation of this case at critical junctures was a material factor in any monetary recovery for the Company and SandRidge's adoption of various governance changes. Moreover, many of the claims that would be released by the Settlement would have little to no value but for Hefner's successful assertion and prosecution of those claims on behalf of SandRidge.

### 1. Hefner Was a Material Factor in the Settlement and Turning the Tide in This Litigation

Hefner and his counsel vigorously and successfully prosecuted the State Action at critical junctures, causing any monetary recovery for the Company and influencing beneficial governance changes at SandRidge. When Hefner filed his complaint on January 4, 2013, Ward was still CEO and the entrenched Board was in the throes of a proxy fight with TPG-Axon. *See generally* Hefner Petition. In the months that followed,

---

[6] Similarly, under Delaware's corporate benefit doctrine, "[w]hen a plaintiff pursues a cause of action relating to the internal affairs of a Delaware corporation and generates benefits for the corporation or its stockholders, Delaware law calls for the plaintiff to receive an award of attorneys' fees and expenses …." *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1123 (Del. Ch. 2011); *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079-80 (Del. 1997). "[T]he benefit need not have resulted from a litigated judgment or settlement"; rather, "[i]f the defendants take action to moot the dispute, then the plaintiff can seek an award." *Sauer-Danfoss*, 65 A.3d at 1123. As explained *infra* at n.7, Delaware law may be applicable to some degree here.

the Federal Action was mired in a leadership battle and later on hold while the Federal Plaintiffs prepared a consolidated complaint.  *See* Docs. 66, 71.  The parties in the State Action, however, were proceeding with briefing defendants' hybrid motion to stay or dismiss.  *See supra* at 4.  The initial round of motion to dismiss briefing was completed in the State Action at the time SandRidge decided to fire Ward.  *See id.*; Amended Complaint, ¶201.

Similarly, the October 2013 ruling denying the motions to dismiss in the State Action no doubt put substantial pressure on defendants and those at SandRidge to improve the management of the Company and institute reforms.  This remarkable accomplishment helped turn the tide in this overall derivative litigation after the Federal Plaintiffs had to fix their complaint and wait until September 22, 2014, to defeat motions to dismiss.  When considering the procedural history of both derivative actions, it is clear that Hefner's prosecution of the State Action was also a "material factor" prompting the settlement and reforms.

        2.      **The Value of the Settlement Necessarily Reflects Hefner's Assertion and Prosecution of the State Action and the Unique *Hefner* Claims**

The value of the Settlement, to be fair and reasonable, would have to reflect Hefner's efforts to assert and prosecute the Unique *Hefner* Claims that are proposed to be released by the Settlement.  As detailed above, those claims are far more expansive than those asserted in this Federal Action in many respects, including, but not limited to:

- The federal claims concern a relevant period beginning October 25, 2015, whereas Hefner's claims extend back to at least 2008;

- The Federal Plaintiffs' entrenchment claim only entails a *Caremark* oversight claim;

- The Federal Plaintiffs only assert a waste claim with regard to Ward's excessive compensation;

- The Federal Plaintiffs assert no allegations regarding SandRidge's purchase of Ward's EWPP interests for $67 million; and

- The Federal Plaintiffs only offer minor allegations, but no claims, regarding SandRidge's sponsorship of Ward's partially-owned Thunder basketball team.

*See supra* at 6-7.  The Settlement plainly provides and must provide as a basic tenet of contract law consideration to compensate SandRidge for the release of the Unique *Hefner* Claims, and that consideration was obtained only by the leverage and value generated by Hefner's efforts to litigate those claims.

The Settling Parties must concede that Hefner and his counsel conferred a substantial benefit on SandRidge and its shareholders in connection with litigating the State Action.  To do otherwise would disingenuously deny the critical role Hefner has played in this litigation, and to admit that no consideration is being paid to Sandridge for the release of the Unique *Hefner* Claims.

### B.    Hefner's Proposed Fee and Expense Award Is Reasonable

A fee applicant must show that his requested fees and expenses are reasonable in amount.  *Sw. Stainless, L.P. v. Sappington*, No. 07-CV-0334-CVE-TLW, 2010 WL 1486935, at *9 (N.D. Okla. Apr. 13, 2010) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)).  The following factors are considered in the Tenth Circuit when assessing the reasonableness of a requested fee and expense amount: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to

perform the legal services properly; (4) preclusion of other employment; (5) customary

fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client

or the circumstances; (8) amount involved and results obtained; (9) experience, reputation

and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the

professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga.*

*Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other*

*grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Gottlieb v. Barry*, 43

F.3d 474, 483 (10th Cir. 1994).[7]

---

[7] "'In diversity cases, attorney fees are a substantive matter controlled by state law.'" *Finkel v. Am. Oil & Gas, Inc.*, No. 10-CV-01808-CMA-MEH, 2012 WL 171038, at *1-6 (D. Colo. Jan. 20, 2012) (quoting *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008)) (applying Nevada law, the state of the nominal defendant company's state of incorporation, whose law essentially required the same inquiry as federal law). Here, SandRidge is incorporated in Delaware, meaning Delaware law would apply.  As the Tenth Circuit has recognized, under Delaware law, generally "attorney's fees are 'a procedural matter governed by the law of the forum.'" *Boyd Rosene and Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1126 (10th Cir. 1999) (quoting *Chester v. Assiniboia Corp.*, 355 A.2d 880, 882 (Del. 1976)).  Moreover, Delaware law appears to be similar to federal law, permitting fees to plaintiffs in derivative actions under a common benefit doctrine and assessing the reasonableness of the fees under various factors similar to those of *Gottlieb* and *Johnson*.  *See Dover Historical Soc'y, Inc. v. Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del. 2006) (recognizing "common benefit" exception); *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1046 (Del. 1996) (before awarding fees, the court "must make an independent determination of reasonableness"); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012) (factors to be considered when awarding fees include: "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved").

An analysis of the applicable factors[8] supports awarding reasonable fees and expenses to Hefner.

### 1.    Time and Labor Involved and Expenses Incurred

Hefner's Counsel expended substantial time and effort investigating the facts relevant to the litigation and vigorously litigating derivative claims on behalf of SandRidge. Hefner's Counsel's efforts included drafting the complaint, pursuing discovery; opposing defendants' initial motion to stay; seeking to lift the stay, opposing defendants' motion for a protective order; briefing demand futility in connection with opposing defendants' motion to dismiss; initially opposing the SLC's efforts to stay the case; reviewing discovery produced by SandRidge; assisting the SLC with their investigation; and extensive efforts to lift the stay after the SLC had adequate time to complete its investigation. Aguilar Decl., ¶42. Indeed, as the Federal Plaintiffs recognize, "the parties [in the *Hefner* Action] submitted **extensive briefing** on the demand futility issue." Amended Complaint, ¶175. To date, Hefner's Counsel spent approximately 1,072.25 hours litigating the Released Claims. Aguilar Decl., *¶*43.

In addition, Hefner's Counsel have also incurred and advanced total expenses exceeding $18,514.89 in connection with prosecuting the State Action. *Id.*, ¶45. These expenses − necessary to effectively prosecute and favorably resolve the derivative

---

[8] All of the *Johnson* factors are rarely applicable. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (quoting *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988)).

litigation – would have been billed in non-contingency matters and should be reimbursed.  *Id.*

### 2.     Novelty and Difficulty of the Issues, and the Skill Necessary for Successful Prosecution

"[S]hareholder derivative actions are 'notoriously difficult and unpredictable.'"  *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (quoting *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980)).  This litigation is no exception, requiring Hefner's Counsel to litigate with the utmost skill.

Hefner's Counsel have been required to expend significant time and effort to master an enormous body of complex facts and law to effectively litigate the derivative claims.  Hefner asserts, and his counsel have been earnestly and efficiently prosecuting, a broad range of wrongdoing, spanning over approximately a five-year period and entailing numerous events and transactions that nonetheless fit into an overall scheme of self-enrichment and entrenchment.  While this case entails the usual challenges of overcoming the business judgment rule, the unique facts in this case – requiring nothing short of skillful advocacy to successfully prosecute – support a variety of novel arguments to establish breaches of loyalty, lack of independence, and other grounds for invalidating the excessive benefits and bailouts that SandRidge's disloyal Board lavished upon Ward while he effectively used SandRidge as his personal piggybank.  Matters are further complicated by the existence of the SLC, which the Board created with the intent of terminating this litigation.

Hefner and his counsel have also faced a variety of difficulties relating to the Federal Action, which defendants first used as a basis to stay the State Action, then used as a basis for dismissal after the Court dismissed the consolidated complaint in the Federal Action, and now use to release substantially all of Hefner's claims, including the Unique *Hefner* Claims. Hefner's Counsel skillfully succeeded in lifting the stay and the distinguishing the Court's dismissal decision from the demand futility issues in the State Action. Hefner now faces his latest challenge: objecting to the Settlement, which would release substantially all of the valuable derivative claims he has been prosecuting in return for, what he believes to be, grossly inadequate consideration to SandRidge.

### 3.    Experience, Reputation, and Ability of Counsel

Hefner's Counsel are some of the leading shareholder advocates in the nation. *See* Aguilar Decl., Ex. 13. Hefner's Counsel are highly-seasoned practitioners in this very specialized and competitive area of the law, and are well-known in the field of shareholder litigation, having been involved in some of the most significant shareholder actions in the history of corporate litigation. *Id.*, ¶28. Drawing on their experience and ability, Hefner's Counsel managed the State Action in an efficient and resourceful manner, cultivating many successes that the Settlement now seeks to harvest.

In addition, the reputation and skill of opposing counsel may also be considered when determining an award of fees. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd¸* 798 F.2d 35 (2d Cir. 1986). Here, defendants and the SLC are

represented by experienced and able counsel from major, well-respected law firms who are vigorously defending their clients' interests.  Aguilar Decl., ¶¶29-34.

### 4. The Contingent Nature of the Fee and Preclusion of Other Employment

Due to the assumption of litigation risks, the contingent nature of the fee is a critical factor in evaluating its reasonableness.  *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 471 (2d Cir. 1974) ("Perhaps the foremost of [the less objective] factors is the attorney's 'risk of litigation,' i.e., the fact that, despite the most vigorous and competent of efforts, success is never guaranteed."), *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000); *Goldberger*, 209 F.3d at 54 (noting the risk of non-payment is the most important factor in determining attorneys' fees). "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, irrespective of whether they win or lose." *Blum v. Stenson*, 465 U.S. 886, 903 (1984) (Brennan, J., concurring).[9]

As the Tenth Circuit has recognized, contingency fee attorneys, in addition to fronting costs of litigation, commit the time necessary to see the case to conclusion:

> The contingent fee trial lawyer generally advances his own money to finance litigation. He enters his appearance before a court and does every task that the litigation requires, personally or through other attorneys he employs, from drafting

---

[9] *Accord. McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967) ("The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.").

> the complaint to making the closing argument. Having entered his appearance, he has no right to withdraw and his time commitment is not limited or flexible.

*In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002).

Unlike counsel for defendants, who are regularly paid handsome hourly rates and reimbursed for expenses, Hefner's Counsel have not been compensated for any of their time or expenses since the State Action was initiated in January 2013, and would have no entitlement to payment or reimbursement unless their efforts resulted in a substantial benefit to SandRidge.  Aguilar Decl, ¶36.  Hefner's Counsel undertook the State Action on a wholly contingent basis with no assurance that they would recover for the work or the costs and expenses they advanced that were required to vigorously and effectively prosecute a very difficult case.  *Id.*, ¶37.[10]  In addition, the substantial time Hefner's Counsel devoted to litigating the State Action precluded them from taking on or litigating other legal matters.  *Id.*, ¶38.

### 5.    Amount Involved and Results Obtained

The Tenth Circuit's decision in *Rosenbaum* demonstrates how the value of settlement consideration can be relevant for testing the reasonableness of a requested fee award.  In *Rosenbaum*, counsel for shareholder plaintiffs in a combined class action and

---

[10] The risk of non-payment in contingent-fee stockholder litigation is quite real.  For example, in the well-known *Disney* derivative action, plaintiffs' counsel devoted thousands of hours, and incurred millions of dollars in expenses, only to see judgment entered against them on all claims (which was later affirmed on appeal).  *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006); *see also Glassman v. Unocal Exploration Corp.*, 777 A.2d 242 (Del. 2001) (no recovery, and thus, no fee award, after thousands of hours in time and hundreds of thousands of dollars in expenses in connection with prosecution of shareholder litigation).

derivative lawsuit were awarded $2.5 million in fees and $100,000 in expenses by the district court for a settlement that involved the right of class members to purchase stock at a 3% discount, a payment to the company of $3.5 million, waiver of the $1 million deductible associated with the insurance, and "certain therapeutic corporate governance measurers." 64 F.3d at 1441, 1443.  In assessing the reasonableness of the fees, the Tenth Circuit found that the benefits the settlement provided to the company and class were "likely not worth the $15 million plus estimated by the district court" (*id.* at 1446):

- the benefit the class received from being able to buy stock at a discount "d[id] not appear to be huge," as there was no fund of money to the class, but rather class members would have to spend money to realize a benefit (*id.* at 1447);

- the proposed corporate governance measures were "not extraordinary modifications," seemed to be "merely prudent safeguards any major corporation should have in place without the impetus of a lawsuit," and one of the reforms – a commitment to maintain a board committee for at least five years – was already in place due to a "prior separate lawsuit"  (*id.* at 1446); and

- the payment of money to the company and the waiver by the insurers would apparently be used to fund costs associated with the lawsuit, including administrative costs associated with the settlement and the payment of fees and expenses to plaintiffs' counsel (*id.*).

"Thus," with regard to the last point, the Tenth Circuit found that "if these costs are balanced against the contribution from the insurance, viewing this as a derivative suit it is difficult to ascertain any net benefit to the corporation."  *Id.*  The court accordingly reversed and remanded for further proceedings.  *Id.* at 1448.

Similar to *Rosenbaum*, most – if not all – of the $38 million "Settlement Payment" provided for in the Stipulation may go to litigation expenses rather than benefit

SandRidge.   The Federal Plaintiffs have requested $13 million in attorneys' fees and expenses right off the top.   Doc. 327 at 1.   The remaining $25 million will sit in an escrow account to fund the litigation and resolution of the Securities Litigation – costs that would otherwise be already covered by defendants' D&O insurance carriers.   *See* Stipulation, ¶¶2.3-2.7.   As Hefner intends to address further in his forthcoming objections, any valuation of the settlement consideration must be sufficiently discounted to account for the risk that SandRidge may not receive any "net benefit" from the Settlement Payment.  *See Rosenbaum*, 64 F.3d at 1446.

The possibility of receiving some money and the handful of governance reforms appear to fall well short of compensating SandRidge for the vast and valuable claims – including the Unique *Hefner* Claims – that would be released under the terms of the Settlement.  For this and other reasons, Hefner intends to object to the Settlement and ask the Court to reject it.  This is not to say there is no value offered by the Settlement to SandRidge.  However, the Settling Parties, as the proponents of the Settlement, bear the burden of establishing the value and fairness of the Settlement.  *See Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014).   What is clear, as set forth *supra* at Sections III(A)(1)-(2), is that the Settlement may not have been possible and would be far less valuable but for the efforts made by Hefner and his counsel to successfully prosecute the State Action.

## IV.   HEFNER REQUESTS ATTORNEYS' FEES AND COSTS TO THE EXTENT HIS OBJECTIONS CONFER A BENEFIT

It is "established law" in the Tenth Circuit "that objectors who do indeed confer a benefit upon the fund may be compensated for that benefit."   *Gottlieb*, 43 F.3d at 491 n.16.

A benefit justifying fees may be conferred, for example, by successfully arguing that the amount of attorneys' fees and expenses requested by class counsel should be reduced.   *See, e.g.*, *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 233-34 (10th Cir. 2009) (unpublished) (noting district court awarded fees to objector's counsel who successfully argued that class counsel's fees should be reduced, "concluding that the services she provided 'conferred a benefit on class members sufficient to entitle her to a reasonable fee award'"); *Gottlieb*, 43 F.3d at 491 ("[T]he record supports the master's conclusion that [objectors' counsel's] arguments did in fact result in a reduction of certain fee and expense awards, and thereby benefitted the class. We therefore reverse the district court's refusal to award any fees to the [objectors'] counsel, and we remand for entry of an amount awarded by the special master."); *Uselton*, 9 F.3d at 855 ("Those who object to ... a fee award or who take an appeal may be entitled to attorneys' fees if the court in its discretion finds that the objections were valid or otherwise conferred class benefits, and ... the appeal resulted in a 'net' benefit to the class.  Objecting counsel are entitled to an award under this standard, and we remand for a determination of the appropriate amount.") (alterations in original).

The analysis of the U.S. District Court for the District of New Mexico in *In re Horizon/CMS Healthcare Corp. Securities Litigation*, 3 F. Supp. 2d 1208 (D.N.M. 1998), is instructive.  There, the district court rewarded two objectors for the useful information their objections provided that helped the court better assess the reasonableness of class counsels' fee request.  *Id.* at 1215.  The court explained "[t]he work of the counsel for the [objectors] provided a useful, historical, and comparative backdrop so that the Court was not required to consider the request of lead counsel in a vacuum."  *Id*.  "As a result of the information" provided by the objectors, "the Court not only concluded that the total attorney compensation should be reduced," but that the hourly rate proposed by the co-lead counsel "is excessive given the fact the early settlement was driven by factors beyond their efforts."  *Id*.  Therefore, the court reduced the attorneys' fees to co-lead counsel by 3%, and awarded that amount to the objectors' counsel.  *Id.*  The district court proceed to "exercise its inherent equitable power to enter an order reallocating the attorneys' fees to more fairly distribute compensation based on benefits conferred on the Class."  *Id*.

Hefner respectfully requests that his counsel be awarded fees and expenses to compensate them to the extent their work on Hefner's objections benefits SandRidge or the Court.  Hefner and his counsel may benefit SandRidge and its shareholders in a variety of ways that may merit such an award.  Among other grounds, and based on currently available information, Hefner intends to object to the Settlement as providing grossly inadequate consideration to SandRidge compared to the value of the claims that would be released, and because the proposed fee amount sought by the Federal Plaintiffs

is unreasonable.  Hefner's objections may result in the Settlement being modified, or the Federal Plaintiffs' counsels' fee and expense amount being reduced, so as to increase the net benefit to be received by SandRidge.  As in *Horizon/CMS*, the Court may also find the briefing and other information submitted by Hefner's Counsel to be useful.

## V.   CONCLUSION

For the above reasons, Hefner respectfully requests that his counsel be awarded their reasonable fees and expenses: (i) relating to the prosecution of the State Action; and (ii) to the extent Hefner's objections confer a benefit.

DATED: November  27, 2015

*s/ George C. Aguilar*
ROBBINS ARROYO LLP
GEORGE C. AGUILAR*
JAY N. RAZZOUK*
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsarroyo.com
jrazzouk@robbinsarroyo.com

*admitted *pro hac vice*

CHARLES F. ALDEN, III, OBA #0187
210 Park Avenue, Suite 2550
Oklahoma City, OK 73102
Telephone: (405) 235-5255
Facsimile: (405) 235-8130
lawyer0187@aol.com

***Attorneys for Interested Party/Shareholder Dale Hefner***

1068303

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2015, I electronically transmitted the attached document to the Clerk of the Court for filing using the ECF system.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

George C Aguilar: notice@robbinsarroyo.com, rsalazar@robbinsarroyo.com

Charles F Alden, III: lawyer0187@aol.com, lisa@charlesaldenlaw.com

Scott N Auby: snauby@debevoise.com, mao-ecf@debevoise.com, rsrgittes@debevoise.com

Steven M Bauer: steven.bauer@lw.com, #sflitigationservices@lw.com, doreen.griffin@lw.com

Mitchell D Blackburn: mblackburn@cwlaw.com, OKC_ECF@cwlaw.com, scanfield@cwlaw.com

Edwin M Buffmire: ebuffmire@jw.com, tsalter@jw.com, mhale@jw.com

Michael Burrage: mburrage@whittenburragelaw.com, docketing@whittenburragelaw.com, rfitzgerald@whittenburragelaw.com

Jeffrey P Campisi: JCAMPISI@KAPLANFOX.COM, juris@kaplanfox.com, THARVEY@KAPLANFOX.COM

George S Corbyn , Jr: gcorbyn@corbynhampton.com, kzellmer@corbynhampton.com

Andrea T Cutter: acutter@cutterlawfirm.com, atcutter@mac.com

James E Dunn: jim@usattorney.com, dunnparalegal@usattorney.com, dunnassociate@usattorney.com, dunnadmin@usattorney.com

Christopher J Fawal: christopher.fawal@lw.com

William B Federman: wbf@federmanlaw.com, ngb@federmanlaw.com, law@federmanlaw.com

Mark P Gimbel: mgimbel@cov.com, maony@cov.com

Andrew D Graham: agraham@jw.com

Joseph P Guglielmo: jguglielmo@scott-scott.com, tcrockett@scott-scott.com, efile@scott-scott.com

Joe M Hampton: jhampton@corbynhampton.com, jsimon@corbynhampton.com

Travis V Jett: tjett@fellerssnider.com, lfenemore@fellerssnider.com

Everett C Johnson , Jr: everett.johnson@lw.com

Mark T Josephs: mjosephs@jw.com, dsmith@jw.com, kmccue@jw.com

Robert N Kaplan: RKAPLAN@KAPLANFOX.COM

Jordan J La Raia: jlaraia@gardere.com, tgutierrez@gardere.com

Amanda F Lawrence: alawrence@scott-scott.com, kjager@scott-scott.com, efile@scott-scott.com

Matthew P McCahill: mmccahill@kaplanfox.com

Robert G McCampbell: rmccampbell@fellerssnider.com, lfenemore@fellerssnider.com

Christina E Namikas: christina.namikas@lw.com, #sflitigationservices@lw.com, doreen.griffin@lw.com

Maeve O'Connor: mloconnor@debevoise.com, mao-ecf@debevoise.com, srgittes@debevoise.com

Kiran A Phansalkar: kphansalkar@cwlaw.com, lskinner@cwlaw.com, OKC_ECF@cwlaw.com

C Williams Phillips: cphillips@cov.com

Jay N Razzouk: notice@robbinsarroyo.com, jrazzouk@robbinsarroyo.com, rsalazar@robbinsarroyo.com

Randa Kay Reeves: rreeves@whittenburragelaw.com, docketing@whittenburragelaw.com

Peter Scaff: pscaff@gardere.com, jlaraia@gardere.com, sxmartinez@gardere.com, thamrick@gardere.com, rweiner@gardere.com, tgutierrez@gardere.com

Edwin G Schallert: egschallert@debevoise.com, mao-ecf@debevoise.com,
srgittes@debevoise.com

Thomas B Snyder: thomas.snyder@crowedunlevy.com,
marlena.mendez@crowedunlevy.com, brenda.hoppas@crowedunlevy.com,
debi.stockwell@crowedunlevy.com, ecf@crowedunlevy.com

Joanne Sum-Ping: jsumping@cov.com, mjulian@cov.com

Margaret A Tough: margaret.tough@lw.com, #sflitigationservices@lw.com,
doreen.griffin@lw.com

Rhonda R Weiner: rweiner@gardere.com, thamrick@gardere.com

Reggie N Whitten: rwhitten@whittenburragelaw.com,
vtrammell@whittenburragelaw.com, docketing@whittenburragelaw.com,
rfitzgerald@whittenburragelaw.com

James C Word: christian.word@lw.com

*s/ George C. Aguilar*
GEORGE C. AGUILAR