# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

IN RE SANDRIDGE ENERGY, INC.
SHAREHOLDER DERIVATIVE
LITIGATION

No. CIV-13-102-W
Relating to All Derivative Actions

**PLAINTIFFS' OPPOSITION TO
ROBBINS ARROYO'S (1)
CONTINGENT MOTION FOR
ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES,
AND (2) STATEMENT OF
OBJECTIONS TO SETTLEMENT**

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Matthew P. McCahill (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:   (212) 687-1980
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
mmccahill@kaplanfox.com

**WHITTEN BURRAGE**
Michael Burrage, OBA #1350
Reggie N. Whitten, OBA #9576
Randa K. Reeves, OBA # 30695
1215 Classen Drive
Oklahoma City, Oklahoma  73103
Telephone:   (405) 516-7800
mburrage@whittenburragelaw.com
rwhitten@whittenburragelaw.com
rreeves@whittenburragelaw.com

*Co-Lead Counsel for the Plaintiffs*

Dated: December 11, 2015

# <u>TABLE OF CONTENTS</u>

Page(s)

I.  INTRODUCTION ................................................................................................. 1

II. THIS COURT SHOULD OVERRULE ROBBINS ARROYO'S
    MERITLESS OBJECTIONS TO THE SETTLEMENT ........................................... 3

    A.  Robbins Arroyo Baselessly Questions this Court's Jurisdiction ...................... 3

    B.  The Objection Is a Thin Cover for the Disruptive Efforts of Robbins
        Arroyo, Who Are Well-Known Serial Objectors ............................................. 4

    C.  Other than the "Disclosure Claims" Excluded from the Stipulation, the
        Allegations Asserted in the Hefner Action are Encompassed by the
        Allegations in the Federal Action ..................................................................... 8

        1.  Allegations Related to the Director Defendants' Entrenchment
            Are Encompassed by the Allegations Supporting Plaintiffs'
            *Caremark* Claims ...................................................................................... 10

        2.  Allegations Related to Ward's Compensation and Perquisites are
            Encompassed by the Allegations Supporting Plaintiffs' Waste Claim ....... 11

    D.  Robbins Arroyo's Objection to the Escrow Agreement Are Meritless ........... 12

    E.  Objections to the Stipulation's Attorneys' Fees Provision
        Are Without Merit ............................................................................................ 14

    F.  Robbins Arroyo's Objections to the Settlement Add No Value and it
        Should Not Be Compensated ........................................................................... 15

III. ROBBINS ARROYO'S APPLICATION FOR ATTORNEYS' FEES
     SHOULD BE DENIED BECAUSE IT DID NOTHING TO FURTHER THE
     PROSECUTION OR PARTIAL SETTLEMENT OF THE FEDERAL
     ACTION ............................................................................................................... 17

i

1.  Robbins  Arroyo's  Investigation  and  the  Duplicative Allegations of the Hefner Petition Had No Impact on the Pleadings in the Federal Action.................................................................. 18

2.  Robbins  Arroyo  Played  No  Role  in  Developing  the  Voluminous Discovery Record that Informed Plaintiffs' Counsel's Decision to Partially Settle the Federal Action .............................................................. 19

3.  Nothing  Prevented  Robbins  Arroyo  from  Engaging  in Settlement Negotiations with the Defendants ........................................... 21

IV.   CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page No.**

*Carlton Ins. v. TLC Beatrice Int'l. Holdings, Inc.*,
  1997 Del. Ch. LEXIS 86 (Del. Ch. May 30, 1997) .................................................. 12

*Egelhof v. Szulik,*
  2008 WL 352668 (N.C. Super. Feb. 4, 2008) ........................................................... 5

*Engelhof v. Szulik*,
  193 N.C. App. 612 (N.C. Ct. App. 2008)................................................................... 5

*In re Intel Corp. Derivative Litig.*,
  Civil Act. No. 09-867-JJF, 2010 WL 2955178 (D. Del. July 22, 2010) ..................... 7

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008) ......................................................... 4

*In re Riverbed Tech. Inc. Stockholders Litig.*,
  Civ. Action No. 10484-VCG, 2015 Del. Ch. LEXIS 296 (Del. Ch. Dec. 2, 2015) ................. 16

*Louisiana Mun. Police Employees' Ret. Sys. v. McClendon*,
  307 P.3d 393 (Okla. Civ. App. 2013) ........................................................... 5, 6, 15

*Lucas v. Hill,*
  C.A. No. 07-349 (D.N.J.) ............................................................................... 6

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ................................................................... 14

*McNeely v. Nat'l. Mobile Health Care, LLC*,
  No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..................... 14

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012)................................................................................. 16

*Ryskamp v. Looney*,
  No. 10-CV-00842-WJM-KLM, 2012 WL 3397362 (D. Colo. Aug. 14, 2012) ....................... 15

*Siloam Springs Hotel, L.L.C. v. Century Surety Co.*,
  781 F.3d 1233 (10th Cir. 2015)............................................................................. 4

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003)................................................................................. 15

*Sutterfield v. Micromuse, Inc.*,
   No. C 04-0893 BZ, (N.D. Cal.) ................................................................................................. 7,8

## I.    INTRODUCTION

On October 9, 2015, this Court preliminarily approved the Stipulation of Settlement (the "Stipulation," ECF No. 301-1) executed by the Plaintiffs, the Settling Parties and SandRidge's Special Litigation Committee (the "SLC") in this federal derivative case (the "Federal Action").  (ECF No. 302).  The Court's preliminary approval order also directed that all holders of SandRidge stock as of October 9, 2015 be given notice of the Stipulation and the opportunity to object to the settlement on or before December 4, 2015.  (ECF No. 302).

SandRidge shareholders were apprised of the settlement and their right to object through an extensive notice program that included: (1) SandRidge's filing of an 8-K that included the Notice as an exhibit; (2) the nationwide publication of the Summary Notice via *PR Newswire*; (3) the posting of the Notice and Stipulation on the SandRidge and Kaplan Fox websites; and (4) a direct mailing of the Notice to all shareholders of record as of October 9, 2015.[1]

Out of all the holders of the 580 million outstanding shares of SandRidge common stock, only one has objected: Dale Hefner, an alleged owner of 300 shares of SandRidge common stock and the plaintiff in *Hefner v. Ward et al.*, Case No. CJ-2013-63, a

---

[1] *See* Declaration of Matthew J. Thompson Confirming Compliance with Notice Procedures of Court Order Granting Preliminary Approval to Settlement, ECF No. 325-1, at ¶¶ 2-3, 5, and the Joint Declaration of Michael Burrage and Robert N. Kaplan in Support of (1) Plaintiffs' Motion to Final Approval of Partial Derivative Litigation Settlement and (2) Award of Attorneys' Fees and Expenses, (the "11/25/15 Joint Declaration" or "11/25/15 Joint Decl.", ECF No. 328), at ¶ 101.

duplicative state-court shareholder derivative action pending in the District Court of Oklahoma County before the Honorable Patricia G. Parrish (the "*Hefner* Action").

Mr. Hefner's name is on the objection, but he is not the driving force behind it. Plaintiffs respectfully urge the Court to see the objection for what it is: an unprincipled, lawyer-driven objection underwritten by the Robbins Arroyo law firm (f/k/a Robbins Umeda LLP, and Robbins Umeda & Fink, LLP), well-known serial objectors who are looking for legal fees after doing virtually no work in what the Director Defendants accurately describe as Robbins Arroyo's "largely duplicative and wasteful litigation in state court."[2]

Robbins Arroyo takes contradictory, inconsistent positions: it seeks attorneys' fees from this settlement for its alleged contributions to a settlement that it also says is worthless.   On the one hand, Robbins Arroyo has filed a motion for attorneys' fees in the Federal Action (the "Robbins Arroyo Fee Motion," ECF No. 329), which is supported by the Declaration of George C. Aguilar (the "Aguilar Declaration" or "Aguilar Decl.," ECF No. 330).   The Aguilar Declaration asserts that Robbins Arroyo contributed to, and that Robbins Arroyo's efforts were instrumental in, the partial settlement of this case.   As detailed below, none of that is true.

In contradiction, Robbins Arroyo's objection (ECF No. 334) asserts that the settlement is worthless and should be rejected.   As detailed in Plaintiffs' final approval

---

[2] The Independent Director Defendants' Opposition to Shareholder Dale Hefner's Contingent Motion for Attorneys' Fees and Reimbursement of Expenses, ECF No. 333, at 1.

motion (ECF No. 327) and the 11/25/15 Joint Declaration, and as reiterated below, the Stipulation includes substantial monetary recovery and corporate governance changes that will benefit SandRidge and its shareholders.[3]   This Court should finally approve the Stipulation, overrule Robbins Arroyo's objections and deny Robbins Arroyo's motion for attorneys' fees.

## II.   THIS COURT SHOULD OVERRULE ROBBINS ARROYO'S MERITLESS OBJECTIONS TO THE SETTLEMENT

### A. Robbins Arroyo Baselessly Questions this Court's Jurisdiction

Robbins Arroyo's attack on this Court's diversity jurisdiction is unfounded. Diversity has not been challenged at any time during this litigation, including on two rounds of motion to dismiss briefing.   In addition, Robbins Arroyo ignores that defendants conceded diversity years ago: Plaintiffs are citizens of Arizona and New York,[4] and defendants admit that: (1) "the members of WCT and 192 [the Trent Lee Ward Trust, the Romi Norel Ward Trust and the James Davis Ward Trust] are not citizens of Arizona or New York;"[5] (2) "neither of the partners of [TLW Land & Cattle, L.P.] is a citizen of New York or Arizona;"[6] and (3) neither Ward nor any of the Director Defendants is a citizen

---

[3] Submitted herewith is the December 11, 2015 Joint Declaration of Michael Burrage and Robert N. Kaplan in Opposition to Robbins Arroyo's Motion for Attorneys' Fees and Expenses (the "12/11/15 Joint Declaration" or "12/11/15 Joint Decl.").

[4] Consolidated Amended Complaint, ECF No. 142, at ¶¶ 20–21.

[5] Original Answer of 192 Investments, L.L.C. and WCT Resources, L.L.C. to Plaintiffs' First Amended Complaint, ECF No. 194, at ¶¶ 16, 31.

[6] Disclosure Statement of Defendant TLW Land & Cattle, L.P., ECF No. 86.

"of Arizona or New York."[7]  *See Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781

F.3d 1233, 1234 (10th Cir. 2015) (LLCs take the citizenship of all its members).[8]  Complete

diversity has always existed in this case.  Accordingly, this objection is meritless.

### B. The Objection Is a Thin Cover for the Disruptive Efforts of Robbins Arroyo, Who Are Well-Known Serial Objectors

Robbins Arroyo often uses the same tactics it is now using to hijack settlements

after doing no meaningful work and to seek an unwarranted fee.  Plaintiffs' Counsel's

canvass of federal and state dockets indicates that it works as follows:  First, following the

filing of a derivative action, Robbins Arroyo brings a duplicative, lawyer-driven derivative

case in another forum.[9]  Second, Robbins Arroyo watches the progress of the originally

---

[7]  Answer of the Independent Director Defendants to the First Amended Verified Consolidated Shareholder Derivative Complaint, ECF No. 195, at ¶ 16; Jt. Status Report and Discovery Plan, ¶ 2 (ECF No. 179) ("Defendant Tom L. Ward . . . [is a] citizen of Oklahoma.").

[8]  The authorities cited by Robbins Arroyo (ECF No. 334, at 5) are inapposite because they involve cases where claims are either brought by a trust in its own name, or a trust is specifically named as a defendant.  Here, none of the Ward Children's Trusts are a party to this litigation.

[9]  Robbins Arroyo has a history of filing meritless, lawyer-driven derivative cases on behalf of plaintiffs with no real interests in the case.  For example, the court in *In re J.P. Morgan Chase & Co. Shareholder Litigation,* 2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008) dismissed a derivative suit filed on behalf of a Robbins Arroyo client because it found that "[f]rom the start, this litigation has been controlled by counsel with absentee plaintiffs," further finding the derivative representative to be inadequate.  Robbins Arroyo "initiated this litigation and entirely controlled it at its inception. . . . For the lawsuit it filed as counsel of record it proffered an elderly plaintiff who understood neither the nature of a derivative action nor his duties as the named plaintiff in such litigation. It did not consult with him about critical events in the life of the case, and when it began to consult with him in response to the Court's inquiries learned that the plaintiff wanted to withdraw from the case because he doubted that it had any merit. But for this Court's inquiries, this scandalous situation may never have come to light."  2008 WL 4298588, at *8.

filed action, and then defers to the original derivative litigation, letting the plaintiffs in the original derivative case do the heavy lifting on briefing, discovery and settlement.  Then, when the original derivative case settles, Robbins Arroyo puts its hand out for a fee on work it did not do by claiming some illusory benefit for the settlement in the original action. Numerous courts have seen through this lawyer-driven sham, and this Court should too.[10]

There are numerous reported instances where federal or state courts rejected Robbins Arroyo's use of wasteful, dilatory tactics to exact unwarranted legal fees by filing meritless objections and needless attorneys' fee motions.  In *Louisiana Mun. Police Employees' Retirement System v. McClendon*, 307 P. 3d 393 (Okla. Civ. App. 2013), for example, Robbins Arroyo's client – who like Hefner, had filed a duplicative derivative action in another forum – objected to a shareholder derivative settlement in an Oklahoma state derivative case, and needlessly appealed the trial court's rejection of its objections.

Following the same playbook it is using here, in *McClendon*, Robbins Arroyo contended that the proposed settlement was unfair, in part, because it released "their

---

[10] The Aguilar Declaration heralds the "experience, reputation and ability" of the Robbins Arroyo firm, *see* Aguilar Decl., at ¶ 28, but state and federal courts have often questioned the conduct and professionalism of Robbins Arroyo in derivative litigation generally and, in particular, derivative litigation settlements.  For example, in *Egelhof v. Szulik*, 2008 WL 352668 (N.C. Super. Feb. 4, 2008), a representative plaintiff proffered by Robbins Arroyo had no knowledge of the case or the claim, and did not even own the stock of the company involved in the litigation.  Although ultimately overturned by the North Carolina Court of Appeals on procedural grounds, the trial court in *Egelhof* sanctioned Robbins Arroyo by ordering, *inter alia,* that for a period of five years the Robbins Arroyo firm and certain of its members be prohibited from appearing *pro hac vice* in North Carolina state courts. *Engelhof v. Szulik*, 193 N.C. App. 612 (N.C. Ct. App. 2008).

derivative claims still pending in the Federal court," asserting that Robbins Arroyo's efforts in the duplicative federal case put them "in a stronger position than [state] Plaintiffs to either compel [the] Board to take more meaningful corrective action, or to negotiate a more favorable settlement." *Id.*, at 400. The appellate court upheld the lower court's rejection of Robbins Arroyo's objection, holding that it had "clearly considered whether further litigation might yield a result more favorable than the negotiated settlement, and concluded that the risk to the company and shareholders of a less favorable outcome compelled approval of the settlement." *Id.*

Another example is *Lucas v. Hill,* C.A. No. 07-349 (D.N.J.), where Robbins Arroyo moved to intervene to upset a settlement, and to apply for lead counsel, claiming (as it does here) that the plaintiffs and defendants had colluded to benefit plaintiffs' counsel at the expense of the class. The district court denied the motion following a hearing where the court excoriated Robbins Arroyo for failing to disclose in its lead counsel papers the material fact that the judge in an identical state court case had previously rejected the firm's application to be lead counsel.[11] The *Lucas* court also denied Robbins Arroyo's *pro hac vice* application, holding that it could not tolerate baseless allegations of collusion from a firm that "seem[s] to enjoy the scorched earth type of litigation" and had little regard for "the way we practice law in the District of New Jersey."[12] Robbins Arroyo's needless

---

[11] Attached as Exhibit 1 to the 12/11/15 Joint Decl., the transcript of a Jan. 17, 2008 hearing in *Lucas v. Hill et al.* ("01/17/08 *Lucas* Tr."), at 5-6.

[12] 01/17/08 *Lucas* Tr., at 26.

appeal of those orders[13] was denied by the United States Court of Appeals for the Third Circuit in a terse decision awarding costs against Robbins Arroyo for its "frivolous" appeal.[14]

In addition, the court in *In re Intel Corp. Derivative Litigation*, Civil Act. No. 09-867-JJF, 2010 WL 2955178 (D. Del. July 22, 2010) overruled Robbins Arroyo's objections to a shareholder derivative settlement involving corporate governance reforms but (unlike the Federal Action here) no monetary recovery.  After first finding that Robbins Arroyo's strawman objector "could not identify any additional corporate governance measure that should have been sought from Intel that was not in the Settlement," the *Intel* court rejected Robbins Arroyo's argument that the settlement lacked value, holding that "the corporate governance reforms initiated by Intel as a result of the parties' negotiations and this Settlement have value to both the Company and its shareholders both currently and in the long-term, and that these benefits outweigh the speculative potential of any monetary payment from the relevant insurance policies . . . Accordingly, the Court will overrule all of the Objections lodged against the Settlement and approve the Settlement, in its entirety." *Id.*, at *2.

And in *Sutterfield v. Micromuse, Inc.*, No. C 04-0893 BZ, (N.D. Cal.) Robbins Arroyo, who represented plaintiffs in a duplicative state court derivative case, sought an award of attorneys' fees and expenses in a pending federal derivative action.   As is the

---

[13]  Attached as Exhibit 2 to the 12/11/15 Joint Decl., 01/18/08 order, ECF No. 69 and Exhibit 3 to the 12/11/15 Joint Decl., 01/18/08 order, ECF No. 70, in *Lucas*.

[14]  Attached as Exhibit 4 to the 12/11/15 Joint Decl., 05/02/08 Third Circuit Order.

case here, the federal derivative plaintiffs in *Micromuse* saw Robbins Arroyo using "needless motion practice, which has resulted in their taking conflicting positions and unnecessarily adding to the cost of litigation."[15]  The *Micromuse* court denied Robbins Arroyo's motion for attorneys' fees,[16] essentially agreeing with co-lead counsel for the federal derivative plaintiffs that Robbins Arroyo "have done everything possible to prevent the proper resolution of this matter, including taking conflicting positions between clients with respect to the settlement and failing to provide any indication that they have any standing or their clients authority to now file additional pleadings out of time."[17]

### C. Other than the "Disclosure Claims" Excluded from the Stipulation, the Allegations Asserted in the *Hefner* Action are Encompassed by the Allegations in the Federal Action

With the exception of his claims relating to the alleged misrepresentation of SandRidge's assets and business prospects and a failure to ensure the accuracy of the Company's financial disclosures (the "Disclosure Claims," which are specifically excluded from the claims released pursuant to the Stipulation[18]), the allegations of Robbins Arroyo's

---

[15] Attached as Exhibit 5 to the 12/11/15 Joint Decl., 12/05/05 Brief in *Micromuse*, ECF No. 99 in No. C 04-0893 BZ, at 4.

[16] Attached as Exhibit 6 to the 12/11/15 Joint Decl., 12/07/05 Order in *Micromuse*, ECF No. 100 in No. C 04-0893 BZ.  *See also* Exhibit 7 to the 12/11/15 Joint Decl., transcript of 12/07/05 hearing in *Micromuse*.

[17] Exhibit 5 to the 12/11/15 Joint Decl., at 4.

[18] Stipulation, ECF 301-1, at 1.13, 1.25.

state action are (unsurprisingly) duplicative of allegations in the Federal Action that form the basis of the claims resolved by the Stipulation.

Robbins Arroyo's objection ignores that fact. Instead, Robbins Arroyo argues that the Stipulation lacks adequate consideration for what it misleadingly calls the "Unique *Hefner* Claims" relating to: (1) the board's entrenchment during the TPG-Axon consent solicitation, including the Director Defendants' approval of a shareholders' rights plan (known as a "poison pill"); and (2) defendant Ward's excessive compensation and perquisites and the Director Defendants' approval thereof.[19]

This argument is incorrect. The so-called "Unique *Hefner* Claims" are encompassed by the *Caremark* and waste claims in the Federal Action. Claims based on allegations of entrenchment and excessive compensation are validly released in exchange for the substantial monetary consideration and corporate governance reforms detailed in the Stipulation. Assuming, *arguendo*, that the Court finds the "Unique *Hefner* Claims" have not been alleged in the Federal Action, such claims arguably have no value because they are time barred.[20]

---

[19] Robbins Arroyo Objection, ECF No. 334, at 12-13, 17-20.

[20] Allegations related to SandRidge's Executive Well Participation Plan (the "EWPP") and Oklahoma City Thunder are based on transactions from 2008, so even assuming that those allegations are not encompassed by Plaintiffs' claims, they are arguably barred by Delaware's three-year statute of limitation. Del. Code Ann. tit. 10, §§ 8106, 8112 (2013). The first action involving the claims alleged in the Federal Action was filed on December 19, 2012 (*Levin v. Ward, et al.*, 12-cv-1401 (W.D. Ok.)), over three years since the 2008 transactions.

1.  <u>Allegations Related to the Director Defendants' Entrenchment Are Encompassed by the Allegations Supporting Plaintiffs' *Caremark* Claims</u>

Plaintiffs' *Caremark* claim is based on allegations that SandRidge's culture of poor corporate governance allowed the Director Defendants to breach "their fiduciary duties of loyalty, good faith, candor and due care," failing to use "their utmost ability to control and manage SandRidge in a just, fair, honest and equitable manner."[21]   Robbins Arroyo's objection conveniently ignores that the Director Defendants' "conduct in response to TPG-Axon's consent solicitation" – including their adoption of the poison pill among other efforts to entrench themselves in the face of shareholder criticism – are among the allegations supporting the *Caremark* claim.[22]

The Federal Action's *Caremark* claim – a cause of action which, as noted above, subsumes the *Hefner* Action's allegations of the Director Defendants' "breach of fiduciary duty loyalty [*sic*]" – was released in consideration of the $38 million cash payment, and the Stipulation's corporate governance reforms that will prevent the reoccurrence of the alleged directorial misconduct at issue in both the *Hefner* and Federal actions.   These reforms involve material changes to SandRidge's corporate governance, were proposed by Prof. Jesse Fried of Harvard, and endorsed by Irving Kagan. 11/25/15 Joint Decl., ¶¶ 18, 106.   Robbins Arroyo's objection ignores these key facts and it puts forth no meaningful

---

[21] Consolidated Amended Complaint, ECF No. 142, at ¶¶ 146-61.

[22] *Id.* at ¶¶ 152-54, 285-90.

basis to challenge the significance or value of the corporate governance reforms to SandRidge and its shareholders.[23]

### 2. Allegations Related to Ward's Compensation and Perquisites are Encompassed by the Allegations Supporting Plaintiffs' Waste Claim

Allegations of excessive compensation and wasteful perquisites are encompassed by Plaintiffs' waste claims, which cover a broad range of conduct including defendant Ward's excessive compensation and the perquisites approved by the Director Defendants. *See* Consolidated Amended Complaint, ECF No. 142, at ¶¶ 10, 127-36, 291-95. Allegations that the Director Defendants approved defendant Ward's massive pay and perquisites packages are not unique to the *Hefner* Action, and the Stipulation's release of Plaintiffs' waste claims are in consideration of the $38 million cash payment and comprehensive corporate governance reforms that SandRidge will be required to maintain or enact, which are a result of Plaintiffs' Counsel's prosecution of the Federal Action.[24]

---

[23] The Stipulation's corporate governance reform provisions require SandRidge to: (a) reform SandRidge's policies regarding the election of its directors, such as eliminating a staggered board, and plurality voting, under certain circumstances; (b) submit to a stockholder vote the question whether to amend SandRidge's charter to lower the minimum number of shareholders votes required to call a special meeting of shareholders from 50% to 25%; (c) amend SandRidge's bylaws to require poison pills (i) to be approved by affirmative vote of at least 75% of the Board and (ii) to expire after 6 months, unless they are authorized or ratified by shareholder vote; (d) formally separate the positions of chairman of the board and chief executive officer; (e) require additional training of directors and officers concerning best corporate governance practices; and (f) implement reforms to SandRidge's executive compensation policies.

[24] SandRidge's indemnification of defendant Ward to the fullest extent permitted under Delaware law insulates him from personal liability for alleged misconduct during his tenure at the Company (*see* SandRidge's Certificate of Incorporation, Article 9, ECF No. 82-5), so his considerable wealth is irrelevant and the recitation of defendant Ward's assets in the Declaration of Jay N. Razzouk in Support of Shareholder Dale Hefner's Statement of

### D.  Robbins Arroyo's Objections to the Escrow Agreement Are Meritless

Robbins Arroyo objects that the $38 million Escrow Account established by the Stipulation and funded by the Settling Defendants' insurers "is the product of collusion rather than arm's length negotiations" and provides SandRidge with "sham consideration" because the terms of the Escrow Account were allegedly "crafted for the benefit of counsel, defendants and the insurance companies, rather than SandRidge."  Robbins Arroyo Obj., at 6-8.  There are several reasons why this objection is wrong.

First, the Escrow Agreement is but one part of a settlement that, on the whole, represents a fair and reasonable result for SandRidge and its shareholders, and results in a substantial cash settlement of $38 million and meaningful corporate governance reforms. *See Carlton Ins. v. TLC Beatrice Int'l. Holdings, Inc.*, 1997 Del. Ch. LEXIS 86, *71-72 (Del. Ch. May 30, 1997) ("While reasonable minds might differ over any number of decisions (and I would) I conclude that the result as a whole is reasonable and the product of independent, informed action of directors acting in good faith.").  Plaintiffs are represented by counsel with extensive experience in derivative and complex litigation similar to this Consolidated Action, and based on this experience and information reviewed and analyzed to date, believe that the proposed Settlement is in the best interests of SandRidge and its shareholders. Similarly, the Company and the SLC are represented by counsel that support the Settlement and believe that it is in the best interests of the

---

Objections to Settlement (the "Razzouk Decl.," ECF No. 335) has no bearing on the settlement's fairness.

Company. 11/25/15 Jt. Decl., ¶ 11.  Further, the fact that the settlement was the result of a mediator's proposal demonstrates that there was no collusion.

Second, in light of this Court's dismissal of the Securities Litigation, it is very likely that the funds in the Escrow Account will not be materially depleted by ongoing expenses in the Securities Litigation.  This Court's orders dismissing the amended complaint in the Securities Litigation held that the allegations in that case could not meet the heightened pleading requirements of a federal securities fraud case.[25]  Despite having been granted leave to replead their allegations, the Second Consolidated Amended Class Action Complaint in the Securities Litigation does not appear to remedy the pleading deficiencies of their first consolidated amended complaint.[26]  As such, it is possible that the Securities Litigation will again be dismissed, and the Escrow Account will not be depleted by continued litigation expenses for that case.

Finally, despite leave to replead their allegations, the plaintiffs in the Securities Litigation were not granted leave to name the Director Defendants as defendants in their Second Consolidated Amended Complaint,[27] effectively dismissing the Director

---

[25] *See* Aug. 27, 2015 Orders, ECF Nos. 184 and 185, in Case No. CIV-12-1341-W.

[26] ECF No. 188 in Case No. CIV-12-1341-W.  The extent of SandRidge's exposure in the Securities Litigation is unclear, a fact conceded in the Razzouk Declaration, which states that damages "will likely vary" from the Company's lost market capitalization, weakly described as "a measure <u>sometimes</u> used by" Robbins Arroyo to estimate damages in securities cases.  Razzouk Decl., ¶19 (emphasis added). As it stands now, the securities litigation was dismissed and arguably has no value.

[27] *Id.*

Defendants from that case – which means that they will not incur additional legal expenses that would deplete the Escrow Account. Accordingly, with an end to the Securities Litigation imminent, the Company stands to receive a substantial cash benefit from this settlement.

For these reasons, Robbins Arroyo's objections to the Escrow Agreement are meritless and should be overruled.

### E. Objections to the Stipulation's Attorneys' Fees Provision Are Without Merit

Robbins Arroyo's objection to the Stipulation's attorneys' fees provision is also meritless. The attorneys' fees in the Federal Action resulted not from collusion among the Settling Parties, but from a proposal by a well-respected, independent mediator who gave the Settling Parties a mediator's proposal on the monetary component of the Stipulation. *See* 11/25/15 Joint Decl., at ¶ 99. Robbins Arroyo ignores that the mediator's proposal of an overall settlement amount that accounted for, but was in no way dictated by, potential attorneys' fees, supports the fairness of the Stipulation's attorneys' fee provisions. *See, e.g.*, *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812-13 (E.D. Wis. 2009) (overruling objection to attorneys' fees provision in part because "the settlement was achieved after arms-length negotiation with the assistance of a Seventh Circuit mediator," holding that "the fact that the proposed settlement includes these terms does not render it inherently unfair or unreasonable.").

Moreover, accounting for attorneys' fees as part of the settlement's monetary recovery does not make the Stipulation improper or unfair. *See McNeely v. Nat'l. Mobile*

*Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at \*14 n.5 (W.D. Okla. Oct. 27, 2008) ("In determining the total amount of the common fund, it is proper to include agreed-upon fees and costs in addition to class damages. *See e.g. Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (holding that 'the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the Court for an award from the fund, using common fund fee principles.')").

### F.  Robbins Arroyo's Objections to the Settlement Add No Value and it Should Not Be Compensated

The lack of objections from any other holder of the 580 million shares of outstanding SandRidge common stock is further evidence that the Stipulation is a fair, reasonable and adequate partial resolution of this derivative action.  Courts view limited opposition to a settlement as a factor weighing in favor of approval. *See, e.g.*, *Ryskamp v. Looney*, No. 10-CV-00842-WJM-KLM, 2012 WL 3397362, at \*4 (D. Colo. Aug. 14, 2012) (where notice of the settlement was sent to at least 805 shareholders and "only two objections to the settlement were received and no objectors appeared at the settlement hearing … [t]his fact weighs heavily in favor of approval of the derivative litigation settlement."); *see also McClendon*, 307 P.3d at 400 (upholding lower court's approval of derivative settlement where the Robbins Arroyo plaintiff was the sole objector, holding that "no other holders of the some-660-million shares of Chesapeake stock objected to the settlement, [which]

constitute[d] relevant factor for the trial court to consider when deciding to approve or reject a proposed settlement.")

In addition, Robbins Arroyo's objections add no material benefit to the Federal Action and therefore the firm should not be compensated.  Numerous courts have held that objectors are not entitled to fees unless they materially benefit a settlement agreement.  *See*, *e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) (holding that "objectors who do 'not increase the fund or otherwise substantially benefit the class members' are not entitled to fees, even if they bring 'about minor procedural changes in the settlement agreement.'") (internal citation omitted).  *Cf. In re Riverbed Tech., Inc. Stockholders Litig.*, Civ. Action No. 10484-VCG, 2015 Del. Ch. LEXIS 296, at *5 (Del. Ch. Dec. 2, 2015) ("a perverse incentive to object could be created if counsel fees are granted in such a situation too liberally or with too much regularity.   In fact, it should be a rare occurrence indeed where an objector receives a fee award for proposing, unsuccessfully, that a settlement of a class action should be rejected.").

Unlike the objector in the *Riverbed* case (granted attorneys' fees despite his unsuccessful objection because his filings nonetheless helped the court reach its decision to approve the settlement), Robbins Arroyo's objection does nothing to aid this Court's assessment of the Stipulation's fairness, and Robbins Arroyo should not be rewarded for pursuing its meritless objection.

### III. ROBBINS ARROYO'S APPLICATION FOR ATTORNEYS' FEES SHOULD BE DENIED BECAUSE IT DID NOTHING TO FURTHER THE PROSECUTION OR PARTIAL SETTLEMENT OF THE FEDERAL ACTION

The 11/25/15 Joint Declaration details the extensive efforts of Plaintiffs' Counsel in litigating and partially resolving the Federal Action after nearly three years of litigation (which continues against the Non-Settling Defendants). Nearly every paragraph of that declaration describes the work done by Plaintiffs' Counsel and shows how the partial settlement achieved in the Federal Action resulted from Plaintiffs' Counsel's dedicated efforts litigating the case. Nothing described in that declaration relates to the efforts of Robbins Arroyo, who, contrary to the false assertions in the Aguilar Declaration, did nothing to aid Plaintiffs' vigorous prosecution of the Federal Action.

Indeed, the Aguilar Declaration and its accompanying exhibits show that, instead of litigating the *Hefner* Action, Robbins Arroyo continually deferred to the Federal Action and waited to take advantage of the fruits of Plaintiffs' Counsel's vigorous prosecution of this case.[28] The sparse docket in the *Hefner* Action further confirms that, for many months, Robbins Arroyo did nothing in its duplicative state case.[29]

---

[28] *See, e.g.*, Aguilar Decl., at ¶¶ 16-18 (confirming Robbins Arroyo's year-long period of inactivity between Judge Parrish's October 1, 2013 order denying the motion to dismiss and Robbins Arroyo's agreement to stay its case following the formation of the SLC on September 26, 2014). *See also, e.g.*, Aguilar Decl. Ex. 12 (ECF No. 330-12, a Nov. 14, 2014 stipulation between Robbins Arroyo and the SLC to stay the *Hefner* Action and give Robbins Arroyo access to discovery from the Federal Action).

[29] *See* Exhibit 8 to the 12/11/15 Joint Decl., a true and correct copy of the current docket from the *Hefner* Action.

1. <u>Robbins Arroyo's Investigation and the Duplicative Allegations of the Hefner Petition Had No Impact on the Pleadings in the Federal Action</u>

The alleged "substantial time and effort" spent by Robbins Arroyo "investigating the facts relevant to this litigation," Aguilar Decl., at ¶ 42, did nothing to advance the Federal Action and had no impact on Plaintiffs' largely successful efforts to defeat defendants' motions to dismiss.  Robbins Arroyo's complaint lacked many of the facts alleged in Plaintiffs' Consolidated Amended Complaint, including the facts demonstrating demand futility.

Judge Parrish's October 1, 2013 denial of defendants' motion to dismiss the *Hefner* Action on demand futility grounds had no bearing on the litigation of the Federal Action. Rather, Plaintiffs overcame defendants' motions to dismiss the Consolidated Amended Complaint because of the extensive factual investigation and legal research of Plaintiffs' Counsel; this Court's orders granting in part and dismissing in part defendants' motions to dismiss did not discuss the thin allegations of the *Hefner* Action, and focused entirely on the more detailed and specific facts in the Consolidated Amended Complaint.

Nor did the survival of the *Hefner* Petition on the motion to dismiss have any effect on the partial settlement achieved through the diligent efforts of Plaintiffs' Counsel.  The Aguilar Declaration wrongly claims that, in the wake of Judge Parrish's upholding the Hefner Petition, the parties in the *Hefner* Action engaged in "extensive discussions and limited discovery [which] significantly paved the way for the current proposed settlement in the Federal Action."  Aguilar Decl., ¶ 17.  That claim is not credible for three reasons.

18

First, those "discussions" could not have been "extensive," because they appear to have occurred during one week.   The (vaguely described) talks referenced in the Aguilar Declaration began after Judge Parrish's October 1, 2013 order, but "[t]hose efforts were discontinued while the parties awaited the outcome of the second round of motions to dismiss briefing in the Federal Action" – which began on October 9, 2013, when Plaintiffs filed the Consolidated Amended Complaint.  (ECF No. 142).

Second, the Aguilar Declaration lacks details about the content of the discussions, and neither the Court (nor anyone else) has the first clue what was discussed and (more important) how those October, 2013 "discussions" impacted the terms of the Stipulation in the Federal Action, which was negotiated almost two years later.

Third, the Aguilar Declaration neither describes the "limited discovery" undertaken in this eight-day period following Judge Parrish's October 1, 2013 order, nor does it show how that "limited discovery. . . . paved the way" (significantly or otherwise) for the settlement that Robbins Arroyo claims is worthless.

2. <u>Robbins Arroyo Played No Role in Developing the Voluminous Discovery Record that Informed Plaintiffs' Counsel's Decision to Partially Settle the Federal Action</u>

Document and deposition discovery in the Federal Action was extensive, and the voluminous discovery record produced in the Federal Action informed Plaintiffs' Counsel's settlement negotiations. S*ee* 11/25/15 Joint Decl., at ¶¶ 42-101, 109-12.   In contrast, discovery in the *Hefner* Action was almost non-existent, and no discovery appears to have taken place in that case for almost three years. In fact, in response to Judge Parrish's question at a recent hearing in the *Hefner* Action about whether "there is discovery

19

outstanding that [defendants] need to respond to" in *Hefner*, Robbins Arroyo stated that "There sure is . . . . [W]e filed requests for production in January or February of 2013."[30]

In addition, unlike Plaintiffs' Counsel's vigorous pursuit of broad discovery in the Federal Action, Robbins Arroyo sat on the sidelines waiting for discovery to drop into its lap, telling Judge Parrish in a November 10, 2015 hearing that getting discovery produced in the Federal Action would be "a way to get this case going."[31]   Robbins Arroyo could have obtained discovery from the Federal Action a full year earlier, following the SLC's November 2014 agreement to give discovery from the Federal Action to Robbins Arroyo, *see* Aguilar Decl., ¶ 19.  But it did nothing.

The implication from the November 10, 2015 hearing in the *Hefner* Action is clear: while Robbins Arroyo could have sought the Federal Action discovery from the SLC as far back as November 2014, it decided not to, choosing to wait a full year for the fruits of Plaintiffs' Counsel's discovery efforts to "get [the *Hefner* Action] going."  Robbins Arroyo cannot now claim credit for the Stipulation when it is clear that it has been sitting on the sidelines for years.  Robbins Arroyo did not have to sit idly by – but it chose to do so.[32]

---

[30] Exhibit 9 to the 12/11/15 Joint Decl., 11/10/15 *Hefner* Hrg. Tr., at 21:18-22.

[31] *Id.* at 11:1-13.

[32] Robbins Arroyo did not formally appear in the Federal Action until November 2015 – nearly three years into the case.  Nor did Hefner or Robbins Arroyo seek to intervene in the Federal Action at any point, despite Judge Parrish's view at the beginning of the *Hefner* Action that she did not "know why [Robbins Arroyo] don't want to intervene in the federal lawsuit.  I probably would welcome you leaving my courtroom and intervening in the federal lawsuit."  Exhibit 10 to the 12/11/15 Joint Decl., 08/07/13 *Hefner* Hrg. Tr., at 22.

While nothing stopped Robbins Arroyo from working with Plaintiffs' Counsel on discovery, Co-Lead Counsel are not aware of any instances where Robbins Arroyo did anything "in furtherance of coordinating the State Action with the Federal Action," Aguilar Decl., ¶ 19.

As described in the 12/11/15 Joint Declaration, Robbins Arroyo neither sought nor was given work in the Federal Action. 12/11/15 Joint Decl., at ¶ 8. Robbins Arroyo never approached Plaintiffs' Counsel to coordinate discovery efforts. *Id.* ¶ 9.[33]

3. Nothing Prevented Robbins Arroyo from Engaging in Settlement Negotiations with the Defendants

The Aguilar Declaration asserts that "the parties to [the] Federal Action engaged in settlement negotiations without ever including Hefner," Aguilar Decl., ¶ 22, but that misses the mark. Nothing prevented Robbins Arroyo from engaging the defendants in separate settlement negotiations, and the fact that defendants declined to pursue settlement talks with Robbins Arroyo does not mean that the Stipulation in the Federal Action resulted from collusive negotiations between Plaintiffs and the Settling Parties.

---

[33] Robbins Arroyo's suggestion that it and Plaintiffs' Counsel in the Federal Action conferred telephonically over the course of a month concerning its post-settlement requests for discovery (*see* Dec. 4, 2015 Declaration of George C. Aguilar in Support of S'holder Dale Hefner's Motion for Settlement Related Discovery, ¶ 7 (ECF No. 337)), is untrue. The truth is that the Federal Plaintiffs have never had telephonic conferences with Robbins Arroyo regarding its document requests. 12/11/15 Joint Decl., at ¶ 11-12.

## IV.    CONCLUSION

For the reasons stated in Plaintiffs' motion in support of final approval and those reasons outlined above, this Court should grant final approval to the Stipulation, reject Robbins Arroyo's meritless objection, and deny Robbins Arroyo's meritless fee motion.

Respectfully submitted,

*/s/ Michael Burrage*
Michael Burrage, OBA #1350
Randa K. Reeves, OBA # 30695
Reggie N. Whitten, OBA #9576
**WHITTEN BURRAGE**
1215 Classen Drive
Oklahoma City, Oklahoma  73103
Telephone:    (405) 516-7800
Facsimile:    (405) 516-7859
mburrage@whittenburragelaw.com
rwhitten@whittenburragelaw.com
rreeves@whittenburragelaw.com

-and-

*/s/ Robert N. Kaplan*
Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Matthew P. McCahill (admitted *pro hac vi*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:    (212) 687-1980
Facsimile:    (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
mmccahill@kaplanfox.com

***Co-Lead Counsel for the Plaintiffs***

***Other Plaintiffs' Counsel:***

**JACKSON WALKER L.L.P.**

22

Mark T. Josephs
Texas State Bar No. 11031400
(admitted *pro hac vice*)
Andrew D. Graham
Texas State Bar No. 24041002
(admitted *pro hac vice*)
Edwin M. Buffmire
Texas State Bar No. 24078283
(admitted *pro hac vice*)
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone:    (214) 953-6000
Facsimile:     (214) 953-5822
mjosephs@jw.com
agraham@jw.com
ebuffmire@jw.com

-and-

**Liaison Counsel for Plaintiffs:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania
Oklahoma City, Oklahoma  73120
Telephone:    (405) 235-1560
Facsimile:     (405) 239-2112
wbf@federmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 11, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Amanda F. Lawrence alawrence@scott-scott.com
Andrea T Cutter  acutter@cutterlawfirm.com
Andrew D. Graham agraham@jw.com
Christian Word  christian.word@lw.com
C. William Phillips cphillips@cov.com
Everett C Johnson, Jr  Everett.johnson@lw.com
George S Corbyn, Jr.  gcorbyn@corbynhampton.com
James E. Dunn jim@usattorney.com
Jeffrey P. Campisi jcampisi@kaplanfox.com
Joe M Hampton  jhampton@corbynhampton.com
Joseph P. Guglielmo jguglielmo@scott-scott.com
Louis N. Boyarsky lboyarsky@glancylaw.com
Margaret A Tough  margaret.tough@lw.com
Mark P. Gimbel migmbel@cov.com
Mark T. Joseph mjosephs@jw.com
Matthew P McCahill  mmccahill@kaplanfox.com
Michael Burrage mburrage@whittenburragelaw.com
Peter Scaff  pscaff@gardere.com
Randa Kay Reeves rreeves@whittenburragelaw.com
Reggie N. Whitten rwhitten@burragelaw.com
Robert N. Kaplan rkaplan@kaplanfox.com
Steven M. Bauer  steven.bauer@lw.com
Thomas A Hagemann  thagemann@gardere.com
Thomas B. Snyder Thomas.snyder@crowedunlevy.com
Edwin G. Schallert egschallert@debevoise.com
Maeve O'Connor mloconnor@debevoise.com
Scott N. Auby snauby@debevoise.com
Robert G. McCampell rmccampbell@fellerssnider.com
Travis V. Jett tjett@fellerssnider.com

*/s/ Michael Burrage*
Michael Burrage